# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF TEXAS
# AMARILLO DIVISION

| | |
|---|---|
| THE STATE OF TEXAS,<br><br>*Plaintiff*,<br><br>v.<br><br>EQUAL EMPLOYMENT OPPORTUNITY COMMISSION; CHARLOTTE A. BURROWS, in her official capacity as Chairman of the Equal Employment Opportunity Commission; and MERRICK B. GARLAND, in his official capacity as Attorney General of the United States,<br><br>*Defendants*. | Civ. Action No. _____-Z<br><br>**COMPLAINT** |

## INTRODUCTION

1. On June 15, 2021, Charlotte Burrows, the Chairman of the Equal Employment Opportunity Commission, issued guidance purporting to set forth EEOC's interpretation of employers' obligations under Title VII of the Civil Rights Act of 1964. *See* Protections Against Employment Discrimination Based on Sexual Orientation or Gender Identity, NVTA-2021-1 (June 15, 2021) (Exhibit A).

2. The June 15 Guidance purports to require employers, including the State of Texas, to allow exceptions from their generally applicable workplace policies on usage of bathrooms, locker rooms, and showers (collectively, "bathrooms"), dress codes, and pronoun usage, based on the subjective gender identities of their employees.

3. That guidance misstates the law, increasing the scope of liability for the State in its capacity as an employer—and Burrows did not even have authority to issue it.

4. Texas seeks declaratory and injunctive relief against the enforcement of the June 15 Guidance by EEOC.

5. The State also seeks declaratory and injunctive relief against Attorney General Merrick B. Garland, in his official capacity as the Attorney General of the United States, who has authority to enforce EEOC's views against the States.

6. Texas brings this suit under Section 10(a) of the Administrative Procedure Act ("APA"), 5 U.S.C. § 702; the Declaratory Judgment Act, 28 U.S.C. §§ 2201, 2202; and the inherent equitable power of this Court.

7. Texas and its constituent agencies, including the Texas Department of Agriculture ("TDA"), have the sovereign right to set their own policies on bathroom usage, dress codes, and pronoun usage within their workplaces. The June 15 Guidance is invalid on its face.

## I. PARTIES

8. The Plaintiff is the State of Texas. Through its constituent agencies, the State employs hundreds of thousands of people. TDA alone employs approximately 615 people.

9. Defendant EEOC is a federal law-enforcement agency empowered to bring civil enforcement actions against employers for violating Title VII of the Civil Rights Act of 1964. *See* 42 U.S.C. § 2000e-6. EEOC also may issue "right-to-sue" letters that allow private individuals to sue their employers for violating EEOC's interpretation of Title VII. *See id.* § 2000e-5(f).

10. Defendant Charlotte A. Burrows is the Chairman of EEOC. She is sued in her official capacity.

11. Defendant Merrick B. Garland is the Attorney General of the United States. He is sued in his official capacity. The Attorney General is empowered to bring civil enforcement actions against governmental employers, including the State of Texas, for alleged violations of Title VII. The Attorney General may also issue "right-to-sue" letters that allow private individuals to sue their governmental employers, including the State of Texas, for violating EEOC's interpretation of Title VII.

## II. JURISDICTION AND VENUE

12. The Court has federal-question jurisdiction under 28 U.S.C. § 1331 because this suit concerns the scope of EEOC's authority under Title VII, and it also arises under the APA, 5 U.S.C. §§ 702–703. Finally, the Court has jurisdiction to compel an officer or employee of EEOC to perform a duty under 28 U.S.C. § 1361 and is authorized to award the requested declaratory and injunctive relief under 5 U.S.C. § 706, 28 U.S.C. § 1361, and 28 U.S.C. §§ 2201–2202.

13. Venue is proper in this District under 28 U.S.C. § 1391(e) because the State of Texas is a resident of this judicial district, the State and its constituent agencies (including TDA) have employees in this District, and a substantial part of the events or omissions giving rise to the State's claims against EEOC's unlawful agency action occurred in this District.

14. This Court is authorized to award the requested declaratory and injunctive relief under the APA, the Declaratory Judgment Act, 28 U.S.C. §§ 2201–2202, and 28 U.S.C. § 1361.

## III. FACTUAL BACKGROUND

A. The June 15 Guidance and its Flawed Legal Foundations

1. Chairman Burrows Issues the June 15 Guidance

15. On June 15, 2021, Burrows issued what she termed a "technical assistance document" that purportedly both "explain[ed] what the *Bostock* decision means for LGBTQ+ workers (and all covered workers) and for employers across the country" and "explain[ed] the

3

[EEOC's] established legal positions on LGBTQ+ related matters, as voted by the Commission." Ex. A at 2–3 (citing *Bostock v. Clayton County*, 140 S. Ct. 1731 (2020)).

16. The June 15 Guidance was not approved by a vote of the full Commission and was never published in the Federal Register. On information and belief, Burrows did not consult with the other Commissioners on this subject before issuing the June 15 Guidance.

17. In question-and-answer format, the June 15 Guidance purported to describe three key substantive requirements *Bostock* had imposed on employers:

> **9. May a covered employer require a transgender employee to dress in accordance with the employee's sex assigned at birth?**
>
> No. Prohibiting a transgender person from dressing or presenting consistent with that person's gender identity would constitute sex discrimination.
>
> **10. Does an employer have the right to have separate, sex-segregated bathrooms, locker rooms, or showers for men and women?**
>
> Yes. Courts have long recognized that employers may have separate bathrooms, locker rooms, and showers for men and women, or may choose to have unisex or single-use bathrooms, locker rooms, and showers. The Commission has taken the position that employers may not deny an employee equal access to a bathroom, locker room, or shower that corresponds to the employee's gender identity. In other words, if an employer has separate bathrooms, locker rooms, or showers for men and women, all men (including transgender men) should be allowed to use the men's facilities and all women (including transgender women) should be allowed to use the women's facilities.
>
> **11. Could use of pronouns or names that are inconsistent with an individual's gender identity be considered harassment?**
>
> Yes, in certain circumstances. Unlawful harassment includes unwelcome conduct that is based on gender identity. To be unlawful, the conduct must be severe or pervasive when considered together with all other unwelcome conduct based on the individual's sex including gender identity, thereby creating a work environment that a reasonable person would consider intimidating, hostile, or

4

>offensive. In its decision in *Lusardi v. Dep't of the Army*, the Commission explained that although accidental misuse of a transgender employee's preferred name and pronouns does not violate Title VII, intentionally and repeatedly using the wrong name and pronouns to refer to a transgender employee could contribute to an unlawful hostile work environment.

Ex. A at 6–7 (citations omitted).

18. The June 15 Guidance makes several substantive changes including requirements that employers treat biological men as women—and biological women as men—when applying sex-specific policies or using sex-specific pronouns.

### 2. The June 15 Guidance Relies on Two Inapplicable Sources of Authority

19. The June 15 Guidance justifies its rules based on two sources of authority: *Bostock* and previous EEOC decisions. Neither supports the June 15 Guidance.

20. *Bostock* is far narrower than the June 15 Guidance. *Bostock* explicitly disclaimed that it was deciding whether "sex-segregated bathrooms, locker rooms, and dress codes" would violate Title VII. *Id.* at 1753. Nor did the Court ever address the issue of pronouns.

21. *Bostock* did not add new categories to those protected by Title VII; it applied existing rules covering discrimination on the basis of "sex": "While *Bostock* held that Title VII protection based on sex classification includes an individual's sexual orientation [or gender identity], it did not establish a new or otherwise separate protected class, but instead clarified the scope of sex classification." *Stollings v. Texas Tech Univ.*, No. 5:20-cv-250-H, 2021 WL 3748964, at *10 (N.D. Tex. Aug. 25, 2021) (Hendrix. J.) (citing *Bostock*, 140 S. Ct. at 1739).

22. *Bostock* did not adopt a different and broader definition of "sex." Rather, the Court "proceed[ed] on the assumption that 'sex' . . . refer[s] only to biological distinctions between male and female," and did not include "norms concerning gender identity." *Bostock*, 140 S. Ct. at 1739.

5

23. The June 15 Guidance also cites "established legal positions . . . as voted by the Commission," but those authorities were not interpretations of the portions of Title VII that apply to private and State employers. Instead, they involved the distinct language that applies to federal employees.

24. In the language that applies to private-sector and State employers, Title VII makes it unlawful for an employer "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, *because of* such individual's race, color, religion, sex or national origin." 42 U.S.C. § 2000-e2(a)(1) (emphasis added). The language covering federal employers is broader. There, the statute states that "[a]ll personnel actions affecting employees or applicants for employment . . . shall be made *free from any discrimination based on* race, color, religion, sex, or national origin." *Id*. at § 2000e-16(a) (emphasis added).

25. These textual differences "hold the Federal Government to a stricter standard than private employers or state or local governments." *Babb v. Wilkie*, 140 S. Ct. 1168, 1173–74 (2020) (relating to ADEA standard with identical wording to Title VII); *id*. at 1181 ("Because § 633a(a)'s language also appears in the federal-sector provision of Title VII, 42 U.S.C. § 2000e–16(a), the Court's rule presumably applies to claims alleging discrimination based on sex, race, religion, color, and national origin as well.") (Thomas, J., dissenting); *see also Smith v. City of Jackson*, 544 U.S. 228 (2005) (ADEA language should be read *in pari materia* with parallel language in Title VII); *Durr v. Dep't of Veterans Affs*., 843 F. App'x 246, 247 (11th Cir. 2021) (per curiam) (recognizing applicability of *Babb* to Title VII and lower causation threshold in federal employment context).

6

### 3. The June 15 Guidance Misapplies Title VII

26. The bathroom, dress code, and pronoun policies targeted by the June 15 Guidance do not discriminate based on gender identity and therefore do not violate *Bostock*. While that case held that "discrimination based on homosexuality or transgender status necessarily entails discrimination based on sex," 140 S. Ct. at 1747, the June 15 Guidance instead addresses "the converse question: whether discrimination on the basis of sex necessarily entails discrimination based on transgender status." *Adams v. Sch. Bd. of St. Johns Cnty.*, 3 F.4th 1299, 1332 (11th Cir. 2021) (Pryor, C.J., dissenting), *vacated, reh'g en banc granted,* ---F.4th---, 2021 WL 3722168 (Aug. 23, 2021).

27. As explained by Chief Judge Pryor: "Separating bathrooms by sex treats people differently on the basis of sex . . . [but] the mere act of determining an individual's sex, using the same rubric for both sexes, does not treat anyone differently on the basis of sex." *Id.* at 1325–26 (Pryor, C.J., dissenting).

28. The June 15 Guidance explicitly allows sex-specific bathrooms and implicitly allows sex-specific dress codes and pronoun usage policies as a general matter. But it then "tr[ies] to work around [those concessions] with a linguistic device" by conflating "sex" with "gender identity." *Doe 2 v. Shanahan*, 917 F.3d 694, 723 (D.C. Cir. 2019) (Williams, J., concurring in the result) (noting transgender plaintiffs' simultaneous concession that military may have sex-specific standards and assertion that "sex" should be determined by subjective gender identity).

### B. The State of Texas and its Employees

29. The State of Texas employs hundreds of thousands of people. TDA alone employs approximately 615 people.

30. TDA requires its employees to dress tastefully and professionally and be well-groomed. If any employee dressed as a member of the opposite sex, TDA would consider such conduct to be a violation of its standards.

31. TDA has both unisex single-occupancy bathrooms and bathrooms that are designated by sex. It interprets "sex" as referring to biological sex rather than gender identity. If any employee wanted to use the bathrooms designated for the opposite sex, TDA would reject such a request.

32. TDA does not have a policy of directing its employees to use pronouns based on gender identity to refer to other employees. It also does not discipline employees based on any use of pronouns based on biological sex rather than the gender identity of other employees. If any employee wanted TDA to require other employees to use pronouns based on gender identity, TDA would reject such a request.

C. **The Effect of the June 15 Guidance on the State of Texas and its Employees**

33. The June 15 Guidance has a direct and immediate impact on the day-to-day business of the State, its agencies, and its political subdivisions, including TDA.

34. Plaintiff faces imminent injury for noncompliance with the June 15 Guidance in the form of EEOC investigations, Justice Department enforcement actions, and suits by "private attorneys general," *Trafficante v. Metropolitan Life Ins. Co.*, 409 U.S. 205, 211 (1972), authorized by the Justice Department. State employers, including TDA, no less than private ones, are susceptible to "charges" of discrimination based on EEOC's unlawful interpretation of Title VII. *See* 42 U.S.C. § 2000e-5(b).

35. The only difference between EEOC's authority regarding State employers and private ones is that the Commission generally does not have the authority to directly initiate a civil enforcement action against the former. *See* 42 U.S.C. § 2000e-5(f)(1). When it is a State employer

8

that allegedly committed an unlawful employment practice, EEOC must refer the charge of discrimination to the Attorney General. *Id*. The Attorney General, in turn, can either sue the State or authorize the employee to do so. *Id*.

36. But EEOC does have the authority to investigate and adjudicate Title VII claims against a State employer where the claim is on behalf of certain high-level state employees. *See* 42 U.S.C. § 2000e-16c; 29 C.F.R. §§ 1603.109, 1603.304.

37. The State and its agencies often face lawsuits under Title VII, including on the basis of sex discrimination.

38. Burrows—in the name of EEOC—has issued a substantive interpretation of Title VII that purports to preempt the State's sovereign power to enact and abide by its workplace policies. The State must analyze, agency by agency, the risk of EEOC investigations arising from the June 15 Guidance's standards, facing the forced choice of either changing their policies at taxpayer expense or ignoring the June 15 Guidance and accepting impending enforcement actions and increased costs of litigation and liability under Title VII.

## IV. CLAIMS

### COUNT I

**(Substantive Violation of Title VII)**

39. Plaintiff incorporates by reference all preceding paragraphs.

40. The June 15 Guidance is a final agency action reviewable under the APA. *See* 5 U.S.C. § 701(a). There is no "evidence of legislative intention to preclude review" of the June 15 Guidance, much less the "clear and convincing evidence" that is required. *Japan Whaling Ass'n v. Am. Cetacean Soc'y*, 478 U.S. 221, 230 n.4 (1986).

41. The June 15 Guidance is unlawful because it violates 42 U.S.C. § 2000e-2 and Title VII as interpreted in *Bostock*.

42. It therefore violates the APA. It is both "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law" and "in excess of statutory jurisdiction, authority, or limitations." 5 U.S.C. § 706(2)(A), (C).

## COUNT II

### (Substantive Violation of the First Amendment to the U.S. Constitution)

43. Plaintiff incorporates by reference all preceding paragraphs.

44. The June 15 Guidance is "not in accordance with law" and "contrary to constitutional right, power, privilege, or immunity," 5 U.S.C. § 706(2)(A)–(B), because it violates the First Amendment to the U.S. Constitution.

45. By purporting to require that employers and their employees use of an individual's preferred pronouns based on subjective gender identity rather than biological sex, the June 15 Guidance unconstitutionally compels and restrains speech. *Meriwether v. Hartop*, 992 F.3d 492 (6th Cir. 2021).

46. Adopting the policies required by the June 15 Guidance would cause Texas to violate its employees' free speech rights.

## COUNT III

### (Procedural Violation of Title VII—Failure to Follow Statutory Requirements to Issue Technical Assistance)

47. Plaintiff incorporates by reference all preceding paragraphs.

48. The June 15 Guidance is categorized as a "technical assistance document," Ex. A at 1, but was not adopted by the means prescribed by Title VII for such documents.

49. EEOC has the power "to furnish to persons subject to this subchapter such technical assistance as they may request to further their compliance with this subchapter or an order issued thereunder." 42 U.S.C. § 2000e-4(g)(3).

50. Exercising that power, just like "exercis[ing] all the powers of the Commission," requires action of a majority of "a quorum" of "three members." *Id*. § 2000e-4(c). Although the Chairman, acting alone, is responsible "for the administrative operations of the Commission," *id*. § 2000e-4(a), she cannot provide "technical assistance," *id*. § 2000e-4(g)(3).

51. The June 15 Guidance was also not issued in accordance with Title VII's process for providing technical assistance.

52. Title VII establishes "a revolving fund . . . to pay the cost (including administrative and personnel expenses) of providing . . . technical assistance." *Id*. § 2000e-4(k)(1). To replenish the fund, EEOC must "charge fees . . . to offset the costs of . . . technical assistance." *Id*. § 2000e-4(k)(2)(A). "Such fees" must "be imposed on a uniform basis on persons and entities receiving such . . . assistance." *Id*. § 2000e-4(k)(2)(A)(i).

53. EEOC has not, however, followed this process or charged any fees at all related to the June 15 Guidance; it is available for free online on the Commission's website. *See* https://www.eeoc.gov/laws/guidance/protections-against-employment-discrimination-based-sexual-orientation-or-gender.

54. Because it did not follow the proper procedures, EEOC therefore cannot defend its issuance of the June 15 Guidance as an effort to provide "technical assistance."

55. The June 15 Guidance therefore violates the APA. It is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," "in excess of statutory jurisdiction,

11

authority, or limitations," and "without observance of procedure required by law." 5 U.S.C. § 706(2)(A), (C), (D).

## COUNT IV

### (Procedural Violation of Title VII—Issuance of an Invalid Substantive Rule)

56. Plaintiff incorporates by reference all preceding paragraphs.

57. The June 15 Guidance is a final agency action.

58. EEOC "may issue only 'procedural regulations' implementing Title VII and may not promulgate substantive rules." *Texas v. EEOC*, 933 F.3d 433, 439 (5th Cir. 2019) (citing 42 U.S.C. § 2000e-12(a)).

59. There are "two criteria [that] distinguish [procedural rules] from substantive rules: whether the rule (1) impose[s] any rights and obligations and (2) genuinely leaves the agency and its decisionmakers free to exercise discretion." *Texas v. United States*, 809 F.3d 134, 151–155 (5th Cir. 2015) (quotation omitted). Under those criteria, the June 15 Guidance is a substantive rule.

60. "Because the Guidance is a substantive rule, and the text of Title VII and precedent confirm that EEOC lacks authority to promulgate substantive rules implementing Title VII," *Texas*, 933 F.3d at 451, it is unlawful.

61. The June 15 Guidance therefore violates the APA. It is both "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law" and "in excess of statutory jurisdiction, authority, or limitations." 5 U.S.C. § 706(2)(A), (C).

## COUNT V

### (Failure to Follow the Requirements of Notice-and-Comment Rulemaking)

62. Plaintiff incorporates by reference all preceding paragraphs.

63. The June 15 Guidance is a final agency action reviewable under the APA. *See* 5 U.S.C. § 701(a).

64. The June 15 Guidance is a substantive or legislative rule that required notice-and-comment rulemaking. *See* 5 U.S.C. § 553. It is not exempt from the APA's notice-and-comment requirements as an interpretive rule, a general statement of policy, or a rule of agency organization, procedure, or practice. *See id.* § 553(b)(A).

65. Because EEOC did not use notice-and-comment procedures, the June 15 Guidance is invalid. *See* 5 U.S.C. § 706.

## COUNT VI

**(Failure to Follow Proper Procedures—Violation of Agency's Own Regulations)**

66. Plaintiff incorporates by reference all preceding paragraphs.

67. Burrows lacked the authority to issue the June 15 Guidance on her own. When a "guidance document sets forth the Commission's position on a legal principle for the first time or change[] the Commission's legal position on any issue, the Commission must approve the guidance document by majority vote." 29 C.F.R. § 1695.2(d).

68. The June 15 Guidance announced a new legal position: that non-federal employers are obligated to treat biological men as women and treat biological women as men. *See* Ex A at Questions 9–11.

69. The June 15 Guidance attempts to downplay the significance of this change by pointing to previous precedent about federal employers. *Id.* But as Title VII establishes different standards for federal and non-federal employers, an assertion that precedent governing federal employers extends to non-federal employers is a new legal position.

70. Because the Commission did not "approve the guidance document by a majority vote," 29 C.F.R. § 1695.2(d), it is invalid.

71. Alternatively, even if the June 15 Guidance did not set forth a new or changed position under 29 C.F.R. § 1695.2(d), Burrows would have had to circulate the document "to the Commission for informational purposes for a period of not less than five days, unless emergency circumstances do not allow." *Id.* On information and belief, she did not do so. Nor did she invoke the "emergency circumstances" exception that would have allowed her to do so. *See* Ex. A. Indeed, she could not have done so as there was no basis to do so. The June 15 Guidance is thus procedurally invalid.

72. More, Burrows violated the procedural requirements governing cost estimates. EEOC's procedural obligations turn in large part on whether a guidance document is "significant." *Compare* 29 C.F.R. § 1695.5(a) (imposing requirements for "[e]ach proposed significant guidance document"), and *id.* § 1695.4(b) (the procedures described in § 1695.5" are not required "[i]f the guidance document is determined not to be significant"). To avoid gamesmanship, the regulations explain how to determine significance.

73. Second, before issuing guidance, EEOC must provide the Office of Information and Regulatory Affairs "an opportunity to review a guidance document to determine if it meets the definition of "'significant guidance document.'" 29 C.F.R. § 1695.4(a). On information and belief, Burrows did not.

74. Because EEOC did not comply with its own rules, the June 15 Guidance violates the APA because it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," and "without observance of procedure required by law." 5 U.S.C. § 706(2)(A), (D).

## COUNT VII

**(Failure to Follow Proper Procedures—Failure to Publish Substantive Rule of General Applicability)**

75. Plaintiff incorporates by reference all preceding paragraphs.

76. The Freedom of Information Act requires agencies to publish in the Federal Register all "substantive rules of general applicability adopted as authorized by law, and statements of general policy or interpretations of general applicability formulated and adopted by the agency." 5 U.S.C. § 552(a)(1)(D).

77. The June 15 Guidance is "of general applicability." It purports to furnish guidance "for employers across the country." Ex. A at 2. However, it was not published in the Federal Register.

78. The June 15 Guidance therefore violates the APA. It is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," "in excess of statutory jurisdiction, authority, or limitations," and "without observance of procedure required by law." 5 U.S.C. § 706(2)(A), (C), (D).

## COUNT VIII

**(Substantive Violation of the Eleventh Amendment to the U.S. Constitution)**

79. Plaintiff incorporates by reference all preceding paragraphs.

80. The June 15 Guidance is "not in accordance with law" and "contrary to constitutional right, power, privilege, or immunity," 5 U.S.C. § 706(2)(A)–(B), because its interpretation of Title VII violates the Eleventh Amendment to the U.S. Constitution.

81. Congress may use its authority to enforce the Fourteenth Amendment to abrogate the States' sovereign immunity only to remedy violations of the Constitution by the States; it may not substantively redefine a State's constitutional obligations. *See City of Boerne v. Flores*, 521

U.S. 507, 520 (1997) (requiring "congruence and proportionality between the injury to be prevented or remedied and the means adopted to that end").

82. Congress never identified any pattern of discrimination by the States against employees based on homosexual status or transgender status, let alone one that amounted to a constitutional violation.

83. Because the June 15 Guidance is an unlawful attempt to abrogate Plaintiff's sovereign immunity, it is unconstitutional.

## COUNT IX

### (Arbitrary and Capricious Agency Action)

84. Plaintiff incorporates by reference all preceding paragraphs.

85. The APA prohibits agency actions that are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). This requires federal agencies to engage in "reasoned decision-making." *Allentown Mack Sales & Serv., Inc. v. NLRB*, 522 U.S. 359, 374 (1998) (quotation marks omitted). "Not only must an agency's decreed result be within the scope of its lawful authority, but the process by which it reaches that result must be logical and rational." *Id*. Put differently, "agency action is lawful only if it rests 'on a consideration of the relevant factors.'" *Michigan v. EPA*, 576 U.S. 743, 750 (2015) (quoting *State Farm*, 463 U.S. at 43).

86. The June 15 Guidance did not articulate reasons that justify extending precedent governing federal employers to non-federal employers, whose liability is judged under a different standard.

87. The absence of reasoning dooms any administrative action. "[A] court may uphold agency action only on the grounds that the agency invoked when it took the action." *Michigan*,

576 U.S. at 758 (citing *SEC v. Chenery Corp.*, 318 U.S. 80, 87 (1943)). Because there is no "basis articulated in the order by the agency itself," the June 15 Guidance cannot "be upheld." *Burlington Truck Lines, Inc. v. United States*, 371 U.S. 156, 168–69 (1962).

88. This result is the same even if the June 15 Guidance were determined to be an interpretive rule. An agency has an "obligation to explain its reasoning on the record" for interpretive rules just as it does for legislative rules. *Yale-New Haven Hosp. v. Leavitt*, 470 F.3d 71, 82 (2d Cir. 2006); *see Perez v. Mortgage Bankers Ass'n*, 575 U.S. 92, 105–06 (2015) When an agency, as EEOC did with the June 15 Guidance, offers "no contemporaneous explanation at all in promulgating the" interpretive rule at issue, the rule is invalid. *Id*. at 83; *see also Hicks v. Comm'r of Soc. Sec.*, 909 F.3d 786, 808 (6th Cir. 2018) (interpretation arbitrary and capricious because the agency's rule "did not include any of the reasons it now offers for" its interpretation).

89. Even if Burrows had provided some explanation, the June 15 Guidance would be arbitrary and capricious. "Agency action is lawful only if it rests on a consideration of the relevant factors." *Michigan*, 576 U.S. at 750 (internal quotation marks omitted). By implicitly equating federal employers and other employers, Burrows ignored EEOC's previous decisions.

90. Burrows "entirely failed to consider [that] important aspect of the problem*." Dep't of Homeland Sec. v. Regents of the Univ. of Cal.*, 140 S. Ct. 1891, 1913 (2020) (quoting *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 51 (1983)).

## V. DEMAND FOR JUDGMENT

Plaintiff the State of Texas requests the Court:

a. Declare that the June 15 Guidance is unlawful;

b. Vacate the June 15 Guidance;

    c.  Issue preliminary injunctive relief enjoining Defendants from enforcing or implementing the June 15 Guidance or, in the alternative, postpone the effective date of the June 15 Guidance;

    d.  Issue permanent injunctive relief enjoining Defendants from enforcing or implementing the June 15 Guidance;

    e.  Award Texas the costs of this action and reasonable attorney's fees; and

    f.  Award such other and further relief as the Court deems equitable and just.

Respectfully submitted,

| | |
|---|---|
| KEN PAXTON<br>Attorney General of Texas<br><br>BRENT WEBSTER<br>First Assistant Attorney General | PATRICK K. SWEETEN<br>Deputy Attorney General for Special Litigation<br>Texas Bar No. 00798537<br><br>WILLIAM T. THOMPSON<br>Deputy Chief, Special Litigation Unit<br>Texas Bar No. 24088531<br><br>*/s/ Ryan D. Walters*<br>RYAN D. WALTERS<br>*Attorney-in-Charge*<br>Special Counsel<br>Texas Bar No. 24105085<br><br>LEIF A. OLSON<br>Special Counsel<br>Texas Bar No. 24032801<br><br>OFFICE OF THE ATTORNEY GENERAL<br>SPECIAL LITIGATION UNIT<br>P.O. Box 12548 (MC-009)<br>Austin, Texas 78711-2548<br>Tel.: (512) 463-2100<br>Fax: (512) 457-4410<br>will.thompson@oag.texas.gov<br>ryan.walters@oag.texas.gov<br>leif.olson@oag.texas.gov<br><br>*Counsel for Plaintiff State of Texas* |