## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF TEXAS
## AMARILLO DIVISION

| | |
|---|---|
| THE STATE OF TEXAS,<br><br>     Plaintiff,<br><br>v.<br><br>EQUAL EMPLOYMENT OPPORTUNITY<br>COMMISSION, *et al.*,<br><br>     Defendants. | Case No. 2:21-cv-00194<br><br>District Judge Matthew J. Kacsmaryk |

## DEFENDANTS' MOTION TO DISMISS FOR LACK OF JURISDICTION

# TABLE OF CONTENTS

INTRODUCTION.................................................................................................................1

BACKGROUND ...............................................................................................................3

I.  THE EEOC's LONGSTANDING INTERPRETATIONS OF TITLE VII ...........................3

II.  THE SUPREME COURT'S *BOSTOCK* DECISION ................................................4

III.  THE CHALLENGED 2021 TECHNICAL ASSISTANCE DOCUMENT.......................5

IV.  THE EEOC's ENFORCEMENT FRAMEWORK ....................................................7

LEGAL STANDARDS........................................................................................................7

ARGUMENT.....................................................................................................................8

I.  Texas Lacks Article III Standing. ...............................................................8

    A.  Texas Has Failed to Plausibly Allege Any Imminent Risk of Injury.................10

    B.  Texas Cannot Show that Any of Its Alleged Injuries Would Be Traceable to the EEOC Document, or that Such Injuries Would Be Redressable by Its Requested Injunctive Relief. ...............................................................13

II.  Texas' Claims Are Not Ripe. ....................................................................15

III.  Texas Has an Adequate Alternative Remedy under Title VII. .....................17

IV.  The EEOC Document Does Not Constitute Final Agency Action..................18

CONCLUSION................................................................................................................22

# TABLE OF AUTHORITIES

## CASES

*AT&T Co. v. EEOC,*
  270 F.3d 973 (D.D.C. 2001)..................................................................................................19

*Baldwin v. Dep't of Transp.,*
  EEOC Appeal No. 0120133080 (July 15, 2015)..........................................................3, 5-6

*Bennett v. Spear,*
  520 U.S. 154 (1997)..............................................................................................................18

*Bostock v. Clayton Cnty.,*
  140 S. Ct. 1731 (2020) ................................................................................................. passim

*Cal. Fed. Sav. & Loan Ass'n v. Guerra,*
  479 U.S. 272 (1987)..............................................................................................................13

*Choice Inc. of Tex. v. Greenstein,*
  691 F.3d 710 (5th Cir. 2012) ..............................................................................................16

*Clapper v. Amnesty Int'l USA,*
  568 U.S. 398 (2013).................................................................................................... passim

*Ctr. for Auto Safety v. Nat'l Highway Traffic Safety Admin.,*
  452 F.3d 798 (D.C. Cir. 2006) ......................................................................................21-22

*DaimlerChrysler Corp. v. Cuno,*
  547 U.S. 332 (2006)................................................................................................................8

*De La Garza Gutierrez v. Pompeo,*
  741 F. App'x 994 (5th Cir. 2018) ......................................................................................17

*Garcia v. Vilsack,*
  563 F.3d 519 (D.C. Cir. 2009) ...........................................................................................17

*Glass v. Paxton,*
  900 F.3d 233 (5th Cir. 2018) ..............................................................................................12

*Golden & Zimmerman, LLC v. Domenech,*
  599 F.3d 426 (4th Cir. 2010)..............................................................................................22

*Hadley-Mem'l Hosp. v. Kynard,*
  981 F. Supp. 690 (D.D.C. 1997) ........................................................................................22

*Hinojosa v. Horn,*
  896 F.3d 305 (5th Cir. 2018), *cert. denied,* 139 S. Ct. 1319 (2019) ...............................17

*In re Compl. of RLB Contracting, Inc.*,
   773 F.3d 596 (5th Cir. 2014) ..............................................................................8

*Lujan v. Defs. of Wildlife*,
   504 U.S. 555 (1992)................................................................................7-8, 9

*Luminant Generation Co. v. U.S. E.P.A.*,
   757 F.3d 439 (5th Cir. 2014) .............................................................................19

*Lusardi v. Dep't,*
   *of the Army*, EEOC Appeal No. 0120133395 (Apr. 1, 2015)................................3, 4, 6

*Machete Prods., LLC v. Page*,
   809 F.3d 281 (5th Cir. 2015) ..............................................................................8

*Macy v. Dep't of Justice*,
   EEOC Appeal No. 0120120821 (Apr. 20, 2012) ....................................................3, 5, 6

*Massachusetts v. Mellon*,
   262 U.S. 447 (1923).....................................................................................12, 13

*Monk v. Huston*,
   340 F.3d 279 (5th Cir. 2003) ........................................................................15-16, 17

*NAACP v. Meese*,
   615 F. Supp. 200 (D.D.C. 1985) .........................................................................18

*Nat'l Mining Ass'n v. McCarthy*,
   758 F.3d 243 (D.C. Cir. 2014) ...........................................................................21

*Nat'l Park Hosp. Ass'n v. Dep't of Interior*,
   538 U.S. 803 (2003).....................................................................................15, 16

*Ohio Forestry Ass'n v. Sierra Club*,
   523 U.S. 726 (1998).....................................................................................9

*Peoples Nat. Bank v. Officer of Comptroller of Currency of the U.S.*,
   362 F.3d 333 (5th Cir. 2004) .........................................................................18-19

*Platt v. Bd. of Comm'rs on Grievances & Discipline of Ohio Sup. Ct.*,
   769 F.3d 447 (6th Cir. 2014) ...........................................................................9

*Princeton Univ. v. Schmid*,
   455 U.S. 100 (1982).....................................................................................16

*Raines v. Byrd*,
   521 U.S. 811 (1997).....................................................................................9

*Ramming v. United States,*
    281 F.3d 158 (5th Cir. 2001) ................................................................................7

*Rhea Lana, Inc. v. Dep't of Labor,*
    824 F.3d 1023 (D.C. Cir. 2016) ..........................................................................22

*Roark & Hardee LP v. City of Austin,*
    522 F.3d 533 (5th Cir. 2008) .........................................................................15, 16

*Simon v. E. Ky. Welfare Rights Org.,*
    426 U.S. 26 (1976) ...............................................................................................8

*Spokeo, Inc. v. Robins,*
    578 U.S. 330 (2016) .............................................................................................9

*Steel Co. v. Citizens for a Better Env't,*
    523 U.S. 83 (1998) ...........................................................................................8-9

*Texas v. EEOC,*
    933 F.3d 433 (5th Cir. 2019) .........................................................................19-20

*Texas v. United States,*
    523 U.S. 296 (1998) .......................................................................................16, 17

*Thomas v. Union Carbide Agric. Prods. Co.,*
    473 U.S. 568 (1985) .......................................................................................16, 17

*Three Expo Events, LLC v. City of Dallas,*
    907 F.3d 333 (5th Cir. 2018) ................................................................................8

*Town of Chester v. Laroe Estates, Inc.,*
    137 S. Ct. 1645 (2017) .........................................................................................8

*Trump v. New York,*
    141 S. Ct. 530 (2020) ...............................................................................9, 10-11

*U.S. Army Corps of Eng'rs v. Hawkes Co.,*
    578 U.S. 590 (2016) ...........................................................................................18

*Warth v. Seldin,*
    422 U.S. 490 (1975) .............................................................................................9

## STATUTES

5 U.S.C. § 704 .....................................................................................................2, 17, 18

42 U.S.C. § 2000e-2 .....................................................................................................4

42 U.S.C. § 2000e-5 .................................................................................................7, 14

42 U.S.C. § 2000e-7 ..........................................................................................................13

42 U.S.C. § 2000e-16 .........................................................................................................3

**RULES**

Fed. R. Civ. P. 12..........................................................................................................7, 8

**REGULATIONS**

29 C.F.R. Part 1601 ..........................................................................................................2

29 C.F.R. § 1601.28..........................................................................................................7

29 C.F.R. § 1614 Subpart D ..........................................................................................3

**OTHER AUTHORITIES**

Preventing Employment Discrimination Against Lesbian, Gay, Bisexual or Transgender Workers,
    https://www.eeoc.gov/laws/guidance/preventing-employment-discrimination-against-lesbian-
    gay-bisexual-or-transgender..........................................................................................4

What You Should Know: EEOC Regulations, Subregulatory Guidance and other Resource
    Documents | U.S. Equal Employment Opportunity Commission,
    https://www.eeoc.gov/laws/guidance/what-you-should-know-eeoc-regulations-
    subregulatory-guidance-and-other-resource...............................................................1

## INTRODUCTION

For almost a decade, the Equal Employment Opportunity Commission ("EEOC" or "Commission") has interpreted the sex discrimination prohibition in Title VII of the Civil Rights Act of 1964 ("Title VII") as encompassing discrimination on the basis of gender identity and sexual orientation.  More specifically, the EEOC has repeatedly and consistently provided the public with its view, first announced in EEOC administrative decisions dating from as far back as 2012, that employment discrimination based on sexual orientation or gender identity constitutes sex discrimination prohibited by Title VII.

In June 2020, the Supreme Court held that discrimination based on homosexuality or transgender status constitutes discrimination "because of sex" within the meaning of the prohibitions of Title VII.  *Bostock v. Clayton Cnty.*, 140 S. Ct. 1731 (2020).  This decision was consistent with the EEOC's longstanding interpretation of Title VII.  In June 2021, the EEOC issued a nonbinding technical assistance document[1] ("EEOC Document"), which carries no independent legal force and summarized in easily understandable terms the Supreme Court's decision in *Bostock* and various pre-existing EEOC decisions that had interpreted Title VII's prohibition on sex discrimination.  Texas now asks this Court to vacate this nonbinding EEOC Document and enjoin the EEOC and Department of Justice ("DOJ") from enforcing or implementing it.  Texas' suit is based on the erroneous claim that the EEOC Document itself expresses new interpretations of Title VII and the *Bostock* decision, in violation of the Administrative Procedure Act ("APA") and the U.S. Constitution.

---

[1] A technical assistance document is a type of resource document intended to help the public understand existing EEOC positions.  *See* What You Should Know: EEOC Regulations, Subregulatory Guidance and other Resource Documents | U.S. Equal Employment Opportunity Commission, found at https://www.eeoc.gov/laws/guidance/what-you-should-know-eeoc-regulations-subregulatory-guidance-and-other-resource, for more information (last accessed Dec. 22, 2021).

Texas' complaint should be dismissed for lack of subject-matter jurisdiction. Texas fails to establish that it has Article III standing to bring this action, because it does not, and cannot, plausibly allege any imminent risk of harm as a result of the EEOC Document. Even if Texas could establish that there was an imminent risk of harm, it has failed to demonstrate that any such risk would be traceable to the EEOC Document itself, or redressable by the relief sought. The Document is merely informative: it simply summarizes the Supreme Court's *Bostock* decision and reiterates the EEOC's long-standing view of Title VII. Because any subsequent EEOC actions will be based on the statute, case law, and longstanding administrative decisions, not the EEOC Document, any action this Court may take with respect to the EEOC Document itself would not redress Texas' claimed injury. For the same reasons, Texas' challenge is not ripe.

To the extent Texas wishes to challenge the EEOC's longstanding interpretations of Title VII's prohibition against sex discrimination, Title VII and the EEOC's administrative procedural regulations at 29 C.F.R. Part 1601 provide an adequate alternative remedy that renders the present APA challenge non-justiciable. 5 U.S.C. § 704 (even where there is final agency action, such action is only reviewable only when "there is no other adequate remedy in court"). The appropriate avenue for Texas to challenge the EEOC's interpretation of Title VII would come in the context of an actual Tile VII investigation or lawsuit, at which time Texas would have an opportunity to present all the arguments it raises in its Complaint, prior to any consequences being imposed for an alleged violation of the statute. Finally, even absent this jurisdictional defect, there is another: there is no final agency action here that can be subject to an APA review. For these reasons, this complaint should be dismissed for lack of jurisdiction under Rule 12(b)(1).

## BACKGROUND

### I.  THE EEOC's LONGSTANDING INTERPRETATIONS OF TITLE VII

The EEOC is responsible for enforcing the antidiscrimination provisions of Title VII of the Civil Rights Act of 1964.[2]  Since 2012 – long before *Bostock* – the EEOC has interpreted Title VII's prohibition on sex discrimination to include discrimination against transgender individuals.  In *Macy v. Dep't of Justice*, EEOC Appeal No. 0120120821 (Apr. 20, 2012), the Commission first held that discrimination against transgender individuals is sex discrimination in violation of Title VII, based on its interpretation of the statutory text.  In 2015, in *Baldwin v. Dep't of Transp.*, EEOC Appeal No. 0120133080 (July 15, 2015), the commission found that a claim alleging discrimination on the basis of sexual orientation stated a claim of discrimination on the basis of sex under Title VII.  And in *Lusardi v. Dep't of the Army*, EEOC Appeal No. 0120133395 (Apr. 1, 2015), the Commission held that an employer violated Title VII when it denied an employee equal access to a common restroom corresponding to the employee's gender identity.[3]

In April 2016, the EEOC issued a technical assistance document authorized by the EEOC Chair ("2016 EEOC Document") concerning the EEOC's interpretation of sex discrimination under

---

[2]  *See generally* 42 U.S.C. § 2000e-16 (b) (as amended) ("[t]he Equal Employment Opportunity Commission shall have authority to enforce the provisions of . . . this section through appropriate remedies . . . and shall issue such rules, regulations, orders, and instructions as it deems necessary and appropriate to carry out its responsibilities under this section."); *see also id.* at 2000e-16(c) (as amended) (within 90 days of notice of final action by the EEOC upon an appeal from a decision or order of a federal department or agency, an employee or applicant may file a civil action) (emphasis supplied); 29 C.F.R. § 1614, Subpart D – Appeals and Civil Actions (EEOC regulations for appeals of federal sector agency EEO decisions to the Commission).

[3]  Prior to the Supreme Court's decision in *Bostock*, EEOC also investigated charges alleging discrimination based on sexual orientation and gender identity and filed suit against some private employers in cases alleging discrimination against a transgender employee.  *See, e.g., EEOC v. Deluxe Financial Servs. Ins.*, No. 15-cv-02646 (D. Minn.) (enforcement action where transgender employee was not allowed to use their pronoun or restroom of choice); *EEOC v. Apple-Metro, Inc.*, No. 1:17-cv-04333 (S.D.N.Y.) (enforcement action where a transgender employee experienced a hostile work environment based upon, among other conduct, the misuse of pronouns); *EEOC v. Bojangles Rests., Inc.*, No. 5:16-cv-00654 (E.D.N.C.) (enforcement action where transgender employee was subject to a

Title VII as including discrimination based on gender identity and sexual orientation; this document is available to the public on the EEOC's website. *See* Preventing Employment Discrimination Against Lesbian, Gay, Bisexual or Transgender Workers (brochure), available at https://www.eeoc.gov/laws/guidance/preventing-employment-discrimination-against-lesbian-gay-bisexual-or-transgender (brochure) (last accessed Dec. 22, 2021). Ex. 1 to Peeler Declaration. Like the EEOC Document at issue in this case, the 2016 EEOC Document cited to the EEOC's administrative decision in *Lusardi v. Department of the Army*, EEOC Appeal No. 0120133395 (Apr. 1, 2015), and noted the EEOC's view that the denial of a bathroom consistent with a transgender employee's gender identity could constitute sex discrimination and the intentional and persistent misuse of a transgender individual's preferred pronouns could contribute to unlawful harassment in violation of Title VII. *Id.*

## II.   THE SUPREME COURT'S *BOSTOCK* DECISION

The Supreme Court's 6-3 decision in *Bostock* establishes that discrimination based on homosexuality or transgender status is barred by Title VII as a form of sex discrimination. 140 S. Ct. at 1741-42; 42 U.S.C. § 2000e-2. In reaching its conclusion, the Court observed that "[t]hose who adopted the Civil Rights Act might not have anticipated their work would lead to this particular result," but that the statutory text nonetheless required that discrimination based on homosexuality or transgender status be encompassed within the statute's prohibition against discrimination "because of sex." *Bostock*, 140 S. Ct. at 1737.

The Court concluded that "it is impossible to discriminate against a person for being homosexual or transgender without discriminating against that individual based on sex." *Id.* at 1741.

---

hostile work environment where, among other things, the employer refused to allow the worker to present as her preferred gender); *Broussard v. First Tower Loan LLC*, No. 2:15-cv-01161 (E.D. La.) (enforcement action where employer fired a transgender employee who refused to dress in clothing consistent with birth sex).

It explained that "homosexuality and transgender status are inextricably bound up with sex" because "to discriminate on these grounds requires an employer to intentionally treat individual employees differently because of their sex." *Id.* at 1742. It rejected the employers' contention that Congress had to specifically name sexual orientation or gender identity in the statute to protect against discrimination on those bases: there is no "such thing as a 'canon of donut holes,' in which Congress's failure to speak directly to a specific case that falls within a more general statutory rule creates a tacit exception." *Id.* at 1747. The Court concluded that where an employee's homosexuality or transgender status was a but-for cause of an adverse employment action, that action occurred "because of sex." *Id.*

### III.   THE CHALLENGED 2021 TECHNICAL ASSISTANCE DOCUMENT

In June 2021, consistent with prior EEOC federal sector administrative decisions (*Macy*, *Baldwin*, and *Lusardi*), the 2016 EEOC Document, and numerous consent decrees resolving EEOC enforcement actions, *see supra* n.3, the EEOC issued the EEOC Document, which discussed Title VII's prohibitions against employment discrimination on the basis of sexual orientation and gender identity. Compl. Ex. A. The EEOC Document explicitly stated that "[t]he contents of this document do not have the force and effect of law and are not meant to bind the public in any way." *Id.* at 3. The EEOC Document expressly did not reflect new or changed policy; rather, it says on its face that it is "intended only to provide clarity to the public regarding existing requirements under the law or agency policies." *Id.*

The EEOC Document has two parts. First, it provided a brief summary of the Court's *Bostock* decision. *Id.* Second, it (once again) reiterated the EEOC's "*established* legal positions on LGBTQ+-related matters, as voted by the Commission." *Id.* at 3-4 (emphasis added). The EEOC Document stated that, years before the *Bostock* decision, the EEOC "decided an array of matters involving employment discrimination based on sexual orientation and gender identity." *Id.* at 4. For example, the EEOC had taken the position in 2012 that Title VII prohibits gender identity discrimination, and

in 2015 that it also prohibits sexual orientation discrimination. *Id* (citing *Macy v. Dep't of Justice*, EEOC Appeal No. 0120120821 (Apr. 20, 2012), and *Baldwin v. Dep't of Transp.*, EEOC Appeal No. 0120133080 (July 15, 2015)).

Citing the Commission's 2015 decision in *Lusardi*, the EEOC Document explained that "[p]rohibiting a transgender person from dressing or presenting consistent with that person's gender identity would constitute sex discrimination." *Id.* at 7. The EEOC also stated that "[c]ourts have long recognized that employers may have separate bathrooms, locker rooms, and showers for men and women, or may choose to have unisex or single-use bathrooms, locker rooms, and showers." *Id.* at 8. In addition, the EEOC Document noted that since 2015, the Commission has taken the position that employers may not deny an employee equal access to a bathroom, locker room, or shower that corresponds to the employee's gender identity. *Id.* (citing *Lusardi*).

The EEOC Document explained that, "in certain circumstances," the use of pronouns that are inconsistent with an individual's gender identity could constitute unlawful harassment, *i.e.*, where the conduct, "when considered together with all other unwelcome conduct based on the individual's sex including gender identity," is sufficiently severe or pervasive to create a hostile work environment. *Id.* (citing *Lusardi*). The EEOC Document noted that in the 2015 *Lusardi* decision, the EEOC explained that while the accidental failure to use an employee's preferred name and pronouns would not violate Title VII, the intentional and repeated misuse of an employee's preferred pronouns "could contribute to an unlawful hostile work environment." *Id.* The EEOC Document explicitly did not decide the outcome of any particular case. *Id.* at 8-9 (stating that, if an individual "decides to file a charge of discrimination with the EEOC, the agency will conduct an investigation to determine *if* applicable . . . laws have been violated") (emphasis added). Rather, it described the holdings in federal sector administrative decisions of the Commission.

## IV.     THE EEOC's ENFORCEMENT FRAMEWORK

The EEOC plays a limited role in enforcing Title VII with respect to the states.  Whereas the EEOC may bring enforcement actions against private employers, it is not authorized to file suit against states under Title VII.  *See* 42 U.S.C. § 2000e-5(f)(1).  If state employees or job applicants believe that they have been subjected to an unlawful employment practice, they can file a charge with the EEOC.  *Id.* § 2000e-5(b).  The EEOC must then investigate and if, after completing its investigation, it determines that "there is not reasonable cause to believe that the charge is true, it shall dismiss the charge and promptly notify the person claiming to be aggrieved and the [state] of its action."  *Id.*  The notice to the employee or applicant is typically referred to as a "notice of right to sue" because employees or applicants can file suit only after they receive the notice.[4]  *Id.* § 2000e-5(f)(1).  If, however, the EEOC concludes that there is reasonable cause to believe that an employer violated Title VII, then it initiates conciliation.  *Id.* § 2000e-5(b).  This is a process by which the EEOC tries to facilitate a settlement agreement with the state.  *Id.*  If conciliation fails, Title VII requires the EEOC to refer the matter to DOJ, which decides whether to bring a Government enforcement action or issue a notice of right to sue, which enables the employee to initiate a private suit in a *de novo* district court proceeding.  *Id.*

## LEGAL STANDARDS

"Motions filed under Rule 12(b)(1) of the Federal Rules of Civil Procedure allow a party to challenge the subject matter jurisdiction of the district court to hear a case."  *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001).  To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(1), a plaintiff bears the burden to establish a court's jurisdiction.  *Lujan v. Defs. of*

---

[4] An individual can also request that the EEOC issue a notice of right to sue before it completes its investigation.  29 C.F.R. § 1601.28(a)(1), (a)(2), (d)(2).  When a charging party requests a notice of right to sue in a charge involving a government respondent, such as a state or state agency, the Attorney General will issue the notice.  *Id.* § 1601.28(d)(2).

*Wildlife*, 504 U.S. 555, 561 (1992).  It is "presume[d] that federal courts lack jurisdiction unless the contrary appears affirmatively from the record." *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 342 n.3 (2006) (citation omitted).

"[I]n examining a Rule 12(b)(1) motion, a district court is empowered to find facts as necessary to determine whether it has jurisdiction." *Machete Prods., LLC v. Page*, 809 F.3d 281, 287 (5th Cir. 2015).  Accordingly, "the district court may consider evidence outside the pleadings and resolve factual disputes." *In re Compl. of RLB Contracting, Inc.*, 773 F.3d 596, 601 (5th Cir. 2014); *see also Three Expo Events, LLC v. City of Dallas*, 907 F.3d 333, 343 (5th Cir. 2018) (on a Rule 12(b)(1) motion, a district court is "free to weigh the evidence and satisfy itself … of its power to hear the case") (citation omitted).

## ARGUMENT

Texas cannot establish that this Court has subject matter jurisdiction over its claims for four reasons: (1) it lacks standing to sue; (2) its claims are not ripe; (3) an adequate alternative remedy exists; and (4) the EEOC Document does not constitute final agency action.  The lack of an adequate alternative remedy and final agency action are both jurisdictional prerequisites for APA actions in this circuit.

## I.     Texas Lacks Article III Standing.

"Article III of the Constitution limits federal courts' jurisdiction" to the adjudication of "'Cases' and 'Controversies.'"  *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 408 (2013).  "[A]n essential and unchanging part of the case-or-controversy requirement" is that would-be plaintiffs must have "standing to invoke the authority of a federal court[,]" *DaimlerChrysler Corp.*, 547 U.S. at 342 (citation omitted), assuring they have a "personal stake in the outcome of [a] controversy" that "justif[ies] exercise of the court's remedial powers on [their] behalf." *Town of Chester v. Laroe Estates, Inc.*, 137 S. Ct. 1645, 1650 (2017) (quoting *Simon v. E. Ky. Welfare Rights Org.*, 426 U.S. 26, 38 (1976)).  Standing is

therefore a "threshold jurisdictional question[,]" *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 102 (1998), determining "the power of the court to entertain the suit," *Warth v. Seldin*, 422 U.S. 490, 498 (1975). The Supreme Court has held that "'[o]ur standing inquiry has been especially rigorous when reaching the merits of the dispute would force us to decide whether an action taken by one of the other two branches of the Federal Government was unconstitutional." *Clapper*, 568 U.S. at 408 (quoting *Raines v. Byrd*, 521 U.S. 811, 819-20 (1997)).

Texas, as the party "invoking federal jurisdiction[,] bears the burden of establishing" standing. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992). Texas "must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). Where a plaintiff seeks prospective relief, the "threatened injury must be *certainly impending* to constitute injury in fact;" "[a]llegations of possible future injury are not sufficient." *Clapper*, 568 U.S. at 409 (emphasis and citation omitted). That is, the prospect of enforcing a purportedly unlawful statutory or regulatory regime against the Plaintiff must be "sufficiently imminent" to create a concrete injury. *Platt v. Bd. of Comm'rs on Grievances & Discipline of Ohio Sup. Ct.*, 769 F.3d 447, 451 (6th Cir. 2014) (citation omitted). In addition, and critically important here, a "theory of standing [that] relies on a highly attenuated chain of possibilities, does not satisfy" this requirement. *Clapper*, 568 U.S. at 410. "The plaintiff . . . bears the burden of establishing these elements," and therefore "must clearly . . . allege facts demonstrating each element." *Spokeo*, 578 U.S. at 338 (quoting *Warth*, 422 U.S. at 518). Where, as here, "plaintiffs suffer no concrete harm from the challenged policy itself, which does not require them 'to do anything or to refrain from doing anything,'" they lack standing. *Trump v. New York*, 141 S. Ct. 530, 536 (2020) (quoting *Ohio Forestry Ass'n v. Sierra Club*, 523 U.S. 726, 733 (1998)).

### A.      Texas Has Failed to Plausibly Allege Any Imminent Risk of Injury.

Texas has failed to demonstrate any imminent risk of harm, instead relying entirely on speculative hypotheticals involving highly-attenuated chains of possibilities that may very well never come to pass.

Texas contends that it faces "imminent injury for noncompliance with the June 15 Guidance in the form of EEOC investigations, Justice Department enforcement actions, and suits by 'private attorneys general.'"  Compl. ¶ 34.  However, Texas has not alleged that it is currently engaged in any litigation alleging that it has violated Title VII's antidiscrimination provisions by discriminating against an employee on the basis of gender identity or sexual orientation, or that it is currently being investigated in connection with a complaint of such discrimination.  Nor has it alleged that it is aware of any imminent or threatened litigation or investigations along those lines.  Texas has identified a single agency – the Texas Department of Agriculture ("TDA") – that it contends has policies that conflict with the EEOC Document.  Compl. ¶¶ 30-32.  But without an immediate threat of enforcement, that is insufficient to confer standing.  In short, Texas' allegations of injury from the challenged EEOC Document are too speculative to confer standing.  Texas has failed to show that it has suffered an injury-in-fact or that it faces any imminent threatened injury.

Supreme Court precedent supports the conclusion that Texas' purported injuries are too speculative to constitute an injury-in-fact.  In *Trump v. New York*, 141 S. Ct. 530 (2020), for example, the Supreme Court considered New York's constitutional challenge to a Presidential Memorandum concerning the census that declared a policy of excluding "from the apportionment base [noncitizens] who are not in a lawful immigration status."  141 S. Ct. at 534 (citation omitted).  The Court found that the plaintiffs' theory of standing was "riddled with contingencies and speculation that impede judicial review."  *Id.* at 535.  In that case, the President had stated his policy in plain terms, but it was not yet clear how the policy would be put into practice or whether the Government's specific

implementation of the policy would inflict any harm on the plaintiffs.  *Id.* at 536.  As the Court explained, "[t]he Government's eventual action will reflect both legal and practical constraints, making any prediction about future injury just that – a prediction."  *Id.*

The Supreme Court's analysis in *Trump* is instructive as to the sorts of injuries that are too speculative to constitute an injury-in-fact for standing purposes.  Indeed, this case presents an even more speculative purported injury, because the EEOC Document does not announce new policy at all, let alone plausibly result in the alleged harms.  The EEOC Document is merely explanatory – other than summarizing the holding in *Bostock*, it simply restates the agency's established views concerning Title VII, and does not discuss how the EEOC will apply its interpretations to any real-world factual record, or address whether there will ever be any enforcement actions against Texas or any other employer.  To the contrary, Texas faces a long chain of procedural contingencies before it might suffer any liability: an employee must first file a charge; an EEOC investigation must find reasonable cause to believe that the specific facts amounted to a legal violation; conciliation must fail; DOJ must determine independently that litigation against Texas is appropriate; and a court must be persuaded that there was in fact a violation.  *See supra* at Bckgd. Part IV (describing procedures).  Texas has not alleged *any* of these facts.  Accordingly, as in *Trump*, Texas' "prediction about future injury [is] just that – a prediction."  *Trump*, 141 S. Ct. at 536.

Texas' assertion that the EEOC Document causes injury because Texas "must analyze, agency by agency, the risk of EEOC investigations arising from the [EEOC Document's] standards, facing the forced choice of either changing their policies at taxpayer expense or ignoring the [EEOC Document] and accepting impending enforcement actions and increased costs of litigation and liability under Title VII," Compl. ¶ 38, fails for similar reasons.  Without any certainly impending harm, costs incurred in anticipating and proactively responding to legal uncertainties are not Article III injuries.  *See Clapper*, 568 U.S. at 418.  In *Clapper*, plaintiffs were attorneys and human rights, labor, legal, and

media organizations who alleged that certain government surveillance policies had forced them to undertake "'costly and burdensome measures' to protect the confidentiality of sensitive communications." *Id.* at 406-07 (citation omitted). The Supreme Court held that plaintiffs' alleged injuries did not confer Article III standing. As relevant here, the Court concluded that plaintiffs' "contention that they have standing because they incurred certain costs as a reasonable reaction to a risk of harm is unavailing – because the harm respondents seek to avoid is not certainly impending." *Id.* at 416. The Court further determined that "[b]ecause respondents do not face a threat of certainly impending interception under [the challenged provision], the costs that they have incurred to avoid surveillance are simply the product of their fear of surveillance." *Id.* at 417.

As in *Clapper*, any decision by Texas to change its behavior due to a fear of future enforcement that is not certainly impending does not confer standing. *See also, e.g., Glass v. Paxton*, 900 F.3d 233, 239-42 (5th Cir. 2018) (holding that decision to self-censor based on subjective apprehension of future event which has not plausibly been shown to be imminent cannot be the basis for standing). As discussed above, the EEOC Document does not "regulate, constrain, or compel any action on [plaintiff's] part," and Texas has not shown any credible threat of an enforcement action by the federal government against it, much less any threat that is "certainly impending." *See Clapper*, 568 U.S. at 419. Any future injury that Texas alleges is purely speculative. *See id.* at 418.

Texas' claim that the EEOC Document presents an injury by infringing upon Texas' sovereignty also fails as a matter of law. Texas asserts that the EEOC "has issued a substantive interpretation of Title VII that purports to preempt the State's sovereign power to enact and abide by its workplace policies." Compl. ¶ 38. Those allegations are entirely speculative and cannot be reconciled with the Supreme Court's decision in *Massachusetts v. Mellon*, 262 U.S. 447, 485 (1923), which made clear that Article III jurisdiction is not satisfied by raising "abstract questions . . . of sovereignty." There, Congress had enacted through the Spending Clause a program permitting States to accept

funding to protect the health of mothers and infants and provided that violating the program's conditions could result in the withholding of funds. *Id.* at 478-79, 484-85. Massachusetts brought suit, alleging that the statute "imposed upon the States an illegal and unconstitutional option either to yield to the federal government a part of their reserved rights or lose their share of the moneys appropriated." *Id.* at 482. The Court held that the State's "naked contention that Congress has usurped the reserved powers of the several [S]tates by the mere enactment of the statute" was insufficient to establish an Article III case or controversy. *Id.* at 483. Instead, the Court held that Massachusetts was required to allege that a sovereign interest was "actually invaded or threatened," *id.* at 485. Indeed, even if Texas had plausibly alleged any injury to its state sovereignty, such injury would not be traceable to the EEOC Document it challenges in this lawsuit. The EEOC Document does not purport to preempt contrary state law and policy; rather, Title VII itself expressly does so. *See* 42 U.S.C. § 2000e-7 (providing that Title VII preempts state law claims for employment discrimination or harassment where the state law is inconsistent with Title VII); *Cal. Fed. Sav. & Loan Ass'n v. Guerra*, 479 U.S. 272, 292 (1987) (recognizing that Title VII preempts inconsistent state laws). Regardless, Texas has failed to plausibly identify any sovereign interest that has actually been invaded or threatened here, and this therefore cannot be the basis for Article III standing.

**B.      Texas Cannot Show that Any of Its Alleged Injuries Would Be Traceable to the EEOC Document, or that Such Injuries Would Be Redressable by Its Requested Injunctive Relief.**

As explained above, Texas has failed to identify any plausible injury that flows from the nonbinding EEOC Document challenged here. But even if Texas could establish an injury-in-fact, it would not be able to satisfy the traceability and redressability elements of the standing inquiry, for two reasons: First, any legal consequences flow from Title VII itself, not the EEOC Document; and second, the EEOC Document merely summarizes existing law and longstanding EEOC policy.

First, as noted above, Title VII's prohibition on sex discrimination based on sexual orientation and gender identity is not a product of the EEOC Document; it is a part of the statute itself. *See Bostock*, 140 S. Ct. at 1737-42. As an initial matter, the EEOC cannot bring Title VII enforcement suits against states. *See* 42 U.S.C. § 2000e-5(f)(1). Even if it could, Title VII's prohibition on sex discrimination exists entirely independently from and regardless of the EEOC Document. Even if the EEOC Document were vacated, and the EEOC enjoined from acting on it, neither the scope of Title VII's protections against sex discrimination, including discrimination based on sexual orientation and gender identity, nor the EEOC's obligation to investigate charges of discrimination and issue notices of right to sue would change. In short, any investigation or finding of discrimination on the basis of gender identity or sexual orientation in violation of Title VII is not fairly traceable to the EEOC Document, nor would it likely be redressed by enjoining application or enforcement of the EEOC Document.

Second, the EEOC Document adds nothing new, because its purpose is merely to provide an easily accessible summary of *Bostock* and prior EEOC decisions. Even without the EEOC Document, individuals remain free to pursue Title VII actions, which courts must adjudicate under governing law – law that includes prohibitions on discrimination based on gender identity and sexual orientation. Indeed, even if this Court attempted to redress the purported injuries by "vacating" a technical guidance that holds no force of law, nothing would preclude private litigants who had received notices of right to sue from bringing their own Title VII suits against Texas based on a theory fully consistent with the EEOC Document, and nothing would preclude a court from agreeing with the interpretation contained in the EEOC Document. Furthermore, as explained above, even before the EEOC Document was issued, the EEOC had repeatedly expressed in its federal sector decisions views about the scope of Title VII's prohibition on sex discrimination as it relates to gender identity and sexual orientation, and had initiated numerous investigations and entered into numerous consent decrees

14

with employers that had barred the use of bathrooms and clothing consistent with transgender employees' gender identity or engaged in unlawful harassment that included intentional and repeated misuse of pronouns when referring to a transgender employee. *See supra* at 4.

Nor would the requested relief of vacating the EEOC Document, or enjoining defendants from enforcing it, redress any purported injury. Indeed, it is not even clear what "vacating" or "enjoining" the EEOC Document means, since the EEOC Document itself has no independent legal significance. Just as a Court order vacating or enjoining an attorney's advice to a client would be meaningless, so too would an order enjoining the EEOC Document: the client would remain free to act as it otherwise might; likewise, even if Texas were to be granted the relief it seeks here, employers and employees would remain free to digest and act upon *Bostock* and prior EEOC guidance to pursue Title VII claims. This presents a clear redressability problem.

## II.    Texas' Claims Are Not Ripe.

Subject matter jurisdiction also is lacking because Texas' challenge to the EEOC Document is not ripe. Ripeness is a justiciability doctrine designed "to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements over administrative policies," and "also to protect the agencies from judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties." *Nat'l Park Hosp. Ass'n v. Dep't of Interior*, 538 U.S. 803, 807-08 (2003) (citation omitted). "[A] ripeness inquiry is often required when a party is seeking *pre-enforcement* review of a law or regulation," and "[a] court should dismiss a case for lack of 'ripeness' when the case is abstract or hypothetical." *Roark & Hardee LP v. City of Austin*, 522 F.3d 533, 544-45 (5th Cir. 2008) (citations omitted).

The ripeness test comprises two elements: (1) the fitness of the matter for adjudication, and (2) the hardship to the plaintiffs in withholding relief. *Id.* at 545. Even where an issue presents purely legal questions, "the plaintiff must show some hardship in order to establish ripeness." *Id.*; *see also*

*Monk v. Huston*, 340 F.3d 279, 283 (5th Cir. 2003) (holding that plaintiffs could not show hardship in withholding adjudication over due process challenge to landfill permit where the permitting process "has not yet run its course" and the "application may or may not be granted"). A claim is not fit for review unless it involves adverse parties and a concrete dispute. *Princeton Univ. v. Schmid*, 455 U.S. 100, 102 (1982). Accordingly, a party's claim "is not ripe for adjudication if it rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all." *Texas v. United States*, 523 U.S. 296, 300 (1998) (quoting *Thomas v. Union Carbide Agric. Prods. Co.*, 473 U.S. 568, 580-81 (1985)).

Here, for the same reasons that Texas lacks standing, its claim is not ripe: Because the EEOC Document has not caused Texas any injury, nor is any injury imminent, there is no sufficiently concrete case or controversy under Article III. *See Choice Inc. of Tex. v. Greenstein*, 691 F.3d 710, 715 (5th Cir. 2012) (noting that ripeness and standing justiciability doctrines both arise out of Article III's "case or controversy" language and these inquiries often overlap). Texas has not identified an enforcement action resulting from the EEOC Document alone which is pending or "certainly impending," *Clapper*, 568 U.S. at 409 (emphasis omitted), that could impact the state. Because the complaint fails to identify any actual dispute, there is no concrete set of facts to which a court could anchor its legal analysis. *Nat'l Park Hosp. Ass'n*, 538 U.S. at 808-12. Without a concrete set of facts, the Court is not in a position to evaluate what, if any, actions by the Federal Government should be enjoined and what specific conduct by Texas should be allowed. The Court will not be able to hear from any employee alleging discrimination based on a Texas state agency's employment practices or consider the potential defense that the state agency may raise. Because no dispute has yet arisen, Texas and the hypothetical complainant have not explored whether they can reach some mutually satisfactory agreement without a court's intervention. Texas has alleged no more than an abstract, hypothetical disagreement with the EEOC's longstanding and nonbinding interpretation of the law and has identified no concrete situation that would permit the Court to evaluate Texas' claims in the context of specific facts. Thus,

Texas' suit involves "contingent future events that may not occur as anticipated, or indeed may not occur at all." *Texas*, 523 U.S. at 300 (quoting *Thomas*, 473 U.S. at 580-81). This is precisely the kind of advisory ruling, based solely on abstract principles, that Article III forbids.

In addition, denying review will not impose any hardship on Texas, because if a charge against Texas were ever filed with the EEOC, Texas then would have an opportunity to present its arguments and protect its interests during the investigation and, if at the conclusion of the investigation a notice of right to sue were issued and the aggrieved party or DOJ filed suit, Texas would be able to do the same in court. *See Monk*, 340 F.3d at 283. Title VII, not the EEOC Document, would then provide the basis for analyzing whether Texas should be liable.

## III.   Texas Has an Adequate Alternative Remedy under Title VII.

The APA only provides federal court jurisdiction for a challenge to a "final agency action *for which there is no other adequate remedy in a court*." 5 U.S.C. § 704 (emphasis added). This inquiry is jurisdictional. *See Hinojosa v. Horn*, 896 F.3d 305, 310 (5th Cir. 2018), *cert. denied* 139 S. Ct. 1319 (2019). The APA's alternative remedy provision precludes Texas from bringing a challenge to the EEOC Document under the APA, because Texas would have the opportunity to defend itself in any future Title VII enforcement action, should one occur. An alternative remedy must provide the plaintiff "'specific procedures' by which the agency action can receive judicial review or some equivalent." *Id.* As the Fifth Circuit has recognized, the "alternative remedy need only be 'adequate'"; the alternative remedy does not need to be "'as effective as an APA lawsuit,' merely that it provide the 'same genre' of relief." *De La Garza Gutierrez v. Pompeo*, 741 F. App'x 994, 998 (5th Cir. 2018) (quoting *Garcia v. Vilsack*, 563 F.3d 519, 525 (D.C. Cir. 2009)). Furthermore, an adequate alternative remedy may "require multiple steps to get there." *Id.* Where an adequate alternative remedy exists, the district court lacks subject matter jurisdiction to adjudicate an APA claim. *Id.* at 997.

The APA's alternative remedy provision precluded these claims because Texas would have the opportunity to defend itself in any future Title VII enforcement action, if and when one occurs. For example, if DOJ filed suit against Texas based on the EEOC's interpretation of Title VII, as summarized in the EEOC Document, Texas would:

> [A]lmost by definition [] have an adequate remedy in a court, that is, the remedy of opposing the Attorney General's motion in the court in which [he] files [his] papers. Not only would the filing of such an opposition there be a judicial remedy obviating the need for resort to the APA in this District, but it is a far more appropriate, far more logical remedy than a lawsuit here seeking injunctive relief.

*NAACP v. Meese*, 615 F. Supp. 200, 203 (D.D.C. 1985). The appropriate course for Texas is to assert its defenses in the context of a future enforcement action, if one occurs, after an investigation and the compilation of a factual record, or in a *de novo* judicial proceeding. Such proceedings would provide Texas with the opportunity to raise any and all of the arguments it intends to raise in the current action and would therefore be an adequate remedy for Texas' alleged harms. Accordingly, Texas' claims must be dismissed for lack of subject matter jurisdiction.

## IV.   The EEOC Document Does Not Constitute Final Agency Action.

The APA gives federal courts jurisdiction over *final* agency actions, providing that "[a]gency action made reviewable by statute and final agency action for which there is no other adequate remedy in court are subject to judicial review." 5 U.S.C. § 704. Texas' APA claims fail because the challenged documents do not reflect "final agency action," *id.*, which is any agency action that is (1) "the consummation of the agency's decisionmaking process" and that (2) also determines "rights or obligations." *Bennett v. Spear*, 520 U.S. 154, 178 (1997) (citation omitted); *see also U.S. Army Corps of Eng'rs v. Hawkes Co.*, 578 U.S. 590, 596-600 (2016). An agency action is not final unless it satisfies both requirements. *Bennett*, 520 U.S. at 177. An agency action that "does not of itself adversely affect complainant but only affects his rights adversely on the contingency of future administrative action" is not a final agency action for the purposes of 5 U.S.C. § 704. *Peoples Nat. Bank v. Officer of Comptroller*

*of Currency of the U.S.*, 362 F.3d 333, 337 (5th Cir. 2004) (citation omitted).  And "[i]f there is no 'final

agency action,' a federal court lacks subject matter jurisdiction."  *Id.* at 336 (citation omitted).

Texas' challenge fails on both prongs.  It fails on the first prong for the simple reason that the

EEOC Document merely summarizes prior EEOC decisionmaking and the *Bostock* decision – it does

not reflect any new decision by the agency.  On the second prong, the EEOC Document explicitly

does not determine rights or obligations and no "legal consequences" flow from it.  Rather, the EEOC

Document contains a plain language summary of legal interpretations set forth in various pre-existing

Commission decisions and the Supreme Court's *Bostock* opinion, and "has force only to the extent the

agency can persuade a court to the same conclusion."  *AT&T Co. v. EEOC*, 270 F.3d 973, 976 (D.D.C.

2001); *see also Luminant Generation Co. v. U.S. E.P.A.*, 757 F.3d 439, 442 n.7 (5th Cir. 2014) ("an injury

typically is not caused when an agency merely expresses its view of what the law requires of a party,

even if that view is adverse to the party") (citing *AT&T*, 270 F.3d at 975).  Indeed, the EEOC

Document unequivocally states that the "contents of this document do not have the force and effect

of law and are not meant to bind the public in any way.  This document is intended only to provide

clarity to the public regarding existing requirements under the law or agency policies."  Compl. Ex. A

at 3.

The Fifth Circuit's decision in *Texas v. EEOC* is not to the contrary.  933 F.3d 433, 443 (5th

Cir. 2019).  In that case, the Fifth Circuit held that an EEOC guidance document concerning the

consideration of prior criminal convictions in hiring decisions constituted final agency action where

the agency conceded that the guidance bound EEOC staff "to an analytical method in conducting

Title VII investigations and directs their decisions about which employers to refer for employment

actions."  *Id.* The Fifth Circuit identified a number of other factors that it held supported its decision

that the guidance document at issue in that case constituted final agency action: (1) it "limit[ed]

discretion respecting the use of certain evidence, mandating that evidence of a racially-balanced

19

workforce cannot overcome a showing of disparate impact," *id.*; (2) it "le[ft] no room for EEOC staff *not* to issue referrals to the Attorney General when an employer uses a categorical felon-hiring ban," *id.*; (3) it contained "across-the board limitations . . . and forbids staff from considering certain evidence – that of a balanced workforce – when deciding whether an employer has satisfied Title VII's requirements," *id.*; and (4) it "prescribe[d] a multi-factor framework for employers to use in designing 'targeted exclusion' policies," and "tells employers how to avoid Title VII disparate impact liability" through certain "safe harbors," *id*. Ultimately, the Fifth Circuit concluded that the guidance constituted final agency action because it "dictates how EEOC must access claims of Title VII disparate-impact liability targeting employers with felon-hiring policies," and "tells [the] EEOC staff and all employers what sort of policy is unlawful." *Id.* at 445.

In contrast, the EEOC Document here exhibits none of the attributes that the Fifth Circuit found dispositive of final agency action in *Texas v. EEOC*. The EEOC Document does not adopt any new legal interpretation and does not bind EEOC staff to an analytical method in conducting Title VII investigations or direct their decisions about which employers to refer to enforcement actions. Indeed, the EEOC Document does not dictate in *any* manner how EEOC staff must assess potential sex discrimination on the basis of sexual orientation or gender identity. Unlike the guidance document at issue in *Texas v. EEOC,* the challenged EEOC Document is not included in the agency's compliance manual that provides guidance to EEOC investigators, and in no way limits EEOC staff discretion with regards to the sort of evidence agency staff can consider in determining whether a Title VII violation occurred. Nor does the EEOC Document dictate that EEOC staff issue referrals to the Attorney General under any set of circumstances. In addition, unlike in *Texas v. EEOC*, the EEOC Document does not prescribe a multi-factor framework for employers to consider in seeking to comply with Title VII or provide employers with any safe harbors from Title VII liability. Rather, the document seeks only to provide the public with a plain language summary of the Supreme Court's

*Bostock* decision, as well as various EEOC decisions regarding sexual orientation and gender identity discrimination dating back nearly a decade. To the extent EEOC investigators take any action based upon the interpretations contained in the EEOC Document, it is the underlying agency decisions summarized in the EEOC Document – which Texas has not challenged in this action – not the EEOC Document itself, that would inform any such action. Accordingly, the Fifth Circuit's decision in *Texas v. EEOC* is inapposite, and the EEOC Document does not constitute final agency action.

 Texas does not, and cannot, set forth any allegations demonstrating any legal consequences that actually result from the EEOC Document – a requirement for final agency action. Even in the absence of the EEOC Document, Title VII's administrative scheme requires workers to contact the EEOC if they want to pursue a Title VII action. If the EEOC received a charge of discrimination from an employee who suffered an adverse employment action based on sexual orientation or gender identity, the EEOC would open an administrative investigation, as Title VII requires it to do with any charge, and the EEOC Document has no impact on this statutory requirement. Furthermore, as the 2016 EEOC Document as well as the extensive documented history of consent decrees shows, the EEOC has long considered that discrimination on the basis of gender identity or sexual orientation can under some circumstances constitute discrimination because of sex under Title VII, so even in the event an investigation resulted in a finding of discrimination, that would not flow from the EEOC Document.

 In determining whether an agency action is final under the APA, the "most important factor concerns the actual legal effect (or lack thereof) of the agency action in question on regulated entities." *Nat'l Mining Ass'n v. McCarthy*, 758 F.3d 243, 252 (D.C. Cir. 2014). Where, as here, an agency memorandum does not create new obligations or rights, it is not final agency action. *See id.* (EPA guidance not final agency action; though "[f]inal Guidance may signal likely future permit denials by EPA," it "does not impose legally binding requirements") (citation omitted); *Ctr. for Auto Safety v. Nat'l*

*Highway Traffic Safety Admin.*, 452 F.3d 798, 808 (D.C. Cir. 2006) ("no doubt that" NHTSA guidelines reflect agency's "views on the legality of regional recalls" but "this does not change the character of the guidelines from a policy statement to a binding rule").

In sum, the EEOC Document "create[s] no new legal obligations beyond those the [statute] already imposed." *Rhea Lana, Inc. v. Dep't of Labor*, 824 F.3d 1023, 1028 (D.C. Cir. 2016). It simply informs the public of the EEOC's long-held interpretation of what Title VII requires, without purporting to alter those obligations at all. *Id.* The EEOC Document does not "creat[e] 'new law, rights or duties,'" but rather "goes 'to what the [agency] thinks [the statute] means.'" *Hadley-Mem'l Hosp. v. Kynard*, 981 F. Supp. 690, 693 (D.D.C. 1997) (citation omitted). "[L]egal consequences do not emanate from [the EEOC Document] but from the . . . Act and its implementing regulations." *Golden & Zimmerman, LLC v. Domenech*, 599 F.3d 426, 433 (4th Cir. 2010). This Court therefore lacks jurisdiction over Plaintiffs' claims under the APA.

## CONCLUSION

For the reasons explained above, Texas' complaint should be dismissed for lack of jurisdiction.

DATED: December 23, 2021                    Respectfully submitted,

                                            BRIAN M. BOYNTON
                                            Acting Assistant Attorney General

                                            JENNIFER D. RICKETTS
                                            Director, Federal Programs Branch

                                            CARLOTTA WELLS
                                            Assistant Director, Federal Programs Branch

                                            /s/ Martin M. Tomlinson
                                            MARTIN M. TOMLINSON
                                            Trial Attorney
                                            Civil Division, Federal Programs Branch
                                            U.S. Department of Justice
                                            1100 L Street, NW
                                            Washington, DC 20005
                                            Phone:   (202) 353-4556
                                            Email:   martin.m.tomlinson@usdoj.gov

                                            *Counsel for Defendants*