# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF TEXAS
# AMARILLO DIVISION

| | |
|---|---|
| THE STATE OF TEXAS, | Case No. 2:21-cv-00194 |
|     Plaintiff, | District Judge Matthew J. Kacsmaryk |
| v. | |
| EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, *et al.*, | |
|     Defendants. | |

## DEFENDANTS' SUPPLEMENTAL MOTION TO DISMISS
## THE FIRST AMENDED COMPLAINT

# **TABLE OF CONTENTS**

INTRODUCTION ..................................................................................................................... 1

BACKGROUND ...................................................................................................................... 2

I.      Procedural History ......................................................................................................... 2

II.     Section 1557 and Title IX's Prohibition on Discrimination on the Basis of Sex. ...................... 3

III.    The March 2, 2022 HHS Guidance ...................................................................................... 5

STANDARD OF REVIEW ......................................................................................................... 6

ARGUMENT .......................................................................................................................... 6

I.      Plaintiff Cannot Show that Any of Its Alleged Injuries Would be Traceable to the
        HHS Guidance, or that Such Injuries Would be Redressable by Any Injunctive Relief
        This Court Has Authority to Provide. .................................................................................. 6

II.     Plaintiff's Claim Is Unripe ................................................................................................ 10

        A.      The Issues Raised by Texas are Not Fit for Review ................................................... 11

        B.      Texas Cannot Demonstrate Hardship ..................................................................... 13

III.    Section 1557 Provides an Adequate, and Exclusive, Alternative Remedy to Plaintiff ............ 15

IV.     The Court Lacks Subject Matter Jurisdiction Because the HHS Guidance Is Not
        Final Agency Action. ....................................................................................................... 18

V.      Plaintiff Cannot Evade the APA's Limitations on Judicial Review by Invoking an
        Equitable, Non-Statutory *Ultra Vires* Cause of Action. ......................................................... 21

CONCLUSION ....................................................................................................................... 23

## <u>TABLE OF AUTHORITIES</u>

**CASES**

*Adams Cnty. Water Ass'n v. City of Natchez*,
    Civ. A. No. 5:10CV199-DCB-RHW, 2013 WL 3762658 n.3 (S.D. Miss. July 16, 2013)...................9

*Am. Airlines, Inc. v. Hermann*,
    176 F.3d 283 (5th Cir. 1999) ............................................................................................ 21, 22

*Am. Sch. of Magnetic Healing v. McAnnulty*,
    187 U.S. 94 (1902) ..................................................................................................................22

*Am. Tort Reform Ass'n v. Occupational Safety & Health Admin.*,
    738 F.3d 387 (D.C. Cir. 2013) ...............................................................................................20

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) .................................................................................................................6

*Ass'n of Am. Med. Colls. v. United States*,
    34 F. Supp. 2d 1187 (C.D. Cal. 1998)....................................................................................17

*Bd. of Educ. of the Highland Loc. Sch. Dist. v. U.S. Dep't of Educ.*,
    208 F. Supp. 3d 850 (S.D. Ohio 2016)..............................................................................17, 18

*Bd. of Governors of Fed. Rsrv. Sys. v. McCorp Fin. Inc.*,
    502 U.S. 32 (1991) ..................................................................................................................22

*Block v. Comm. Nutrition Inst.*,
    467 U.S. 340 (1984) ................................................................................................................17

*Bowen v. Massachusetts*,
    487 U.S. 879 (1988) .........................................................................................................15, 16

*Clapper v. Amnesty Int'l USA*,
    568 U.S. 398 (2013) ........................................................................................................6, 7, 14

*Citizens for Resp. & Ethics in Wash. v. U.S. Dep't of Just.*,
    846 F.3d 1235 (D.C. Cir. 2017) .............................................................................................15

*Cochran v. U.S. Sec. & Exch. Comm'n*,
    20 F.4th 194 (5th Cir. 2021), *pet. for cert. filed*, No. 21-1239 (U.S. Mar. 11, 2022)..............11

*DaimlerChrysler Corp. v. Cuno*,
    547 U.S. 332 (2006) .................................................................................................................7

*Dart v. United States*,
    848 F.2d 217 (D.C. Cir. 1988) ...............................................................................................22

*Davis v. Romney*,
    490 F.2d 1360 (3d Cir. 1974) ................................................................................9

*DM Arbor Ct., Ltd. v. City of Houston*,
    988 F.3d 215 (5th Cir. 2021) ..............................................................................11

*Duke Power Co. v. Carolina Env't Study Grp. Inc.*,
    438 U.S. 59 (1978) ..............................................................................................12

*El Rio Santa Cruz Neighborhood Health Ctr. v. U.S. Dep't of Health & Hum. Servs.*,
    396 F.3d 1265 (D.C. Cir. 2005) ........................................................................16

*Elgin v. Dep't of Treasury*,
    567 U.S. 1 (2012) ................................................................................................17

*Energy Transfer Partners, L.P. v. FERC*,
    567 F.3d 134 (5th Cir. 2009) ..............................................................................14

*Env't Integrity Project v. U.S. Env't Prot. Agency*,
    969 F.3d 529 (5th Cir. 2020) ..............................................................................21

*Exxon Chems. Am. v. Chao*,
    298 F.3d 464 (5th Cir. 2002) ..............................................................................22

*Garcia v. Vilsack*,
    563 F.3d 519 (D.C. Cir. 2009) ..........................................................................16

*Gen. Fin. Corp. v. Fed. Trade Comm'n*,
    700 F.2d 366 (7th Cir. 1983) .......................................................................18, 21

*Hinojosa v. Horn*,
    896 F.3d 305 (5th Cir. 2018) .......................................................................15, 16

*Home Builders Ass'n of Miss., Inc. v. City of Madison*,
    143 F.3d 1006 (5th Cir. 1998) .............................................................................6

*In re United States*,
    398 F.3d 615 (7th Cir. 2005) ...............................................................................9

*Kirby Corp. v. Pena*,
    109 F.3d 258 (5th Cir. 1999) .......................................................................22, 23

*Leedom v. Kyne*,
    358 U.S. 184 (1958) ...............................................................................21, 22, 23

*Lujan v. Defs. of Wildlife*,
    504 U.S. 555 (1992) .........................................................................................6, 7

*Martinez v. Pompeo*,
  977 F.3d 457 (5th Cir. 2020) ....................................................................................15

*Massachusetts v. Mellon*,
  262 U.S. 477 (1923) ...................................................................................................9

*Monk v. Huston*,
  340 F.3d 279 (5th Cir. 2003) ............................................................................. 11, 13

*Morrison v. Dallas Cnty. Cmty. Coll.*,
  273 F. App'x 407 (5th Cir. 2008) ..............................................................................12

*N.J. Hosp. Ass'n v. United States*,
  23 F. Supp. 2d 497 (D.N.J. 1998)..............................................................................17

*NAACP v. Meese*,
  615 F. Supp. 200 (D.D.C. 1985)........................................................................9-10, 16

*Nat'l Family Planning & Reprod. Health Ass'n v. Sullivan*,
  979 F.2d 227 (D.C. Cir. 1992) ............................................................................19-20

*Nat'l Mining Ass'n v. McCarthy*,
  758 F.3d 243 (D.C. Cir. 2014) ..................................................................................21

*Nat'l Park Hosp. Ass'n v. Dep't of Interior*,
  538 U.S. 803 (2003) ............................................................................................ 10, 12

*New Orleans Pub. Serv., Inc. v. Council of New Orleans*,
  833 F.2d 583 (5th Cir. 1987) .....................................................................................13

*Nyunt v. Chairman, Broad. Bd. of Governors*,
  589 F.3d 445 (D.C. Cir. 2009) ...................................................................................22

*Orix Credit All., Inc. v. Wolfe*,
  212 F.3d 891 (5th Cir. 2000) ............................................................................... 10, 15

*Pac. Gas & Elec. Co. v. Fed. Power Comm'n*,
  506 F.2d 33 (D.C. Cir. 1974) .....................................................................................20

*Panhandle Producers & Royal Owners Ass'n v. Econ. Regul. Admin.*,
  847 F.2d 1168 (5th Cir. 1988) ............................................................................ 20, 21

*Pearson v. Holder*,
  624 F.3d 682 (5th Cir. 2010) .....................................................................................11

*Preskar v. United States*,
  248 F.R.D. 576 (E.D. Cal. 2008) ...............................................................................17

*Pros. & Patients for Customized Care v. Shalala,*
  56 F.3d 592 (5th Cir. 1995) ............................................................................ 19, 20

*Raines v. Byrd,*
  521 U.S. 811 (1997) .................................................................................................7

*Roark & Hardee LP v. City of Austin,*
  522 F.3d 533 (5th Cir. 2008) .................................................................................11

*Sanderson Farms, Inc. v. Nat'l Labor Rels. Bd.,*
  651 F. App'x 294 (5th Cir. 2016) ..........................................................................23

*Sch. Dist. of City of Saginaw v. U.S. Dep't of Health, Educ., & Welfare,*
  431 F. Supp. 147 (E.D. Mich. 1977) .....................................................................18

*Shalala v. Guernsey Mem'l Hosp.,*
  514 U.S. 87 (1995) .................................................................................................20

*Shields v. Norton,*
  289 F.3d 832 (5th Cir. 2002) .................................................................................14

*Shrimpers & Fishermen of the RGV v. U.S. Army Corps of Eng'rs,*
  849 F. App'x 459 (5th Cir. 2021) ......................................................................11-12

*Simon v. E. Ky. Welfare Rights Org.,*
  426 U.S. 26 (1976) ...................................................................................................7

*Spokeo, Inc. v. Robins,*
  578 U.S. 330 (2016) .................................................................................................7

*Steel Co. v. Citizens for a Better Env't,*
  523 U.S. 83 (1998) ...................................................................................................7

*Taylor v. Cohen,*
  405 F.2d 277 (4th Cir. 1968) .................................................................................18

*Temple Univ. of Commonwealth Sys. of Higher Educ. ex rel. Temple Univ. Clinical Facility Prac.*
*Plans v. Brown,*
  No. CIV. A. 00-CV-1063, 2001 WL 185535 (E.D. Pa. Feb. 23, 2001) .........................16-17

*Tex. Indep. Producers & Royalty Owners Ass'n v. U.S. EPA,*
  413 F.3d 479 (5th Cir. 2005) .................................................................................11

*Texas v. United States,*
  523 U.S. 296 (1998) ...............................................................................................10

*Thomas v. Union Carbide Agric. Prods. Co.,*
  473 U.S. 568 (1985) ...............................................................................................10

*Thunder Basin Coal Co. v. Reich,*
    510 U.S. 200 (1994) ................................................................................. 17, 18

*TOTAL Gas & Power N. Am., Inc. v. Fed. Energy Regul. Comm'n,*
    859 F.3d 325 (5th Cir. 2017) ............................................................................14

*Town of Chester v. Laroe Estates, Inc.,*
    137 S. Ct. 1645 (2017) ....................................................................................7

*Town of Sanford v. United States,*
    140 F.3d 20 (1st Cir. 1998) ..............................................................................15

*U.S. Army Corps of Eng'rs v. Hawkes Co.,*
    136 S. Ct. 1807 (2016) ....................................................................................19

*U.S. Steel Corp. v. Fri,*
    364 F. Supp. 1013 (N.D. Ind. 1973) ...................................................................17

*United Transp. Union v. Foster,*
    205 F.3d 851 (5th Cir. 2000) ............................................................................12

*Walmart, Inc. v. U.S. Dep't of Just.,*
    21 F.4th 300 (5th Cir. 2021) .............................................................................12

*Warth v. Seldin,*
    422 U.S. 490 (1975) .........................................................................................7

*Whole Women's Health v. Jackson,*
    141 S. Ct. 2494 (2021) .....................................................................................9

*Whole Women's Health v. Jackson,*
    142 S. Ct. 522 (2021) .......................................................................................9

*Zepeda v. U.S. INS,*
    753 F.2d 719 (9th Cir. 1983) .............................................................................9

**STATUTES**

5 U.S.C. § 703 .....................................................................................................21

5 U.S.C. § 704 ............................................................................................... passim

20 U.S.C. § 1681 ..................................................................................................4

20 U.S.C. § 1682 .......................................................................................... 4, 7, 16

20 U.S.C. § 1683 ............................................................................................ 5, 16

28 U.S.C. § 516 ....................................................................................................8

29 U.S.C. § 159 .................................................................................................................23

29 U.S.C. § 794 ...................................................................................................................6

29 U.S.C. § 794a ...............................................................................................................16

42 U.S.C. § 2000e-2 .........................................................................................................23

42 U.S.C. § 18116 ...........................................................................................4, 15, 16, 23

**REGULATIONS**

45 C.F.R. §§ 80.6-80.8 ...............................................................................................4, 7, 16

45 C.F.R. § 80.8 ...............................................................................................................14

45 C.F.R. § 92.5 .................................................................................................................4

**RULES**

N.D. Tex. L.R. 7.1 .........................................................................................................2, 3

**OTHER AUTHORITIES**

Edwards, Elliott, & Levy, Federal Standards of Review 157 (2d ed. 2013) ...........................................20

Notification of Interpretation and Enforcement of Section 1557 of the Affordable Care Act and
     Title IX of the Education Amendments of 1972 (May 25, 2021),
     https://www.govinfo.gov/content/pkg/FR-2021-05-25/pdf/2021-10477.pdf ..............................5

## **INTRODUCTION**

Plaintiff the State of Texas has amended its Complaint to add new claims against Defendant the United States Department of Health and Human Services ("HHS"), among other changes. These new claims allege that HHS violated the Administrative Procedure Act ("APA") and took an unlawful *ultra vires* action by issuing a notice and guidance document that has no independent legal consequences and imposes no harm or prejudice on the Plaintiff. Indeed, this interpretive guidance document simply reminded the public of the agency's position that discrimination based on sexual orientation or gender identity constitutes unlawful discrimination for the purposes of Section 1557 of the Patient Protection and Affordable Care Act ("ACA").

Texas's additional claims fail for several distinct but related threshold reasons, all of which stem from the fact that HHS has merely published interpretive guidance and has taken no concrete action against Texas of any kind. Texas also does not identify any existing state law or employment policy that is immediately impacted by HHS's notice and guidance document. Further, Texas does not seem to dispute that in order to withhold federal funding based on a finding of discrimination under Section 1557, HHS would have to go through a robust, thorough process that would involve notice of the claim and an opportunity for Texas to present its case at an administrative hearing. Texas would also have the right to judicial review of any finding of discrimination before an Article III court. And nothing prohibited HHS from investigating claims of discrimination based on sexual orientation or gender identify under Section 1557 even before it issued the interpretive guidance. Texas therefore cannot demonstrate that any purported injury it might suffer would actually be traceable to, or redressable by the injunction of, the notice and guidance document, rather than the statute itself. Furthermore, Texas has failed to show that this abstract legal dispute over the interpretation of Section 1557 is ripe for adjudication now, given that there is no current or imminent factual context for the dispute.

Texas has also failed to show that HHS's interpretive guidance document constitutes a "final agency action," reviewable under § 704 of the APA, given that it has no independent legal force and imposes no rights or obligations.  Furthermore, Section 1557 provides an adequate alternative avenue for Texas to raise any and all of the substantive arguments it raises in its First Amended Complaint as to that statute—first, before HHS itself if the agency opens any actual investigation into discrimination, and then on judicial review in a district court should the agency ultimately seek to withhold federal funding based on a finding of discrimination.  Finally, Texas's attempt to shoehorn this claim into the narrow "ultra vires" exception to APA jurisdictional requirements should be rejected by this Court as to both EEOC and HHS, because unlike the instances in which courts have recognized that exception, here Texas is asserting a disagreement over a statutory interpretation which it would have ample opportunity to dispute before the agency and an Article III court prior to any adverse judgments or concrete penalties being imposed.

Accordingly, because this Court lacks jurisdiction over these new claims, they should be dismissed.

## BACKGROUND

### I.      Procedural History

On March 15, 2022, this Court issued an Order granting Plaintiff's Motion to Amend the Complaint, ECF No. 26 ("Pl.'s Mot."), and directed the Clerk to file Plaintiff's First Amended Complaint ("Am. Compl." or "Amended Complaint").  *See* Order, ECF No. 30.[1]  The Court

---

[1] The Court granted Plaintiff's motion to amend the Complaint issued nearly two weeks before Defendants' deadline to oppose that motion under the Local Rules.  *Compare* Order, ECF No. 31 (March 15, 2022); *and* Pl.'s Mot. to Am. Compl., ECF No. 26 (March 9, 2022); *with* N.D. Tex. L.R. 7.1(e) (allowing 21 days to serve a response brief).  On March 11, 2022, Defendants noted their opposition to Plaintiff's motion to amend and intention to file an opposition to Plaintiff's Motion to Amend.  *See* Reply Br. in Supp. of Defs.' Mot. to Dismiss for Lack of Jurisdiction, at 2 n.1, ECF No. 29.  Plaintiff's motion to amend acknowledged that Texas had "unsuccessfully attempted to confer with counsel for Defendants," because Texas filed its motion the same day it contacted Defendants,

determined that it would apply Defendants' previously filed Motion to Dismiss to the Amended Complaint, but would allow Defendants to supplement that motion.  *See* Order at 2.

The Amended Complaint makes several notable changes to the original complaint.  Primarily, the Amended Complaint adds HHS as a defendant and challenges a new guidance document ("HHS Guidance"), issued on March 2, 2022 and entitled "HHS Notice and Guidance on Gender Affirming Care, Civil Rights, and Patient Privacy."  *See* First Am. Compl., ECF No. 31 ("Am. Compl."); *see also* Am. Compl., Ex. B., ECF No. 31-1 (HHS Guidance).  In addition to the previously pleaded claims against EEOC (with some minor alterations in the new complaint), Texas now also alleges that the HHS Guidance is final agency action under the APA, that it is unlawful because it is a legislative rule that should have been promulgated pursuant to notice and comment procedures, that it should have been published in the Federal Register, that it was arbitrary and capricious, and that it is not in accordance with law.  *See* Am. Compl., Counts V, VII, IX, X, XI.  Texas also pleads a new *ultra vires* "non-statutory" claim that both EEOC and HHS have acted beyond their statutory authority.  *Id.*, Count XI.  Plaintiff again requests declaratory and injunctive relief, but has dramatically expanded the scope of the requested injunction—it asks that the Court not only "prohibit[] [EEOC and HHS] from enforcing or implementing" the challenged documents, but also that the Court "prohibit[] . . . the interpretation of the law described in" those documents.  *Id.* at 25.

## II.    Section 1557 and Title IX's Prohibition on Discrimination on the Basis of Sex.

Plaintiff's Amended Complaint accordingly draws in multiple distinct statutory schemes, in addition to their prior claims concerning against EEOC concerning Title VII.  Specifically, Plaintiff now challenges HHS's interpretation of Federal law that prohibits discrimination on the basis of sex

_____

before Defendants were able to respond.  Pl.'s Mot. at 4.  Under Local Rule 7.1(b)(3), when a conference of counsel is not held prior to the filing of a motion, "the motion will be presumed to be opposed."  Defendants hereby reserve all their arguments in opposition to the motion to amend for any future appeal.

in federally funded health programs or activities.  *See* 42 U.S.C. § 18116(a) (incorporating, inter alia, discrimination on the ground prohibited by Title IX (sex), 20 U.S.C. § 1681(a), into federal health care law under Section 1557 of the Affordable Care Act).

In particular, Section 1557 of the Affordable Care Act ("ACA") states that no individual shall be "excluded from participation in, be denied the benefits of, or be subjected to discrimination under" any federally funded health program or activity on the grounds stated in several long-standing civil rights laws, including Title IX of the Education Amendments of 1972.  42 U.S.C. § 18116(a) (citing 20 U.S.C. § 1681).  Title IX, in turn, prohibits discrimination "on the basis of sex."  20 U.S.C. § 1681(a). Section 1557 thus provides that "an individual shall not [on the basis of sex] . . . be excluded from participation in, be denied the benefits of, or be subjected to discrimination" in federally funded health programs and activities.  42 U.S.C. § 18116(a).  Section 1557 also incorporates the "enforcement mechanisms provided for and available under" the civil rights laws it cites, including Title IX.  *Id.*; *see also* 45 C.F.R. § 92.5(a).  These enforcement mechanisms, including Title IX's, permit an enforcing agency—here, HHS and its Office for Civil Rights ("OCR")—to terminate, or refuse to grant, federal funds to entities that discriminate on the basis of sex.  *See, e.g.*, 20 U.S.C. § 1682; *see also* 45 C.F.R. §§ 80.6-80.8.  But HHS must complete several steps before withholding federal funds based on a determination that a recipient had engaged in sex discrimination.  First, it must "advise[] the appropriate person or persons of the failure to comply with the requirement" not to discriminate because of sex and "determine[] that compliance cannot be secured by voluntary means."  20 U.S.C. § 1682.  If the party does not voluntarily comply, HHS may withhold funding only after "there has been an express finding on the record, after opportunity for hearing, of a failure to comply" with Title IX.  *Id.*  The agency then must inform the appropriate Congressional committees of the grounds for its action.  *Id.*  No funding may be withheld until all steps are completed and 30 days has elapsed from the submission of a written report to Congress.  *Id.*  A party aggrieved by this administrative process

may obtain "judicial review as may otherwise be provided by law" or "in accordance with chapter 7 of Title 5," *i.e.*, the APA. *Id.* § 1683.

### III.   The March 2, 2022 HHS Guidance

On March 2, 2022, HHS issued interpretive guidance concerning Section 1557.  The HHS Guidance stated HHS's view that "gender affirming care for minors, when medically appropriate and necessary, improves their physical and mental health."  HHS Guidance at 1.  It informed the public that the HHS Office for Civil Rights investigates and, "where appropriate," enforces Section 1557 of the ACA, including "cases involving discrimination on the basis of sexual orientation and gender identity in accordance with all applicable law," and invited individuals who "believe they have been discriminated against" in a covered program or activity to "file a complaint."  *Id.*

Discussing Section 1557 of the ACA, the HHS Guidance notes that "[c]ategorically refusing to provide treatment to an individual based on their gender identity is prohibited [sex] discrimination." *Id.* at 2.  This reflects the agency's prior determination, unchallenged in the Amended Complaint, that HHS will interpret Section 1557 to prohibit discrimination based on gender identity.  *See* Notification of Interpretation and Enforcement of Section 1557 of the Affordable Care Act and Title IX of the Education Amendments of 1972 (May 25, 2021), https://www.govinfo.gov/content/pkg/FR-2021-05-25/pdf/2021-10477.pdf.  The HHS Guidance further notes that "restricting an individual's ability to receive medically necessary care, including gender-affirming care, . . . solely on the basis of their sex assigned at birth or gender identity likely violates Section 1557."  HHS Guidance at 2.  Providing an example, the HHS Guidance notes that if a "parent and their child visit a doctor for a consultation regarding or to receive gender affirming care, and the doctor or other staff at the facility reports the parent to state authorities for seeking such care, that reporting may constitute a violation of Section 1557" to the extent the doctor or facility receives federal financial assistance.  *Id.*  In addition, "[r]estricting a health care provider's ability to provide or prescribe such care may also violate Section

1557." *Id.*  The HHS Guidance also notes that "[g]ender dysphoria may, in some cases, qualify as a disability" under Section 504 of the Rehabilitation Act.  *Id.*; *see also* 29 U.S.C. § 794.  Finally, the HHS Guidance notes that the Health Insurance Portability and Accountability Act of 1996 (HIPAA) prohibits the disclosure of protected health information, including gender affirming care, without an individual's consent, except in limited circumstances.  HHS Guidance at 2-3.

## STANDARD OF REVIEW

Rule 12(b)(1) requires dismissal of a complaint where the court "lacks the statutory or constitutional power to adjudicate the case[,]"  *Home Builders Ass'n of Miss., Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998) (citation omitted), including for lack of standing, *see Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992).   The Court does not need to accept a plaintiff's legal conclusions.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

## ARGUMENT

To the extent necessary, Defendants incorporate by reference all the arguments made in their original motion to dismiss.  The fundamental flaw underlying all of Texas's arguments is that the HHS guidance, like the EEOC Document, does not have any independent legal force, and neither HHS nor EEOC have taken any concrete action against Texas of any kind.  Although the various arguments discussed below are legally distinct, they all flow from a common source: the principle that an Article III court may not seek pre-enforcement relief in the abstract.  Unless and until HHS or EEOC actually determines that a particular and concrete set of facts amounts to sex discrimination, Texas cannot sustain this suit.

I. **Plaintiff Cannot Show that Any of Its Alleged Injuries Would be Traceable to the HHS Guidance, or that Such Injuries Would be Redressable by Any Injunctive Relief This Court Has Authority to Provide.**

"Article III of the Constitution limits federal courts' jurisdiction" to the adjudication of "'Cases' and 'Controversies.'"  *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 408 (2013).  "[A]n essential

6

and unchanging part of the case-or-controversy requirement" is that would-be plaintiffs must have "standing to invoke the authority of a federal court[,]" *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 342 (2006) (citation omitted), assuring they have a "personal stake in the outcome of [a] controversy" that "justif[ies] [the] exercise of the court's remedial powers on [their] behalf." *Town of Chester v. Laroe Estates, Inc.*, 137 S. Ct. 1645, 1650 (2017) (quoting *Simon v. E. Ky. Welfare Rights Org.*, 426 U.S. 26, 38 (1976)). Standing is therefore a "threshold jurisdictional question[,]" *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 102 (1998), determining "the power of the court to entertain the suit," *Warth v. Seldin*, 422 U.S. 490, 498 (1975). The Supreme Court has held that "'[o]ur standing inquiry has been especially rigorous when reaching the merits of the dispute would force us to decide whether an action taken by one of the other two branches of the Federal Government was unconstitutional." *Clapper*, 568 U.S. at 408 (quoting *Raines v. Byrd*, 521 U.S. 811, 819-20 (1997)).

Texas, as the party "invoking federal jurisdiction[,] bears the burden of establishing" standing. *Lujan*, 504 U.S. at 561. Texas "must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). "The plaintiff . . . bears the burden of establishing these elements," and therefore "must 'clearly . . . allege facts demonstrating' each element." *Id.* (quoting *Warth*, 422 U.S. at 518).

The HHS Guidance imposes no legal consequences at all, and certainly no harm to Texas. Texas therefore cannot the requirements of the standing inquiry: because none of the alleged harms come from the HHS Guidance itself, vacating the HHS Guidance could not redress any purported harm. Before Texas's federal funding could be withheld, HHS would need to follow all of the required steps set forth in 20 U.S.C. § 1682 and 45 C.F.R. §§ 80.6-80.8, including: (1) advising Texas of an alleged violation, (2) determining that Texas would not voluntarily remediate, (3) conducting an adversarial hearing, (4) making an express finding of a violation following the hearing, and (5) notifying

relevant Congressional committees of the finding.  Moreover, if after all of those steps HHS issued an adverse decision with concrete consequences, Texas could seek judicial review before an Article III court.  And furthermore, there would have to be a determination that a violation had occurred in the first place before any of these actions could occur.  Also, any eventual harm would result from the concrete adverse actions taken by HHS pursuant to Section 1557, not the HHS Guidance.  The Guidance by itself has no legal consequence for Texas; indeed, HHS could investigate and adjudicate a complaint of sex discrimination (including sexual orientation or gender identity discrimination) under section 1557 even if it had never issued the Guidance, which merely has the salutary effect of informing the public of HHS's legal positions.  Therefore, even if this Court were to enjoin the HHS Guidance, it would not redress even future hypothetical harms alleged by Texas.  *See also infra* at 19-21 (explaining why the HHS Guidance does not determine Texas's rights or obligations).

Perhaps recognizing that its Amended Complaint challenging the HHS Guidance and the EEOC Document cannot alone meet the requirements of Article III standing, the Amended Complaint now seeks a novel and far more expansive type of relief, requesting that the Court not only enjoin the HHS Guidance but also prohibit HHS from adopting "the interpretation of the law described in that [HHS G]uidance," and issue a permanent injunction "prohibiting the HHS Defendants from . . . implementing . . . the statutory interpretation contained in that [HHS G]uidance." Am. Compl. at 25-26.[2]  That would be an extraordinary remedy indeed.  This is nothing less than a request to have the judicial branch prohibit an executive branch agency from interpreting a statute within its area of expertise, and could even purport to prohibit HHS or DOJ from filing briefs advancing this interpretation.  *But see* 28 U.S.C. § 516 (the "conduct of litigation in which the United States . . . is a party . . . is reserved to officers of the Department of Justice, under the direction of the

---

[2] Texas' Amended Complaint newly adds similar relief as to the longstanding interpretation of Title VII in the EEOC Document.  *See* Am. Compl. at 25-26.

Attorney General"). Such an intrusion into the legal decisionmaking of the Executive is beyond what an Article III court may properly order. In *Massachusetts v. Mellon*, 262 U.S. 477, 488-89 (1923), the Supreme Court recognized that it may not issue an injunction based "merely [on allegations] that officials of the executive department of the government are executing and will execute an act of Congress asserted to be unconstitutional . . . . To do so would be, not to decide a judicial controversy, but to assume a position of authority over governmental acts of another and coequal department, *an authority which plainly we do not possess*." (emphasis added); *see also Whole Women's Health v. Jackson*, 142 S. Ct. 522, 535 (2021) ("Consistent with historical practice, a federal court exercising its equitable authority may enjoin named defendants from taking specified unlawful actions. But under traditional equitable principles, no court may 'lawfully enjoin the world at large,'. . . or purport to enjoin challenged 'laws themselves.'") (quoting *Whole Women's Health v. Jackson*, 141 S. Ct. 2494, 2495 (2021)); *In re United States*, 398 F.3d 615, 618 (7th Cir. 2005) ("Judges often are tempted to seek a larger role in the conduct of litigants that appear frequently before them. . . . But temptation must be resisted in order to maintain separation between executive and judicial roles, and between the formulation and evaluation of positions in litigation.") (citation omitted).

Texas's request thus reflects a fundamental misunderstanding of the proper role of the Judicial Branch in deciding concrete cases and controversies—and in fashioning injunctive relief. The role of an injunction is not to "enjoin all possible breaches of the law," but to "remedy the specific harms" allegedly suffered by the party seeking the injunction. *Zepeda v. U.S. INS*, 753 F.2d 719, 728 n.1 (9th Cir. 1983) (quoting *Davis v. Romney*, 490 F.2d 1360, 1370 (3d Cir. 1974). Another district court in this circuit accordingly rejected this type of unusual request for an injunction, holding that "[t]he [c]ourt cannot enjoin the [d]efendants from maintaining what amounts to a legal position on the interpretation . . . which may or may not be implicated in the future." *Adams Cnty. Water Ass'n v. City of Natchez*, Civ. A. No. 5:10CV199-DCB-RHW, 2013 WL 3762658 at *2 n.3 (S.D. Miss. July 16, 2013); *cf. NAACP v.*

*Meese*, 615 F. Supp. 200, 202, 203 n.9 (D.D.C. 1985) (rejecting APA challenge to government's decision to adopt a litigation position, holding that such decisions are committed to agency discretion by law and that notice and comment procedures are not required for such interpretive rules).

Accordingly, because Texas has failed to show how any purported injury it may suffer would be traceable to the HHS Guidance itself, or redressable by an order enjoining the HHS Guidance, and further because this Court does not have equitable authority to generally enjoin HHS from interpreting or construing a statute in a particular way as Texas requests, Texas has failed to show that it has standing to challenge the issuance of the HHS Guidance, just as it has for the EEOC Document.

## II.   <u>Plaintiff's Claim Is Unripe.</u>

This Court lacks jurisdiction for the additional reason that Plaintiff's claims are unripe, because any dispute between the parties is entirely abstract and Texas would suffer no hardship in waiting for an actual controversy to crystallize.

Ripeness is a justiciability doctrine designed "to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements over administrative policies," and "also to protect the agencies from judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties." *Nat'l Park Hosp. Ass'n v. Dep't of Interior*, 538 U.S. 803, 807–08 (2003) (citation omitted). Accordingly, a party's claim "is not ripe for adjudication if it rests upon 'contingent future events that may not occur as anticipated, or indeed may not occur at all.'" *Texas v. United States*, 523 U.S. 296, 300 (1998) (quoting *Thomas v. Union Carbide Agric. Prods. Co.*, 473 U.S. 568, 580-81 (1985)). Even in suits for declaratory judgment, which "present[]a unique challenge" because such a suit is usually filed before a threatened injury actually occurs, *Orix Credit All., Inc. v. Wolfe*, 212 F.3d 891, 896 (5th Cir. 2000), courts must assess whether "particular facts are sufficiently immediate to establish an actual controversy[.]" *Id.*

The ripeness inquiry relies on two factors: (1) "the fitness of the issues for judicial decision"; and (2) "the hardship to the parties of withholding court consideration." *Roark & Hardee LP v. City of Austin*, 522 F.3d 533, 545 (5th Cir. 2008) (quoting *Monk v. Huston*, 340 F.3d 279, 282 (5th Cir. 2003)). In other words, the issues at stake must be "purely legal ones; conversely, a case is not ripe if further factual development is required." *Cochran v. U.S. Sec. & Exch. Comm'n*, 20 F.4th 194, 212 (5th Cir. 2021), *pet. for cert. filed*, No. 21-1239 (U.S. Mar. 11, 2022). Moreover, "some degree of hardship is always required to establish ripeness." *Id.* (citation omitted). Application of both of these factors demonstrate that Plaintiff's case is unripe.

**A. The Issues Raised by Texas are Not Fit for Review.**

First, issues are fit for review only "when [they] 'would not benefit from any further factual development and when the court would be in no better position to adjudicate the issues in the future than it is now.'" *DM Arbor Ct., Ltd. v. City of Houston*, 988 F.3d 215, 218 (5th Cir. 2021) (quoting *Pearson v. Holder*, 624 F.3d 682, 684 (5th Cir. 2010)). Although Texas appears to believe that this matter involves just the legal interpretation of section 1557 and Title IX, that is not the case. Whether either of those statutes is actually violated depends critically on the facts and circumstances of a particular case. And there are simply no facts before the Court relating to any specific action by Texas, much less any determination by HHS that such an action violates Section 1557. Texas does not allege that HHS has initiated an investigation, never mind enforcement proceedings, due to any particular action the state has undertaken, nor does Texas purport to predict the legal basis for such potential future agency action, or any resulting penalties. *Accord Tex. Indep. Producers & Royalty Owners Ass'n v. U.S. EPA*, 413 F.3d 479, 483 (5th Cir. 2005) (holding challenge to EPA regulation unripe where "we have no sense of what . . . activities would fall under EPA's permitting requirements"). Only if and when such an administrative proceeding concluded would the Court be in a position to adjudicate a tangible legal dispute between the parties. *See Shrimpers & Fishermen of the RGV v. U.S. Army Corps of Eng'rs*,

849 F. App'x 459, 463 (5th Cir. 2021) (holding case unripe where claims were "subject to ongoing factual development" in agency proceedings); *cf. Morrison v. Dallas Cnty. Cmty. Coll.*, 273 F. App'x 407, 411 (5th Cir. 2008) ("[E]mployment discrimination cases are generally fact-intensive[.]").

In the absence of any concrete dispute, Plaintiff seeks to turn this Court into a clearinghouse to preemptively resolve any potential future legal argument regarding transgender discrimination. Indeed, Plaintiff asks this Court to resolve, among other things, whether (1) Section 1557 ever prohibits discrimination on the basis of gender identity or transgender status, as a form of discrimination on the basis of sex, (2) whether the Supreme Court's decision in *Bostock* affects such a determination, and (3) whether gender dysphoria ever meets the definition of "disability" under Section 504. *See, e.g.*, Am. Compl. ¶¶ 114, 117, 121. And this is in addition to Plaintiff's initial claims seeking adjudication of the scope of Title VII as it bears on gender identity discrimination. *See, e.g.,* Am. Compl. ¶ 70. Texas thus asks this Court to provide an advisory opinion definitively interpreting several different provisions of antidiscrimination law in the U.S. Code, and forever preclude application of any contrary interpretation by federal agencies in any circumstance, all in the absence of a concrete dispute between the parties. *See* Am. Compl. at 26.

Precisely because it is unclear exactly what specific actions by Texas may be alleged to be discriminatory in the future, and the legal bases for that assertion, Plaintiff's "argument is entirely too speculative and hypothetical to establish the existence of an Article III 'case or controversy.'" *United Transp. Union v. Foster*, 205 F.3d 851, 858 (5th Cir. 2000). Courts have repeatedly dismissed cases for lack of ripeness where, as here, critical facts remain to be developed which would define the scope of the controversy and aid the court in reaching a decision. *See, e.g., Nat'l Park Hosp. Ass'n*, 538 U.S. at 812 (holding case unripe because "further factual development would 'significantly advance our ability to deal with the legal issues presented") (quoting *Duke Power Co. v. Carolina Env't Study Grp. Inc.*, 438 U.S. 59, 82 (1978)); *Walmart Inc. v. U.S. Dep't of Just.*, 21 F.4th 300, 311 (5th Cir. 2021) (holding case

unripe because even though adjudication "would be theoretically possible . . . the question would be easier if the court knew exactly what obligations" were at issue, such that the court could "assess whether those obligations accorded with the governing regulations").

While the various interpretive questions raised by Plaintiff are undoubtedly important, federal courthouses are not debating societies.  Plaintiff must present a concrete case or controversy, developed through facts, which permits adjudication; Texas has not done so.  *Accord Monk v. Huston*, 340 F.3d 279, 282 (5th Cir. 2003) ("[A] court should dismiss a case for lack of 'ripeness' when the case is abstract or hypothetical.") (quoting *New Orleans Pub. Serv., Inc. v. Council of New Orleans*, 833 F.2d 583, 586 (5th Cir. 1987)).

### B.  Texas Cannot Demonstrate Hardship.

Texas's claims are unripe for the additional reason that the state cannot demonstrate any hardship if the Court were to withhold decision.  The Amended Complaint does not claim that HHS has made a final determination as to the lawfulness of a particular act by the state with regard to transgender minors.  Nor can Texas plausibly show any harm it could suffer, such as a loss of federal funds, prior to any final determination by HHS.  The regulations on this issue are explicit:  "[n]o order suspending, terminating or refusing to grant or continue Federal financial assistance shall become effective until" three sequential procedures are completed: (1) the recipient is advised "of his failure to comply and [the agency] has determined that compliance cannot be secured by voluntary means," (2) "there has been an express finding on the record, after opportunity for hearing, of a failure by the applicant or recipient to comply," and (3) 30 days has elapsed after the Secretary has provided relevant House and Senate committees "a full written report of the circumstances and the grounds for such action." 45 C.F.R. § 80.8(c).

Texas does not allege that HHS has initiated even the first step towards potentially withholding federal funds, let alone completed all three.  At most, Texas vaguely argues that the HHS Guidance

13

constitutes "a threat that HHS will withhold funds."  Am. Compl. ¶ 62.  But the mere statement of the agency's views on federal law cannot constitute hardship simply because Plaintiff disagrees, or because a legal dispute could potentially occur in the future.  *Shields v. Norton*, 289 F.3d 832, 837 (5th Cir. 2002) (holding that where "we have some saber rattling, but nothing more . . . .  This is where a court of limited jurisdiction must stop").[3]

Indeed, the Fifth Circuit has repeatedly held that even the initiation of agency proceedings alleging a violation of law does not constitute the type of hardship that would support ripeness.  *See, e.g.*, *Energy Transfer Partners, L.P. v. FERC*, 567 F.3d 134, 141 (5th Cir. 2009) (holding case unripe where agency began proceedings, since "[t]he possibility that [plaintiff] may prevail [in the proceedings] 'warrants the requirement that [plaintiff] pursue administrative adjudication, not shortcut it'") (citation omitted); *see also TOTAL Gas & Power*, 859 F.3d at 336 (holding case unripe because plaintiff could prevail at multiple points in administrative proceedings, and plaintiff's "arguments are limited to future actions that FERC *may* take, not actions that FERC has already taken or those that it definitely *will* take in the future").

The staggering breadth of Plaintiff's sought relief further illuminates that withholding relief— and requiring Texas to assert its legal arguments in the context of a concrete case or controversy— would not impose any hardship here.  If HHS or EEOC were actually to enter a final enforcement order against Texas, then Texas could simply ask a district court to vacate that order.  But Texas asks

---

[3] Nor can Texas show a hardship via its claimed need to "prepare for, and . . . defend against" potential future "investigations."  Am. Compl. ¶ 62.  Plaintiff cannot claim injury on the basis of vaguely "preparing" for some future hypothetical enforcement action.  *See Clapper v. Amnesty Int'l USA*, 568 U.S. 398 (2013).  And in any event, expenditures associated with agency proceedings do not constitute hardship sufficient to demonstrate a ripe case.  *See TOTAL Gas & Power N. Am., Inc. v. Fed. Energy Regul. Comm'n ("FERC")*, 859 F.3d 325, 338–39 (5th Cir. 2017) ("[T]he fact that Total may incur some expense in participating in proceedings before FERC—even if it is more than it would be if those proceedings were reviewed de novo—does not render its declaratory action ripe.").

the Court to bar HHS and EEOC from *ever* advancing an interpretation of the law advanced in the Guidance, regardless of the circumstances at issue. In *Orix Credit*, the Fifth Circuit rejected a similar legal claim which sought to bar all future lawsuits arising out of certain transactions. 212 F.3d at 896. But the court of appeals held that "the broad class of potential claims that [plaintiff] seeks to bar, and the certainty that any of these claims will ever be filed, are wholly unknown." *Id.* Thus, the Court concluded that "[s]uch unasserted, unthreatened, and unknown claims do not present an immediate or real threat to [plaintiff] such that declaratory relief is proper." *Id.* So too here. Plaintiff suffers no hardship from the possibility that some hypothetical legal dispute may arise in the future; no ripe case or controversy is present here. Plaintiff's Amended Complaint should accordingly be dismissed.

### III. Section 1557 Provides an Adequate, and Exclusive, Alternative Remedy to Plaintiff.

In addition to a lack of standing and ripeness, jurisdiction is lacking because Plaintiff has an adequate and exclusive alternative remedy. APA Section 704 "limits the APA to the review of those agency actions which otherwise lack an 'adequate remedy in a court.'" *Hinojosa v. Horn*, 896 F.3d 305, 310 (5th Cir. 2018) (citing *Bowen v. Massachusetts*, 487 U.S. 879, 903 (1988)). Plaintiff possesses an adequate alternative remedy here—it may defend against any future enforcement of Section 1557 under the express administrative and judicial review provisions provided by Congress. *See* 42 U.S.C. § 18116(a).

"The adequacy of the [alternative] relief available need not provide an identical review that the APA would provide, so long as the alternative remedy offers the 'same genre' of relief." *Hinojosa*, 896 F.3d at 310 (quoting *Citizens for Resp. & Ethics in Wash. v. U.S. Dep't of Just.*, 846 F.3d 1235, 1245 (D.C. Cir. 2017)). Thus, a "legal remedy is not inadequate for purposes of the APA because it is procedurally inconvenient for a given plaintiff." *Martinez v. Pompeo*, 977 F.3d 457, 460 (5th Cir. 2020) (quoting *Town of Sanford v. United States*, 140 F.3d 20, 23 (1st Cir. 1998)). "At a minimum, the alternative remedy must

provide the petitioner 'specific procedures' by which the agency action can receive judicial review or some equivalent." *Hinojosa*, 896 F.3d at 310 (citing *Bowen*, 487 U.S. at 903)).  Alternative relief is "adequate" under § 704 if, for example, it "affords an opportunity for *de novo* district-court review" of agency action.  *Garcia v. Vilsack*, 563 F.3d 519, 522-23 (D.C. Cir. 2009) (quoting *El Rio Santa Cruz Neighborhood Health Ctr. v. U.S. Dep't of Health & Hum. Servs.*, 396 F.3d 1265, 1270 (D.C. Cir. 2005)).

Section 1557 protects the interests of recipients like Texas by setting out "specific procedures" for review of the outcome of any enforcement proceeding by HHS, *Hinojosa*, 896 F.3d at 310, including guaranteeing the "opportunity for *de novo* district-court review" of any withholding of federal funds, *Garcia*, 563 F.3d at 522-23.  Section 1557 incorporates the "enforcement mechanisms provided for and available under," *inter alia*, Title IX.  42 U.S.C. § 18116(a).  Title IX, like the other statutes incorporated into § 1557, sets out provisions to enforce its prohibition on discrimination "on the basis of sex."  *See* 20 U.S.C. §§ 1682-1683; *see also* 45 C.F.R. §§ 80.6-80.8 (Title VI regulations, incorporated by reference into the Title IX regulations at 45 C.F.R. § 86.71); 29 U.S.C. § 794a(a)(2) (incorporating "remedies, procedures, and rights set forth in title VI" to claims for violations of § 504 of Rehabilitation Act).  As noted above, to the extent a person is aggrieved by agency enforcement under Title IX's enforcement provisions, the statute grants "judicial review as may otherwise be provided by law" or, alternatively, "judicial review of such action in accordance with chapter 7 of Title 5," *i.e.* the APA.  20 U.S.C. § 1683.

Section 1557 thus "provides a direct and guaranteed path to judicial review."  *Hinojosa*, 896 F.3d at 312.  Plaintiff therefore "almost by definition . . . ha[s] an adequate remedy in a court."  *Meese*, 615 F. Supp. at 203 (explaining that defending against a government motion is a "far more appropriate, far more logical remedy than a lawsuit here seeking injunctive relief"); *see also Temple Univ. of Commonwealth Sys. of Higher Educ. ex rel. Temple Univ. Clinical Facility Prac. Plans v. Brown*, No. CIV. A. 00-CV-1063, 2001 WL 185535, at *7 (E.D. Pa. Feb. 23, 2001) (concluding plaintiff possessed alternative

remedy precluding review under § 704 because it could "defend any [ ] charges should the government choose to pursue them"); *N.J. Hosp. Ass'n v. United States*, 23 F. Supp. 2d 497, 501 (D.N.J. 1998) ("the ability and opportunity to raise a defense" to an action is "an adequate remedy in a court"); *Ass'n of Am. Med. Colls. v. United States*, 34 F. Supp. 2d 1187, 1193 (C.D. Cal. 1998) (similar); *U.S. Steel Corp. v. Fri*, 364 F. Supp. 1013, 1018-19 (N.D. Ind. 1973) (similar). At least one district court, after reviewing Title IX's administrative scheme, concluded that it deprived the court of jurisdiction over a pre-enforcement APA claim under § 704. *See Bd. of Educ. of the Highland Loc. Sch. Dist. v. U.S. Dep't of Educ.*, 208 F. Supp. 3d 850, 860-64 (S.D. Ohio 2016); *see also Preskar v. United States*, 248 F.R.D. 576, 584 (E.D. Cal. 2008) (Title VI provides "an 'adequate' remedy to redress the discrimination allegedly suffered by plaintiffs.") (citation omitted).

Further, this procedure for adjudicative proceedings, followed by judicial review, plainly reflects Congress's desire to preclude pre-enforcement judicial review of Plaintiff's claims. Where it is "fairly discernable" that an elaborate statutory review scheme was intended to create an exclusive remedy, parallel jurisdiction outside that scheme is precluded. *See Thunder Basin Coal Co. v. Reich*, 510 U.S. 200, 207, 216 (1994); *see also Elgin v. Dep't of Treasury*, 567 U.S. 1 (2012). In *Thunder Basin*, the Supreme Court held that a statute providing for administrative proceedings followed by judicial review foreclosed a parallel challenge to an agency's statutory interpretation. *See Thunder Basin*, 510 U.S. at 207-08. There, a mine operator challenged an agency's interpretation of a statute that would potentially form the basis for an enforcement action against it. *Id.* at 216. Confronted with a review process remarkably similar to those incorporated into § 1557, the Court held that Congress's intent to preclude pre-enforcement judicial review was "fairly discernible in the statutory scheme" under the Mine Act. *Id.* at 207 (quoting *Block v. Comm. Nutrition Inst.*, 467 U.S. 340, 351 (1984)).

This case is analogous to *Thunder Basin*, as in both cases no action had yet been taken against the plaintiff; the claims "turn on a question of statutory interpretation," *id.* at 216; "[n]othing in the

language and structure of the Act or its legislative history suggests that Congress intended to allow [regulated parties] to evade the statutory-review process by enjoining the [agency] from commencing enforcement proceedings" based on the challenged interpretation, *id.;* and a procedural scheme that "applies to all violations of the Act and its regulations" provides the opportunity for judicial review if the agency files an action in federal court or seeks to withhold federal funds. *Id.* at 209.

As in *Thunder Basin*, the Court here does not have jurisdiction to consider Plaintiff's anticipatory challenge to the interpretation of Section 1557. By providing for administrative review, followed by judicial review if the agency files an action in federal court or seeks to withhold federal funds, Congress precluded pre-enforcement injunctive relief. Plaintiff styles its complaint as merely challenging the statutory interpretation of the HHS Guidance, but the same was true in *Thunder Basin*. *Id.* at 205 (describing plaintiff's pre-enforcement "challenge [to] the [agency's] interpretation of" a statute). This Court should therefore join others that have refused to allow funding recipients to circumvent the civil rights laws' administrative processes through pre-enforcement challenges. *See, e.g., Taylor v. Cohen*, 405 F.2d 277 (4th Cir. 1968) (*en banc*); *Sch. Dist. of City of Saginaw v. U.S. Dep't of Health, Educ., & Welfare*, 431 F. Supp. 147 (E.D. Mich. 1977); *Highland Loc. Sch. Dist.*, 208 F. Supp. 3d at 862; *cf. Gen. Fin. Corp. v. Fed. Trade Comm'n*, 700 F.2d 366, 368 (7th Cir. 1983) ("You may not bypass the specific method that Congress has provided for reviewing adverse agency action simply by suing the agency in federal district court . . . the specific statutory method, if adequate, is exclusive.") (citing 5 U.S.C. § 704). Section 1557's provisions do not merely provide Plaintiff an adequate remedy, they supply Plaintiff the exclusive remedy to any dispute over HHS's interpretation of § 1557.

## IV.   The Court Lacks Subject Matter Jurisdiction Because the HHS Guidance Is Not Final Agency Action.

The Court lacks jurisdiction for the final reason that, like the EEOC Document, the HHS Guidance is not final agency action under Section 704 of the APA. Because Plaintiff brings suit under the APA, they may challenge only "final agency action for which there is no other adequate remedy

in a court." 5 U.S.C. § 704. "[T]wo conditions [ ] generally must be satisfied for agency action to be 'final' under the APA.  First, the action must mark the consummation of the agency's decisionmaking process—it must not be of a merely tentative or interlocutory nature.  And second, the action must be one by which rights or obligations have been determined, or from which legal consequences will flow." *U.S. Army Corps of Eng'rs v. Hawkes Co.*, 136 S. Ct. 1807, 1813 (2016) (citation omitted).

The HHS Guidance does not qualify as final agency action because it does not determine Plaintiff's rights or obligations.  As an interpretive rule and general statement of policy, the HHS Guidance could have no independent legal force against Plaintiff in any prospective enforcement proceeding.  The challenged notice seeks to provide "additional information on federal civil rights protections and federal health privacy laws that apply to gender affirming care."  HHS Guidance, at 1.  In particular, the HHS Guidance informs the public that "if people believe they have been discriminated against in a health program or activity that receives financial assistance from HHS, they can file a complaint," but does not purport to determine the outcome of such a complaint.  *Id.*  The HHS Guidance also restates HHS's interpretation that Section 1557's sex-discrimination prohibition includes protections against discrimination based on gender identity, as HHS has previously set forth in a prior Notification, not challenged here.  *See id.* at 2 ("[c]ategorically refusing to provide treatment" based on gender identity is prohibited discrimination). Thus, as with the EEOC Document, the HHS Guidance does not provide a new interpretation of law.

Additionally, the HHS Guidance provides examples of conduct that "may constitute a violation of Section 1557," but does not purport to determine the outcome of any particular enforcement action or any rights or obligations on its own—instead, the HHS Guidance only "remind[s] parties of existing statutory duties, [and] merely track[s] the statutory requirements and thus simply explain[s] something the statute already require[d]."  *Pros. & Patients for Customized Care v. Shalala*, 56 F.3d 592, 602 (5th Cir. 1995) (quoting *Nat'l Family Planning & Reprod. Health Ass'n v. Sullivan*,

979 F.2d 227, 236-37 (D.C. Cir. 1992)).  It therefore "provides guidance on an old problem"—the scope of sex discrimination under Section 1557.  *Id.*  But "[t]he agency cannot apply or rely upon [the HHS Guidance] as law because a general statement of policy only announces what the agency seeks to establish as policy." *Panhandle Producers & Royal Owners Ass'n v. Econ. Regul. Admin.*, 847 F.2d 1168, 1174-75 (5th Cir. 1988) (quoting *Pac. Gas & Elec. Co. v. Fed. Power Comm'n*, 506 F.2d 33, 38 (D.C. Cir. 1974)).

Such "interpretive rules or statements of policy generally do not qualify [as final agency action] because they are not 'finally determinative of the issues or rights to which [they are] addressed.'" *Am. Tort Reform Ass'n v. Occupational Safety & Health Admin.*, 738 F.3d 387, 395 (D.C. Cir. 2013) (quoting Edwards, Elliott, & Levy, Federal Standards of Review 157 (2d ed. 2013)).  Here, however, the HHS Guidance merely provides potential applications of the law in the abstract—"[i]nterpretive rules do not . . . have the force and effect of law and are not accorded that weight in the adjudicatory process." *Shalala v. Guernsey Mem'l Hosp.*, 514 U.S. 87, 88 (1995).  Instead they "are used to advise the public how an agency will apply its regulations in certain circumstances." *Pros. & Patients for Customized Care*, 56 F.3d at 601-02.  Regulated entities' legal obligations do not stem from the HHS Guidance; they come from certain aspects of Section 1557, as well as any relevant judicial construction of the statute's text, such as the Supreme Court's interpretation of similar language in *Bostock*.  To the extent Texas disagrees with this interpretation, it would have a full opportunity, in enforcement proceedings, to persuade a Court that HHS's interpretation of the statute expressed in the Guidance is mistaken.  *See supra at* 7-8, 16-18.

Indeed, the same would be true if HHS had never issued the HHS Guidance at all.  Just as with the EEOC Document, nothing would prevent HHS from initiating an enforcement action against Texas under a theory fully consistent with the Guidance, even if Guidance had never been issued.  And in any particular adjudication involving Texas, the state would have the opportunity to challenge

the agency's authority.  *See id.*  In fact, if HHS ever were to seek to rely on the HHS Guidance in a court proceeding, the agency "must be prepared to support the policy just as if the policy statement had never been issued."  *Panhandle Producers*, 847 F.2d at 1174; *see also Nat'l Mining Ass'n v. McCarthy*, 758 F.3d 243, 253 (D.C. Cir. 2014) (Kavanaugh, J.) (same); *Env't Integrity Project v. U.S. Env't Prot. Agency*, 969 F.3d 529, 540 (5th Cir. 2020) (agency policy statements do not receive *Chevron* deference and have only the power to persuade).  Accordingly, because the HHS Guidance determines no rights and obligations, and merely serves to inform and remind the public of HHS's interpretation of law, it cannot constitute final agency action.

## V.   Plaintiff Cannot Evade the APA's Limitations on Judicial Review by Invoking an Equitable, Non-Statutory *Ultra Vires* Cause of Action.

In its Amended Complaint Plaintiff takes the extraordinary action of raising a purported *ultra vires* claim, to attempt an end run-around the limits on judicial review of agency action imposed by Congress.  Am. Compl. ¶ 127.  However, the claims of agency action in excess of statutory authority are duplicative of Claims I and X, which assert that the agencies acted contrary to law.  Such an end-run around the APA's jurisdictional requirements is inappropriate.  *See Gen. Fin. Corp.*, 700 F.2d at 368 ("You may not bypass the specific method that Congress has provided for reviewing adverse agency action . . . .") (citing 5 U.S.C. §§ 703, 704).

"Non-statutory" *ultra vires* review is a "narrow exception" to the APA's final agency action requirements that permit judicial intervention for only the most "egregious error[s]" where a party is "wholly deprive[d] . . . of a meaningful and adequate means of vindicating its rights."  *See Am. Airlines, Inc. v. Hermann*, 176 F.3d 283, 293 (5th Cir. 1999).  This doctrine derives from the occasional historical instances where courts have exercised jurisdiction through an implied, rather than express, statutory cause of action.  *See e.g.*, *Leedom v. Kyne*, 358 U.S. 184 (1958).  Such causes of action are only available when "the individual is left to the absolutely uncontrolled and arbitrary action of a public and

administrative officer, whose action is unauthorized by any law, and is in violation of the rights of the individual." *Am. Sch. of Magnetic Healing v. McAnnulty*, 187 U.S. 94, 110 (1902).

The so-called *Kyne* doctrine provides a "rarely invocable" exception to the final agency action requirement of the APA. *See Am. Airlines, Inc.*, 176 F.3d at 294. Indeed, *Kyne* is a "is essentially a Hail Mary pass—and in court as in football, the attempt rarely succeeds." *Nyunt v. Chairman, Broad. Bd. of Governors*, 589 F.3d 445, 449 (D.C. Cir. 2009) (Kavanaugh, J.). Courts can exercise jurisdiction over non-statutory claims only where a party is "wholly depriv[ed] . . . of a meaningful and adequate means of vindicating its statutory rights." *Bd. of Governors of Fed. Rsrv. Sys. v. McCorp Fin. Inc.*, 502 U.S. 32, 43 (1991). Moreover, the agency must have violated a "clear and mandatory" statutory prohibition on agency action. *See Kyne*, 358 U.S. at 188-89 (holding that a violation of a mandatory statutory prohibition could demonstrate Congressional intent to create a legally enforceable right, but a statutory affirmative duty would not create a similar legal right). Critically here, to support a claim under *Kyne*, allegations that an agency has acted in excess of statutory authority may not "simply involve a dispute over statutory interpretation." *See Kirby Corp. v. Pena*, 109 F.3d 258, 269 (5th Cir. 1999) (quoting *Dart v. United States*, 848 F.2d 217, 231 (D.C. Cir. 1988)).

Texas clearly has meaningful and adequate means of vindicating its statutory rights under the APA upon final agency action. *See Am. Airlines, Inc.*, 176 F.3d at 294; *Exxon Chems. Am. v. Chao*, 298 F.3d 464, 469 (5th Cir. 2002) (rejecting jurisdiction based on the *Kyne* exception where the plaintiff "can obtain meaningful judicial review" upon exhausting administrative proceedings). As discussed, Texas will have ample opportunity to present their interpretations of Section 1557 and Title VII upon the initiation of an enforcement proceeding. *See supra* at 7-8, 16-18.

Moreover, neither the EEOC Document nor HHS Guidance challenged here violates a "clear and mandatory" statutory prohibition. *See Kyne*, 358 U.S. at 188. Indeed, Plaintiff does not even allege such a violation, complaining only that "[t]he agencies' interpretations of the law are incorrect, leading

22

them to assume investigatory and enforcement power Congress has not awarded them." Am. Compl. ¶ 127. Neither Section 1557 nor Title VII contains any language prohibiting agency action, let alone the type of clear and mandatory prohibition that was at issue in *Kyne*. *Compare* 42 U.S.C. §§ 18116, 2000e-2, *with Kyne*, 358 U.S. at 188 ("the Board shall not (1) decide that any unit is appropriate for such purposes if such unit includes both professional employees and employees who are not professional employees unless a majority of such professional employees vote for inclusion in such unit.") (citing 29 U.S.C. § 159(a). Instead, Plaintiff's nonstatutory claims are a paradigmatic example of a premature dispute over statutory interpretation. *See Kirby*, 109 F.3d at 269. In such disputes, courts plainly lack jurisdiction to grant relief. *See id.*; *Kyne*, 358 U.S. at 189.

In short, this Court may not engage in *ultra vires* review to "police" the "purity" of hypothetical agency actions "long before the administrative process is over." *Sanderson Farms, Inc. v. Nat'l Labor Rels. Bd.*, 651 F. App'x 294, 298 (5th Cir. 2016). Instead, pursuant to clear Fifth Circuit precedent, the Court should dismiss Plaintiff's *ultra vires* claim for lack of subject matter jurisdiction.

## **CONCLUSION**

For the foregoing reasons, the First Amended Complaint should be dismissed.

DATED: April 6, 2022                    Respectfully submitted,

                                        BRIAN M. BOYNTON
                                        Principal Deputy Assistant Attorney General

                                        JENNIFER D. RICKETTS
                                        Director, Federal Programs Branch

                                        CARLOTTA WELLS
                                        Assistant Director, Federal Programs Branch

                                        /s/ *Martin M. Tomlinson*
                                        MARTIN M. TOMLINSON
                                        MICHAEL DREZNER
                                        CHRISTOPHER ROBERT HEALY
                                        Trial Attorneys
                                        Civil Division, Federal Programs Branch
                                        U.S. Department of Justice
                                        1100 L Street, NW
                                        Washington, DC 20005
                                        Phone:   (202) 353-4556
                                        Email:   martin.m.tomlinson@usdoj.gov

                                        *Counsel for Defendants*

24