IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

| | | |
|---|---|---|
| STATE OF TEXAS, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | 2:21-CV-194-Z |
| | § | |
| EQUAL EMPLOYMENT OPPORTUNITY | § | |
| COMMISSION, *et al.*, | § | |
| | § | |
| Defendants. | § | |

**OPINION AND ORDER**

Before the Court are Defendants'[1] Motion for Summary Judgment ("Motion") (ECF No. 56) and Plaintiff State of Texas's ("Plaintiff") Cross-Motion for Summary Judgment ("Cross-Motion") (ECF No. 61). Having reviewed the parties' briefing and the relevant law, the Court GRANTS IN PART and DENIES IN PART Defendants' Motion and GRANTS IN PART and DENIES IN PART Plaintiff's Cross-Motion.

### BACKGROUND

On June 15, 2020, the Supreme Court held Title VII's "because of . . . sex" terminology prohibits "sexual orientation" and "gender identity" discrimination in employment. *See generally Bostock v. Clayton County*, 140 S. Ct. 1731 (2020). A year to the day, EEOC Chairman Charlotte Burrows issued a "technical assistance document" ("June 15 Guidance") professedly explaining "what the *Bostock* decision means for LGBTQ+ workers (and all covered workers) and for employers across the country" and "the [EEOC's] established legal positions on LGTBQ+-related

---

[1] Defendants are the Equal Employment Opportunity Commission ("EEOC"), Charlotte A. Burrows, in her official capacity as Chairman of the EEOC, Merrick B. Garland, in his official capacity as Attorney General of the United States, the United States Department of Health and Human Services ("HHS"), Xavier Becerra, in his official capacity as Secretary of HHS, and Lisa J. Pino, in her official capacity as Director of HHS's Office for Civil Rights. The Court will refer to all these parties collectively as "Defendants."

matters, as voted by the Commission." ECF No. 63-1 at 3. The June 15 Guidance states it is relevant to "[a]pplicants for employment, employees, employers covered by Title VII[, and] related representatives and practitioners." *Id.* The June 15 Guidance defines "employers covered by Title VII" to include "state . . . government employers with 15 or more employees." *Id.* at 3, 5.

On March 2, 2022, HHS's Office of Civil Rights issued a similar "Notice and Guidance" ("March 2 Guidance"), detailing "additional information on federal civil rights protections . . . that apply to gender affirming care." ECF No. 64-1 at 2. HHS issued the March 2 Guidance in direct response to a Texas gubernatorial order directing the Texas Department of Family and Protective Services to investigate incidents of sex change procedures performed on minors. *See id.* at 6 ("[O]n the heels of a discriminatory gubernatorial order in Texas, Health and Human Services (HHS) Secretary Xavier Becerra released the following statement . . . [and] announced several immediate actions HHS is taking actions [sic] to support LGBTQI+ youth and further remind Texas and others of the federal protections that exist.").

The March 2 Guidance interprets Section 1557 of the Affordable Care Act to prohibit federally funded entities from "restricting an individual's ability to receive medically necessary care, including gender-affirming care, from their health care provider solely on the basis of their sex assigned at birth or gender identity." *Id.* at 3. The March 2 Guidance also interprets Section 504 of the Rehabilitation Act and Title II of the Americans with Disabilities Act ("ADA"), warning "[r]estrictions that prevent otherwise qualified individuals from receiving medically necessary care on the basis of their gender dysphoria, gender dysphoria diagnosis, or perception of gender dysphoria may . . . also violate Section 504 and Title II of the ADA." *Id.*

PROCEDURE

On September 20, 2021, Plaintiff State of Texas sued EEOC, Charlotte Burrows, in her official capacity as Chairman of the EEOC, and Merrick Garland, in his official capacity as Attorney General of the United States. *See* ECF No. 1. On March 9, 2022, Plaintiff filed an Amended Complaint, adding HHS, Xavier Becerra, in his official capacity as Secretary of the HHS, and Lisa Pino, in her official capacity as Director of HHS's Office for Civil Rights. *See* ECF No. 31. Plaintiff asks the Court to: (1) declare the June 15 Guidance and March 2 Guidance (collectively "Guidances") unlawful; (2) vacate and set aside the Guidances; and (3) enjoin enforcement or implementation of the Guidances.

In response, Defendants filed motions under Federal Rule of Civil Procedure 12(b)(1), arguing the Court lacks subject-matter jurisdiction. Although the Court largely denied the motions, the Court dismissed Count XI of Plaintiff's Amended Complaint. *See generally* ECF Nos. 31, 53. Plaintiff and Defendants now separately move the Court for summary judgment, asking the Court to resolve Plaintiff's remaining claims — Counts I–X. *See* ECF Nos. 56, 61.

Defendants request summary judgment on Plaintiff's remaining claims. *See* ECF Nos. 56, 57. Defendants argue the Guidances: (1) accord with the law;[2] (2) are not arbitrary and capricious; and (3) do not constitute "substantive rules" requiring publication in the Federal Register and notice-and-comment rulemaking procedures. Plaintiff also moves for summary judgment on its remaining claims. Plaintiff argues: (1) the June 15 Guidance does not accord with the law as it diverges from Title VII and *Bostock*; (2) the March 2 Guidance does not accord with law as it diverges from Section 1557 and *Bostock*; (3) the Guidances are arbitrary and capricious; (4) the

---

[2] As part of this argument, Defendants aver the June 15 Guidance accords with Title VII, the promulgation of the June 15 Guidance followed EEOC procedures, the June 15 Guidance does not violate the First Amendment, and the June 15 Guidance does not violate the Eleventh Amendment. ECF No. 57 17–33.

3

Guidances are invalid substantive rules; (5) the June 15 Guidance violates the First Amendment; (6) EEOC violated the Administrative Procedure Act ("APA") by failing to follow Title VII's requirement and EEOC agency rules; and (7) EEOC violated the APA by failing to publish substantive rules of general applicability under the Freedom of Information Act ("FOIA"). A court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a).

APPLICATION: *Bostock* (Counts I, X)

The pending motions sound in the APA, Title VII, First Amendment, Eleventh Amendment, and C.F.R. But the crux of the parties' disagreement distills down to one question: is the non-discrimination holding in *Bostock* cabined to "homosexuality and transgender *status*" or does it extend to correlated *conduct* — specifically, the sex-specific: (1) dress; (2) bathroom; (3) pronoun; and (4) healthcare practices underlying the Guidances and the Amended Complaint? *See* 140 S. Ct. at 1737–38, 1741–49, 1753–54 (emphasis added); ECF No. 31 at 8 ("The issues in *Bostock* were exclusively related to discrimination based on status; no discrimination based on conduct was at issue."); ECF No. 57 at 18 ("Texas poses a false distinction between status and conduct." (cleaned up)); ECF No. 67 at 10 ("The bulk of Texas's argument reduces to the notion that Title VII narrowly protects only certain 'statuses' [but not] 'conduct' related to a given status." (cleaned up)); ECF No. 63-1 at 7–8. On balance, Plaintiff has the better arguments.[3] The Court thus DENIES Defendants' Motion and GRANTS Plaintiff's Cross-Motion with respect to Counts I and X.

---

[3] The Guidances, Amended Complaint, motions, and briefs intermittently use the terms "gay," "homosexual," "bisexual," and "transgender" as synonyms for the categories "sexual orientation" and "gender identity" referenced in *Bostock*. Though the terminology is potentially underinclusive, overinclusive, inexact, and inaccurate, this Court will refer to "sexual orientation" and "gender identity" as collective of all the aforementioned categories — unless particularity is necessary for the Court's analysis.

1. **Plaintiff's reading of *Bostock* tracks Justice Gorsuch's words and reasoning: Title VII prohibits employment discrimination *because of* sexual orientation and gender-identity status — *i.e.*, "being homosexual," "being transgender" — but not necessarily all correlated *conduct*.**

On its face, Title VII of the Civil Rights Act of 1964 prohibits employment discrimination "because of . . . sex." *See generally* 42 U.S.C. § 2000e-2. In *Bostock*, the Supreme Court held Title VII's "because of sex" terminology should be read to prohibit "sexual orientation" and "gender identity" discrimination in employment. *See generally* 140 S. Ct. 1731. More precisely, the Supreme Court held: "An employer who fires an individual merely *for being* gay or transgender defies the law." *Id.* at 1754 (emphasis added). Though human sexuality correlates to myriad attractions, identifications, actions, and relationships, the Court cabined its definitions and descriptions of "being homosexual" and "being transgender" to *status*. *Id.* at 1737–38, 1741–49, 1753–54. Pointedly, Justice Gorsuch's majority opinion repeatedly joined the terms "status" and "for being" in the sentences, paragraphs, and sections discussing these concepts:

- An individual's homosexuality or transgender *status* is not relevant to employment decisions. That's because it is impossible to discriminate against a person *for being* homosexual or transgender without discriminating against that individual based on sex.

- [E]mployers might describe their actions as motivated by their employees' homosexuality or transgender *status*. But . . . . [w]hen an employer fires an employee *for being* homosexual or transgender, it necessarily and intentionally discriminates against that individual in part because of sex.

- An employer that announces it will not employ anyone who is homosexual, for example, intends to penalize male employees *for being* attracted to men and female employees *for being* attracted to women.

- By discriminating against homosexuals, the employer intentionally penalizes men *for being* attracted to men and women *for being* attracted to women.

*Id.* (emphasis added). Finally, in each instance, Justice Gorsuch equated the status "being" with "attraction" (homosexual) and "identification" (transgender) — not all correlated conduct. *Id.*

In total, Justice Gorsuch referenced "homosexuality or transgender status" fifteen times. *Id.* at 1737–54. Each and every time, his definition and description of "status" tracks with Plaintiff's reading of *Bostock:* Title VII prohibits employment discrimination against an individual "for being homosexual," "for being transgender" — *i.e.*, "men for being attracted to men," "women for being attracted to women," and "persons with one sex identified at birth and another today" — but not necessarily all correlated conduct. *Id.* at 1746. When the *Bostock* plaintiffs pressed the Court to expand the Title VII analysis and definition of "sex" beyond mere *status* to reach a "broader scope" of conduct, Justice Gorsuch expressly declined:

> The employers say that, as used here, the term 'sex' in 1964 referred to 'status as either male or female [as] determined by reproductive biology.' The employees counter by submitting that, even in 1964, the term bore a *broader scope*, capturing more than anatomy and reaching at least some norms concerning gender identity and sexual orientation. But because nothing in our approach to these cases turns on the outcome of the parties' debate . . . we proceed on the assumption that 'sex' signified what the employers suggest, referring only to biological distinctions between male and female.

*Id.* at 1739 (emphasis added) (alteration in original).

The Guidances and Defendants misread *Bostock* by melding "status" and "conduct" into one catchall protected class covering all conduct correlating to "sexual orientation" and "gender identity." *See* ECF No. 57 at 18–19. Justice Gorsuch expressly did not do that. *Id.* at 1739 ("The only statutorily protected characteristic at issue in today's cases is "sex" . . . .); *see also Stollings v. Tex. Tech Univ.*, No. 5:20-CV-250-H, 2021 WL 3748964, at *10 (N.D. Tex. Aug. 25, 2021) (*Bostock* "did not establish a new or otherwise separate protected class, but instead clarified the scope of sex classification."); *Bear Creek Bible Church v. E.E.O.C.*, 571 F. Supp. 3d 571, 624 (N.D. Tex. Nov. 22, 2021) ("Transgender individuals are not a protected class, and the 'discrimination' must still link to a biological sex.").

**2. Defendants misapply *Bostock* to categories of *conduct* discussed in the dissents but expressly deferred in the majority opinion — including the dress, bathroom, pronoun, and healthcare practices in the Amended Complaint.**

Justice Alito's dissent in *Bostock* famously warned the majority's opinion was like a "pirate ship," sailing under a textualist flag but wreaking havoc on over 100 federal statutes prohibiting "sex" discrimination. *See* 140 S. Ct. at 1755–56, 1778–83 (Alito, J., dissenting) ("The entire Federal Judiciary will be mired for years in disputes about the reach of the Court's reasoning."). Justice Alito predicted the holding in *Bostock* would reach at least seven categories of Title VII litigation: (1) "bathrooms, locker rooms, or anything else of the kind"; (2) "women's sports"; (3) "housing"; (4) "employment by religious organizations"; (5) "healthcare"; (6) "freedom of speech"; and (7) "constitutional claims." *Id.* (internal marks omitted).

Justice Alito's "parade of horribles" marched through hypotheticals, examples, and pending cases that dovetail the State of Texas policies at issue in the Amended Complaint: sex-specific dress, bathroom, pronoun, and healthcare practices. ECF No. 31 at 13–15; *see also Bostock*, 140 S. Ct. at 1783 (Alito, J., dissenting) ("transgender prisoner denied hormone therapy and ability to ***dress*** and groom as a female" (emphasis added) (citing *Keohane v. Fla. Dep't of Corrs. Sec'y*, 952 F.3d 1257, 1262–65 (11th Cir. 2020))), 1779 ("Under the Court's decision, however, transgender persons will be able to argue that they are entitled to use a ***bathroom*** or locker room that is reserved for persons of the sex with which they identify . . . ." (emphasis added)), 1782 ("After today's decision, plaintiffs may claim that the failure to use their preferred ***pronoun*** violates one of the federal laws prohibiting sex discrimination." (emphasis added)), 1781 ("Similar claims have been brought under the Affordable Care Act (ACA), which broadly prohibits sex discrimination in the provision of ***healthcare***." (emphasis added) (internal marks omitted))

In response, Justice Gorsuch's majority opinion emphatically denied *Bostock* prejudged any of the aforementioned cases or controversies:

> The employers worry that our decision will sweep beyond Title VII to other federal or state laws that prohibit sex discrimination. And, under Title VII itself, they say sex-segregated bathrooms, locker rooms, and dress codes will prove unsustainable after our decision today. But none of these other laws are before us; we have not had the benefit of adversarial testing about the meaning of their terms, and *we do not prejudge any such question today.*
>
> Under Title VII, too, we do not purport to address bathrooms, locker rooms, or anything else of the kind. The only question before us is whether an employer who fires someone simply *for being* homosexual or transgender has discharged or otherwise discriminated against that individual 'because of such individual's sex.' . . . Whether other policies and practices might or might not qualify as unlawful discrimination or find justifications under other provisions of Title VII are questions for *future cases*, not these.

*Bostock*, 140 S. Ct. at 1753 (emphasis added). Next, Justice Gorsuch expressly stated *Bostock* did not decide "future cases" affecting religion and arising under Title VII's religious-employer exemption, the Religious Freedom Restoration Act, or the "ministerial exception" defined in *Hosanna-Tabor*. *Id.* at 1754 ("But how these doctrines protecting religious liberty interact with Title VII are questions for future cases too.").

Case by case, category by category, controversy by controversy, Justice Gorsuch deferred judgment, stating *Bostock* decided only what *Bostock* decided: under Title VII, "[a]n employer who fires an individual merely *for being* gay or transgender defies the law." *Id.* at 1754. Curiously, the Guidances imply and Defendants continue to argue that *Bostock*'s reach exceeds the grasp of its author. ECF No. 57 at 18–21. Though Defendants rely on other Title VII cases and EEOC decisions discussed below, they cannot rely on the words and reasoning of *Bostock* itself to explain why the Court prejudged what the Court expressly refused to prejudge.

3. **Defendants misread *Bostock* and overstate Supreme Court and Title VII jurisprudence to conflate protected class *status* with all correlated *conduct* — in direct contravention of Justice Gorsuch's majority opinion deferring "future cases" involving dress codes, bathrooms, pronouns, and healthcare.**

The parties agree Justice Gorsuch does not define "sexual orientation," "transgender," or "gender identity," but disagree on the meaning of his repeated phrase, "*for being* homosexual or transgender." ECF No. 62 at 16–22; ECF No. 67 at 10–12; *Bostock*, 140 S. Ct. at 1737–38, 1741–49, 1753–54. The "*for*" refers back to the discriminatory employer's actions or intentions, but what does Justice Gorsuch mean by "*being*"?

Plaintiff avers sexuality entails attractions, identifications, actions, and relationships that do not necessarily collapse into catchall categories "homosexual" or "transgender," citing philosophers, law professors, federal judges, and leading LGBT organizations. ECF No. 62 at 16–22 (citing John M. Finnis, *Law, Morality, and Sexual Orientation*, 69 NOTRE DAME L. REV. 1049, 1053–54 (1994); William N. Eskridge, Jr., *A Social Constructionist Critique of Posner's Sex and Reason*, 102 YALE L.J. 333, 360–67 (1992); MICHEL FOUCAULT, THE HISTORY OF SEXUALITY: VOLUME 1 (1978); *Doe 2 v. Shanahan*, 917 F.3d 694 (D.C. Cir. 2019) (Wilkins, J., concurring); Human Rights Campaign, *Transgender and Non-Binary FAQ*, *available at* www.hrc.org/resources/transgnder-and-non-binary-faq). From these sources, Plaintiff deduces that "being" means the *attraction* (homosexual) and *identification* (transgender) expressly referenced in Justice Gorsuch's majority opinion — but not necessarily all associated *actions*,[4] which remain subject to case-by-case Title VII analysis. *Id.*; ECF No. 68 at 6–10. Under Plaintiff's reading of *Bostock*, the State of Texas may *not* discriminate against an employee

---

[4] The *relationship* part of the equation is not at issue here, as Plaintiff does not seek to regulate or re-litigate policies pertinent to "intimate relations" outside the workplace that are covered by myriad Supreme Court cases. *See, e.g.*, *Griswold v. Connecticut*, 381 U.S. 479 (1965), *Lawrence v. Texas*, 539 U.S. 558 (2003), *United States v. Windsor*, 570 U.S. 744 (2013), *Obergefell v. Hodges*, 576 U.S. 644 (2015).

"*for being* homosexual," "*for being* transgender" — *i.e.*, "men for being attracted to men," "women for being attracted to women," and "persons with one sex identified at birth and another today" — but may regulate correlated conduct via sex-specific dress, bathroom, pronoun, and healthcare policies, if otherwise consistent with Title VII case law. *Bostock*, 140 S. Ct. at 1746.

Defendants reject Plaintiff's "exceedingly narrow interpretation of *Bostock*," openly mock Plaintiff's citation to "thirty-year-old law review articles" and "20th-century French philosopher[s]," and argue instead that "status" and "conduct" routinely meld in Supreme Court and Title VII cases where a person's sexual attraction or identification closely correlate to particular conduct. ECF No. 57 at 9–16; ECF No. 67 at 17–19 (citing *Lawrence*, 539 U.S. at 575; *Christian Legal Soc. Chapter of Univ. of Cal., Hastings Coll. of L. v. Martinez*, 561 U.S. 661, 689 (2010); *Grimm v. Gloucester Cnty. Sch. Bd.*, 972 F.3d 586, 616 (4th Cir. 2020)). Defendants do not supply contrary definitions of "sexual orientation," "transgender," "gender identity," or "for being"[5] to explain or expand the reach of Justice Gorsuch's majority opinion, but double-down on the "false distinction" between status and conduct, averring that Supreme Court and Title VII cases do not permit such distinctions when the protected class "sex" and correlated conduct are at issue. ECF No. 67 at 10–12.[6]

On balance, Plaintiff has the better argument for at least three reasons.

---

[5] Thought leaders have spilled much ink debating definitions of "being" homosexual or "being" transgender, often under the competing banners of "sexual essentialism" and "gay denialism," often in the online pages of *First Things* and *Slate* magazines. *See, e.g.*, Michael W. Hannon, *Against Heterosexuality*, FIRST THINGS, March 2014, *available at* www.firstthings.com/article/2014/03/against-heterosexuality; Mark Joseph Stern, *Gay Denialism is the New Homophobia — and It's Terrifying*, SLATE, February 2014, *available at* www.slate.com/human-interest/2014/02/gay-denialism-is-the-new-homophobia-catholic-argument-against-gay-rights-is-terrifying.html; Michael W. Hannon, *Against Obsessive Sexuality*, FIRST THINGS, August 13, 2014, *available at* www.firstthings.com/web-exclusives/2014/08/against-obsessive-sexuality.

[6] *See also* Rachel N. Morrison, *Gender Identity Policy Under the Biden Administration*, 23 FEDERALIST SOC'Y REV. 85 (May 2, 2022) (reciting history of "sexual orientation" and "gender identity" regulations under the last two presidential administrations).

*First*, when discussing these concepts, Justice Gorsuch repeatedly pairs the status "being" with the words "attraction" (homosexual) and "identification" (transgender). *Bostock*, 140 S. Ct. at 1737–38, 1741–49, 1753–54. Said analysis was often followed by hypotheticals involving "traits or actions," but never a holding that "traits or actions" categorically merge with the status "being" in every Title VII case. *Id.* Like a talismanic incantation, Defendants declare sex is "inextricably intertwined" with correlated conduct, such that the Supreme Court cannot see daylight between the status "being" and the conduct "_____" in Title VII cases post-*Bostock*. (Fill in the blank with whatever sexuality-related act, action, activity, or behavior is allegedly "inextricably intertwined" with one's sex.) *See* ECF No. 57 at 38–39; ECF No. 67 at 16–17. But time and again, Justice Gorsuch's majority *presumes* there will be Title VII cases where the protected class "sex" may not reach particular conduct. Justice Alito's dissenting opinion drives home this very point:

> To be fair, the Court does not claim that Title VII prohibits discrimination because of *everything* that is related to sex. The Court draws a distinction between things that are 'inextricably' related and those that are related in 'some vague sense.' Apparently the Court would graft onto Title VII some arbitrary line separating the things that are related closely enough and those that are not.

*Bostock*, 140 S. Ct. at 1761 (Alito, J., dissenting) (emphasis in original). When paired with Justice Gorsuch's express deferral of "future cases" involving dress, bathrooms, pronouns, and healthcare, Plaintiff's case falls in the space between the "inextricably related" and "some vague sense" case.

*Second*, Defendants' invocation of *Lawrence* and *Martinez* is misplaced. ECF No. 57 at 19. The former addressed a constitutional challenge to a criminal statute and turned on Fourteenth Amendment substantive due-process analysis not applicable to the Title VII workplace: "the most private human conduct, sexual behavior, and in the most private of places, the home." *Lawrence*, 539 U.S. at 558–78 ("These matters, involving the most intimate and personal choices a person may make in a lifetime . . . . The present case . . . does not involve public conduct."). *Lawrence* is

11

in a line of constitutional cases relevant to privacy, dignity, and autonomy rights arising under the Fourteenth Amendment and applicable to "intimate relationships" in intimate spaces — but not Title VII workplace rules governing employee dress, bathrooms, pronouns, and healthcare in mixed public-private settings. *Cf. Windsor*, 570 U.S. at 769; *Obergefell*, 576 U.S. at 665. The bedroom is not the boardroom and Plaintiff does not challenge any rule relevant to *relationships*. The latter case involved a First Amendment challenge to a law school's "accept-all-comers" policy requiring a student group "to accept members who do not share the organization's core beliefs about religion and sexual orientation." *Martinez*, 561 U.S. at 668. The *Martinez* majority cited *Lawrence* for the proposition that the Court's decisions "have declined to distinguish between status and conduct in this context," but supplied no analysis relevant to Title VII. *Id.*

*Third*, Defendants overstate the import of Title VII jurisprudence, averring Plaintiff's status-conduct reading of *Bostock* constitutes "a false dichotomy which is rejected in the case law." ECF No. 67 at 15, 17 ("[T]he State's [status-conduct] view of Title VII would narrow the protections afforded by that law until they vanished entirely."). But a cursory review of Supreme Court and circuit cases reveals that "status" and "conduct" do not *necessarily* merge every time an employee plausibly pleads a "closely associated" trait:

- *Espinoza v. Farah Mfg. Co.*, 414 U.S. 86, 88–95 (1973): Title VII protected class "national origin" (status) did not cover employee who did not obtain United States citizenship (conduct).

- *Hazen Paper Co. v. Biggins*, 507 U.S. 604, 612 (1993): Title VII protected class "age" (status), as amended by ADEA, did not cover employee who did not obtain requisite "years of service" (conduct).

- *In re Union Pac. R.R. Employment Prac. Litig.*, 479 F.3d 936, 942 (8th Cir. 2007): Title VII protected class "sex" (status), as amended by PDA, did not protect employee seeking contraception or fertility treatments (conduct).

- *E.E.O.C. v. Catastrophe Mgmt. Sols.*, 852 F.3d 1018, 1032 (11th Cir. 2016): Title VII protected class "race" (status) did not cover employee wearing a dreadlocks hairstyle as expression of "racial pride" (conduct).

- **_Garcia v. Spun Steak Co._**, 998 F.2d 1480, 1489 (9th Cir. 1993): Title VII protected class "national origin" (status) did not cover bilingual employees speaking Spanish as a form of "individual self-expression" (conduct).

- **_Garcia v. Gloor_**, 618 F.2d 264, 268 (5th Cir. 1980): Title VII protected class "national origin" (status) did not cover bilingual employees despite expert testimony that speaking Spanish is "ethnic identification" (conduct).

*See* ECF No. 62 at 25–27; ECF No. 68 at 6–9 (citations omitted).[7]

The Fifth Circuit cases cited by Defendants are inapposite. *Boh Brothers* involved a Title VII claim arising out of alleged sexual harassment by the superintendent of an all-male construction crew. 731 F.3d 444, 449 (5th Cir. 2013). There, the Fifth Circuit held evidence of harassment arising out of a plaintiff's failure to conform to sex-stereotypes "can certainly be *evidence* that gender played a part." *Id.* at 454 (quoting *Price Waterhouse v. Hopkins*, 490 U.S. 228, 251 (1989) (emphasis in original)). But *Boh Brothers* — contrary to Defendants' assertion — did not hold harassment based on sex-stereotypes "inevitably prove[s] that gender played a part in a particular employment decision." *Id.* Nothing in that opinion attempts to elide the distinction between "status" and "conduct" in anti-discrimination law. The same is true of *Deffenbaugh-Williams v. Wal-Mart Stores, Inc.* and *E.E.O.C. v. Houston Funding II Ltd.* 156 F.3d 581 (5th Cir. 1998); 717 F.3d 425 (5th Cir. 2013). Those cases involved straightforward applications of Title VII and anti-discrimination principles directly to the protected class at issue — "race" in *Deffenbaugh-Williams* and lactation in *Houston Funding*. As to *Houston Funding*, Plaintiff correctly illustrates how the case benefits the State and harms Defendants: Congress "explicitly added to the definition of 'because of sex' discrimination to include 'because of or on the basis of

---

[7] *Cf. West v. Radtke*, No. 20-1570, 2022 WL 4285722, at *10–11 (7th Cir. Sept. 16, 2022) (holding that prison employer would not violate transgender prison guard's Title VII "sex" discrimination rights in accommodating RFRA plaintiff prisoner's "right to be free from highly invasive intrusions on bodily privacy by prison employees of the opposite sex — whether on religious or privacy grounds.") (citing *Byrd v. Maricopa Cnty. Sheriff's Dep't*, 629 F.3d 1135, 1141 (9th Cir. 2011) ("The desire to shield one's unclothed figure from [the] view of strangers, and particularly strangers of the opposite sex, is impelled by elementary self-respect and personal dignity." (alteration in original) (quoting *York v. Story*, 324 F.2d 450, 455 (9th Cir. 1963))).

pregnancy, childbirth, or related medical conditions.'" ECF No. 62 at 28 (quoting 42 U.S.C.
§ 2000e(k)). Moreover, a recent Fifth Circuit case affirmed Title VII definitions remain intact post-
*Bostock*: "plaintiff must plead sufficient facts to make it plausible that he was discriminated against
'because of' his protected *status*" — not because of mere "associated" *conduct*. *Olivarez v.
T-mobile USA, Inc.*, 997 F.3d 595, 601 (5th Cir. 2021) (emphasis added).

Finally, Defendants argue prior EEOC decisions support the Guidances. ECF No. 57 at 13–
14. But these decisions are irrelevant because they interpret Title VII provisions applicable to
*federal* employers — not private-sector and state employers. *Compare* 42 U.S.C. § 2000e-2(a)(1)
(declaring it unlawful for private-sector and state employers to "fail or refuse to hire or to discharge
any individual, or otherwise to discriminate against any individual . . . because of such
individual's . . . sex"), *with* 42 U.S.C. § 2000e-16(a) ("All personnel actions affecting
employees or applicants for employment . . . shall be made free from any discrimination
based on . . . sex . . . ."). These differences "hold the Federal Government to a stricter standard
than private employers or state or local governments." *Babb v. Wilkie*, 140 S. Ct. 1168, 1173–74
(2020) (analyzing ADEA's "because of . . . age" language).

Given the difference in language, the Court cannot assume these provisions should be
interpreted synonymously. *See Neese v. Becerra*, No. 2:21-CV-163-Z, 2022 WL 1265925, at *13
(N.D. Tex. Apr. 26, 2022). This Court previously adjudicated this issue in its Order dated May 26,
2022, agreed with Plaintiff, and discerns no reason to alter its analysis. *See* ECF No. 53 at 6.
Additionally, although the Court "may rely on EEOC decisions as persuasive authority . . . they
are not binding." *Wade v. Brennan*, 647 F. App'x 412, 416 n.8 (5th Cir. 2016). Here, the Court
finds the EEOC decisions *unpersuasive* when weighed against the textual analysis of *Bostock* and
Title VII jurisprudence discussed above.

APPLICATION: **Remaining Claims**

1. **Though the June 15 Guidance barely passes muster, the March 2 Guidance is arbitrary and capricious. (Count IX)**

Courts must "hold unlawful and set aside agency action" that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). In evaluating agency action, a reviewing court "is not to substitute its judgment for that of the agency." *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983). The court "simply ensures that the agency has acted within a zone of reasonableness and, in particular, has reasonably considered the relevant issues and reasonably explained the decision." *F.C.C. v. Prometheus Radio Project*, 141 S. Ct.1150, 1158 (2021). "[T]he grounds upon which an administrative order must be judged are those upon which the record discloses that its action was based." *S.E.C. v. Chenery Corp.*, 318 U.S. 80, 87 (1943).

A. The June 15 Guidance is not arbitrary and capricious.

Plaintiff's challenge to the June 15 Guidance centers on the "established legal positions" — prior EEOC federal-sector decisions — relied on by EEOC. Defendants contend it "was plainly reasonable" for EEOC to justify the June 15 Guidance based on "past federal sector decisions finding that transgender discrimination constituted sex discrimination." ECF No. 57 at 43. In doing so, Defendants make two arguments: (1) the cited federal-sector decisions — all of which preceded *Bostock* — "applied the same definition of sex discrimination as applies in the private sector"; and (2) the language of those decisions "precisely mirrors the analysis in *Bostock*, where the Court held that 'discrimination based on homosexuality or transgender status necessarily entails discrimination based on sex[.]'" *Id.* (quoting *Bostock*, 140 S. Ct. at 1747) (alteration in original). Therefore — Defendants aver — "it was not arbitrary for the EEOC to reference them in its

Document," as "the EEOC's prior cited decisions do not rely on a distinct definition of sex discrimination for federal employers." *Id.* at 43–44.

But contrary to Defendants' assertions, the pre-*Bostock* EEOC decisions do not "precisely mirror" *Bostock*'s rationale. How can they when each decision provides a variety of interpretations of Title VII as it relates to transgender discrimination, some of which directly conflict with the biology-specific reasoning of *Bostock*? *Compare Bostock*, 140 S. Ct. at 1741 ("If the employer retains an otherwise identical employee who was *identified* as female at birth, the employer intentionally penalizes a person *identified* as male at birth for traits or actions that it tolerates in an employee *identified* as female at birth." (emphasis added)), *with Lusardi v. McHugh*, Appeal No. 0120133395, 2015 WL 1607756, at \*8 (E.E.O.C. Apr. 1, 2015) ("On this record, there is no cause to question that Complainant — who was assigned the sex of male at birth but identifies as female — is female."), *and Mia Macy v. Holder*, Appeal No. 0120120821, 2012 WL 1435995, at \*5–6 (E.E.O.C. Apr. 20, 2012).

Nevertheless, "[a]rbitrary and capricious review under the [APA] differs from" other forms of judicial review applied to statutory commands. *Tex. Off. of Pub. Util. Couns. v. F.C.C.*, 183 F.3d 393, 410 (5th Cir. 1999). The reviewing court is empowered to assess only "the reasonability of the agency's decision-making processes" and does not consider "the reasonability of its interpretation." *Id.* Though the cited EEOC decisions do not *precisely* mirror the *Bostock* majority's reasoning, both hold that an employer violates Title VII if it fires an employee of one sex for behavior the employer tolerates in members of the opposite biological sex. *Compare Bostock*, 140 S. Ct. at 1740, *with Mia Macy*, 2012 WL 1435995, at \*10. Though the two sources do not define sex discrimination in exactly the same manner, their fit is certainly not so irrational as to make Defendants' reliance on both in crafting the June 15 Guidance "outside the

zone of reasonableness." *Prometheus Radio Project*, 141 S. Ct. at 1160. Because the Court assesses only Defendants' use of the past EEOC decisions and *Bostock* in crafting the June 15 Guidance — and the Court does not weigh the substantive conclusions Defendants drew from those sources — the Court does not find the agency's action arbitrary and capricious. The Court thus GRANTS Defendants' Motion and DENIES Plaintiff's Cross-Motion with respect to the June 15 Guidance portion of Count IX.

   B.  The March 2 Guidance is arbitrary and capricious.

   Plaintiff asserts the "March 2 Guidance did not articulate reasons that justify extending *Bostock*'s interpretation of 'sex' as relating to the biological differences between men and women to gender dysphoria." ECF No. 31 at 22. "Nor did it articulate reasons to disregard Congress's exclusion of gender dysphoria from the definition of 'disability' subject only to a narrow exception." *Id.* Defendants debate this characterization of the March 2 Guidance and argue it neither "adopt[s] a different interpretation of sex than that used by the Supreme Court," nor "disregard[s] the language of [Section 504]." ECF No. 57 at 44 (internal marks omitted). Rather, the March 2 Guidance states: (1) "denial of medically necessary care solely on the basis of [a patient's] sex assigned at birth or gender identity likely violates Section 1557"; and (2) "merely that gender dysphoria, may in some cases, qualify as a disability under Section 504." *Id.* (internal marks omitted).

   Defendants appear to argue the March 2 Guidance — by incorporating the phrase "may, in some cases" — implicitly recognizes federal law rarely considers gender dysphoria to be a disability under Section 504. ECF No. 67 at 29. Yet the March 2 Guidance tries to hide the ball. The Guidance's general statement that "prevent[ing] otherwise qualified individuals from receiving medically necessary care on the basis of their gender dysphoria, gender dysphoria

diagnosis, or perception of gender dysphoria may . . . violate Section 504" overshadows any qualification implicitly referenced elsewhere. ECF No. 57 at 41. By its terms, the March 2 Guidance leaves the reader with the impression that Section 504 generally defines gender dysphoria as a disability — subject to some exceptions — even though the opposite is true. *See* 29 U.S.C. § 705(20)(F)(i).

Despite this seeming misstatement of the law, Defendants do not explain how HHS and OCR came to this conclusion. Nor do Defendants explain how HHS and OCR arrived at the March 2 Guidance's conclusion that "denial of . . . . care solely on the basis of [a patient's] sex assigned at birth or gender identity likely violates Section 1557." ECF No. 57 at 44. Regardless of the substance of the underlying reasoning or ultimate decision, the Court cannot determine whether Defendants "acted within the zone of reasonableness" or "reasonably explained the[ir] decision" when there is no explanation at all. *Prometheus Radio Project*, 141 S. Ct. at 1158. Because Defendants appear to misstate the law and do not detail what went into their decision-making, the Court finds the March 2 Guidance arbitrary and capricious. Therefore, the Court DENIES Defendants' Motion and GRANTS Plaintiff's Cross-Motion with respect to the March 2 Guidance portions of Count IX.

### 2. Defendants also violated Title VII and the APA by issuing substantive, legislative rules through improper procedures. (Counts IV, V, VII)

Plaintiff alleges the Guidances are final agency actions constituting substantive or legislative rules, and therefore: (1) the June 15 Guidance violates Title VII's procedural requirements; (2) Defendants violated the APA in failing to submit the Guidances to notice-and-comment; and (3) Defendants failed to publish the Guidances in the Federal Register. ECF No. 31 at 18–21. Defendants — however — assert "all of these counts fail because the documents are interpretive in nature, not substantive rules." ECF No. 57 at 45.

A.  The Guidances are substantive, legislative rules.

The APA defines "rule[s]" broadly as "statement[s] of general or particular applicability and future effect" created to "implement, interpret, or prescribe law or policy." 5 U.S.C. § 551(4). Two types of rules exist: interpretative rules and substantive rules. "Interpretive rules" are "general statements of policy, or rules of agency organization, procedure, or practice." *Id.* § 553(b)(A); *see also Perez v. Mortg. Bankers Ass'n*, 575 U.S. 92, 96–97 (2015) ("[I]nterpretative rules . . . are issued by an agency to advise the public of the agency's construction of the statutes and rules which it administers." (internal marks omitted)). "Substantive" or "legislative rules" are rules that have the "force and effect of law." *Perez*, 575 U.S. at 96.

Ascertaining the nature of a rule requires courts to consider "whether the rule (1) imposes any rights and obligations and (2) genuinely leaves the agency and its decision-makers free to exercise discretion." *Texas v. United States*, 809 F.3d 134, 171 (5th Cir. 2015) (internal marks omitted). "There is some overlap in the analysis of those prongs because if a statement denies the decisionmaker discretion in the area of its coverage then the statement is binding, and creates rights or obligations." *Id.* (internal marks omitted).

"[T]he starting point is the agency's characterization of the rule," which is afforded "deference." *Pros. & Patients for Customized Care v. Shalala*, 56 F.3d 592, 596 (5th Cir. 1995) (internal marks omitted). However, a reviewing court should be "mindful but suspicious of the agency's own characterization." *Texas*, 809 F.3d at 171 (quoting *Customized Care*, 56 F.3d at 595). The primary focus is "on whether the rule has binding effect on agency discretion or severely restricts it." *Id.* (quoting *Customized Care*, 56 F.3d at 595). "[A]n agency pronouncement will be considered binding as a practical matter if it either appears on its face to be binding, or is applied

by the agency in a way that indicates it is binding." *Id.* (quoting *Gen. Elec. Co. v. E.P.A.*, 290 F.3d 377, 383 (D.C. Cir. 2002)) (alteration in original).

Defendants argue the Guidances cannot be substantive rules for two reasons. First, Defendants highlight agency characterizations of the Guidances: "both documents are identified on their face as documents meant to inform the public . . . plainly express[ing] the agencies' views as to the effect of the Supreme Court's decision in *Bostock* on their interpretation of Title VII and Title IX." ECF No. 57 at 46. Second, Defendants argue "neither guidance document impermissibly binds the public or agency staff," and "both documents leave ample room for agency staff to consider the individual facts of whatever claims of discrimination may arise, and do not purport to even set forth a framework or rubric by which agency authority would be restricted." *Id.*

Defendants raised these same arguments at the motion-to-dismiss stage. Now — just as then — these arguments fail. Both documents go beyond informing the public and expressing the agencies' views as to *Bostock*'s effect in interpreting Title VII and Title IX. As the Court previously determined, the June 15 Guidance imposes new duties and "chang[ed] the text" of the statute it "profess[ed] to interpret." *POET Biorefining, LLC v. E.P.A.*, 970 F.3d 392, 407 (D.C. Cir. 2020). The June 15 Guidance imposes dress-code, bathroom, and pronoun accommodations as "existing requirements under the law" and "established legal positions" in light of *Bostock* and prior EEOC decisions interpreting Title VII. But Title VII — as interpreted in *Bostock* — does not require such accommodations. The same is true of the March 2 Guidance: it exceeds Section 1557's requirements and is not justified by *Bostock*. And contrary to Defendants' claims,

20

the Guidances bind agency staff, failing to "genuinely leave[] the agenc[ies] and [their] decision-makers free to exercise discretion." *Texas*, 809 F.3d at 171.[8]

Begin with the June 15 Guidance, which binds agency staff and the public because of its mandatory language. *See* ECF No. 57-2 at 7–8 ("May a covered employer require a transgender employee to dress in accordance with the employee's sex assigned at birth? No."), ("[E]mployers may not deny an employee equal access to a bathroom . . . that corresponds to the employee's gender identity."), ("Could use of pronouns or names that are inconsistent with an individual's gender identity be considered harassment? Yes, in certain circumstances."). Defendants rely on the June 15 Guidance's proclamation that "[t]he contents of this document do not have the force and effect of law and are not meant to bind the public in any way." *Id.* at 3. But where the language of an EEOC guidance "broadly condemn[s]" an employment practice, it "leaves no room for EEOC staff *not* to issue referrals to the Attorney General when an employer" implements the condemned practice. *Texas v. E.E.O.C.*, 933 F.3d 433, 443 (5th Cir. 2019). The June 15 Guidance — despite its purported purpose — broadly condemns the employment practices Plaintiff and its agencies implement, leaving no wiggle room for EEOC to issue referrals to the Attorney General.

Next, Defendants' defense of the March 2 Guidance as a non-substantive rule relies on the permissive nature of the Guidance's language. Defendants note the Guidance states only that denial of "medically necessary care . . . solely on the basis of [a patient's] sex assigned at birth or gender identity *likely* violates Section 1557." ECF No. 57-2 at 13 (emphasis added) ("Restricting a health care provider's ability to provide or prescribe such care *may* also violate Section 1557." (emphasis added)). Defendants thus argue the March 2 Guidance "clearly preserves the agency's

---

[8] The inquiry to determine whether agency action binds agency staff or the public is the same inquiry used to determine whether agency action is final. *Texas v. United States*, No. 6:21-CV-00016, 2022 WL 2109204, at *40 (S.D. Tex. June 10, 2022). The Court already determined the Guidances constitute final agency action. *See* ECF No. 53 at 4–13.

discretion to consider the individual facts and circumstances of any claims of discrimination." ECF No. 57 at 47. Defendants seek to mitigate Secretary Becerra's statement issued alongside the March 2 Guidance, in which he: (1) decried Texas's interpretation of its child abuse laws as "discriminatory and unconscionable"; (2) "directed [his] team to evaluate the tools at [its] disposal" in response to the "discriminatory gubernatorial order in Texas"; and (3) encouraged "[a]ny individual or family in Texas who is being targeted by a child welfare investigation because of th[e] discriminatory gubernatorial order . . . to contact our Office for Civil Rights." ECF 64-1 at 6; *see also* ECF No. 67 at 33–34. Clearly, Secretary Becerra has already announced HHS's conclusion that Plaintiff has violated the law.[9] How could HHS staff act contrary to this statement? *See Customized Care*, 56 F.3d at 599 ("We would expect agency employees to consider all sources of pertinent information in performing [their] task[s], whether the information be contained in a substantive rule, an interpretive rule, or a statement of policy. Indeed, what purpose would an agency's statement of policy serve if agency employees could not refer to it for guidance?").

Defendants also turn to *Customized Care* to argue Secretary Becerra's statement does not transform the March 2 Guidance into a substantive rule. ECF No. 67 at 33–34. *Customized Care* involved the FDA's promulgation of a regulation — CPG 7132.16 — related to the practice of "compounding" often done at retail pharmacies. 56 F.3d at 593. The Fifth Circuit noted "the fact that FDA inspectors refer to CPG 7132.16 to help determine whether a pharmacy is engaged in traditional compounding or drug manufacturing is not particularly probative whether the rule is substantive." *Id.* at 599. Looking outside the regulation to the language used by the FDA in

---

[9] Relatedly, Secretary Becerra's statement is in lockstep with *myriad* Biden Administration statements, notifications, and executive orders announcing maximalist definitions of "sexual orientation" and "gender identity" paired with maximalist law enforcement directives. *See, e.g.*, Exec. Order No. 13,988, 86 Fed. Reg. 7023 (Jan. 20, 2021); Exec. Order No. 14,021, 86 Fed. Reg. 13,797 (Mar. 8, 2021); Exec. Order No. 14,021, 86 Fed. Reg. 13,803 (Mar. 8, 2021); Exec. Order No. 14,035, 86 Fed. Reg. 34,593 (June 25, 2021); Office for Civil Rights, U.S. Dep't of Health & Human Servs., HHS Notice and Guidance on Gender Affirming Care, Civil Rights, and Patient Privacy (Mar. 2, 2022).

warning letters to pharmacies, the court opined "statements are not to be considered out of context or in isolation." *Id.* Considering all this, the Fifth Circuit held CPG 7132.16 was not a substantive rule. *Id.* at 600.

The entire context of the March 2 Guidance — both its language and the accompanying statement of Secretary Becerra — reveals the opposite is true here. The March 2 Guidance is clear: "Categorically refusing to provide treatment to an individual based on their gender identity *is* prohibited discrimination. Similarly, federally-funded covered entities restricting an individual's ability to receive medically necessary care, including gender-affirming care . . . *likely violates* Section 1557." ECF No. 57-2 at 13 (emphasis added). Now add Secretary Becerra's statement, directly responding to the "discriminatory gubernatorial order in Texas" which described the March 2 Guidance as "making clear that denials of health care based on gender identity *are illegal*, as is restricting doctors and health care providers from providing care because of a patient's gender identity." ECF No. 64-1 at 7 (emphasis added). The Court agrees with Plaintiff: The March 2 Guidance is "binding on the agency 'as a practical matter [because] it either appears on its face to be binding, or is applied by the agency in a way that indicates it is binding.'" ECF No. 62 at 43 (quoting *Texas*, 809 F.3d at 171). Summarily, the Guidances constitute substantive rules, and Defendants had to follow proper procedures to promulgate them.

B. <u>EEOC violated Title VII by issuing the June 15 Guidance.</u>

Title VII provides the EEOC "authority from time to time to issue, amend, or rescind suitable *procedural regulations* to carry out the provisions of this subchapter." 42 U.S.C. § 2000e-12(a) (emphasis added). "EEOC has limited rulemaking and enforcement power with respect to Title VII," and the agency "may issue only issue 'procedural regulations' implementing Title VII and may not promulgate substantive rules." *E.E.O.C.*, 933 F.3d at 439 (quoting 42 U.S.C.

23

§ 2000e-12(a)). As detailed above, the June 15 Guidance constitutes a substantive rule. Because the June 15 Guidance is a substantive rule, EEOC could not promulgate the June 15 Guidance under the procedural rules of Title VII. The Court finds a procedural violation of Title VII and DENIES Defendants' Motion and GRANTS Plaintiff's Cross-Motion as to Count IV.

    C. <u>Defendants violated the APA by failing to follow notice-and-comment rulemaking requirements.</u>

"Substantive" or "legislative" rules must undergo notice and comment, while certain categories of "non-legislative" rules are exempt from the typical notice-and-comment requirements. *See* 5 U.S.C. § 553; *Texas*, 809 F.3d at 170–71. "[I]f a rule is 'substantive,' the exemption is inapplicable, and the full panoply of notice-and-comment requirements must be adhered to scrupulously." *Texas*, 809 F.3d at 171 (quoting *Customized Care*, 56 F.3d at 595). Again, the Guidances constitute "substantive" rules, and were thus required to undergo the notice-and-comment process. Defendants do not "claim to have complied with the APA's notice-and-comment requirements." ECF No. 62 at 39. Failure to submit the Guidances to notice and comment violates the APA. The Court DENIES Defendants' Motion and GRANTS Plaintiff's Cross-Motion as to Count V.

    D. <u>Defendants violated the APA by failing to publish the Guidances in the Federal Register as required by FOIA.</u>

FOIA requires agencies to "separately state and currently publish in the Federal Register for guidance of the public . . . substantive rules of general applicability adopted as authorized by law." 5 U.S.C. § 552(a)(1)(D). "[T]he core purpose of the FOIA . . . is contributing significantly to public understanding of the operations or activities of the government." *U.S. Dep't of Def. v. Fed. Lab. Relations Auth.*, 510 U.S. 487, 495 (1994) (internal marks omitted) (emphasis removed). Again, Defendants do not dispute they did not publish the Guidances in the Federal Register. Defendants instead resort to arguments that the Guidances are not substantive rules, an argument

the Court finds unpersuasive. But even if the Guidances were not substantive rules, FOIA's publication requirement also applies to "statements of general policy or interpretations of general applicability formulated and adopted by the agency." 5 U.S.C. § 552(a)(1)(D). Either way, the law requires the Guidances to be published in the Federal Register. As to Count VII, the Court DENIES Defendants' Motion and GRANTS Plaintiff's Cross-Motion.

### 3. EEOC violated Title VII's procedural requirements and its own regulations. (Counts III, VI)

Plaintiff argues the June 15 Guidance was not issued in accordance with the requirements of Title VII or EEOC's specific procedures and violates the APA's requirement that an agency act only in "observance of procedure required by law." 5 U.S.C. § 706(2)(D). Defendants — by contrast — aver: (1) the two Title VII provisions cited by Plaintiff are not "relevant because neither provision bars EEOC from issuing the EEOC document"; and (2) the June 15 Guidance does not violate internal EEOC procedures because it "did not require majority approval of the Commission." ECF No. 57 at 26.

### A. EEOC violated Title VII's procedural requirements when issuing the June 15 Guidance.

Under Title VII, the EEOC chairman is "responsible on behalf of the Commission for the administrative operations of the Commission." 42 U.S.C. § 2000e-4(a). Even so, the "powers of the Commission" must be exercised by a "quorum" consisting of at least "three members." *Id.* § 2000e-4(c). Those powers include "furnish[ing] to persons subject to this subchapter such technical assistance as they may request to further their compliance with this subchapter." *Id.* § 2000e-4(g)(3). Congress established a "revolving fund . . . to pay the cost . . . of providing education, technical assistance, and training relating to laws administered by the Commission." *Id.* § 2000e-4(k)(1). EEOC must "charge fees . . . to offset the costs of education, technical assistance, and training provided with monies in the Fund." *Id.* § 2000e-4(k)(2)(A). As part of exercising its

powers under Title VII, EEOC "shall carry out educational and outreach activities . . . targeted to (A) individuals who historically have been victims of employment discrimination and have not been equitably served by the Commission; and (B) individuals on whose behalf the Commission has authority to enforce any other law prohibiting employment discrimination." *Id.* § 2000e-4(h)(2).

By issuing the June 15 Guidance, Plaintiff avers EEOC violated Title VII because the Guidance was not: (1) "a matter of administration Burrows could undertake unilaterally"; (2) "approved by a quorum of the Commission"; and (3) "paid for by the persons and entities receiving it." ECF No. 62 at 44. Defendants argue these requirements do not apply because the June 15 Guidance "was created and disseminated as part of EEOC's educational and outreach activities" and, therefore, the requirement that technical assistance be issued only by request pursuant to Section 2000e-4(g)(3) is inapplicable. ECF No. 57 at 26. And Defendants claim Section 2000e-4(k) does not apply either because that provision does not apply to "EEOC's mission and authority to provide free outreach and education." *Id.* at 27.

Defendants misunderstand Title VII's procedural requirements. First, Defendants' arguments ignore the full text of Section 2000e-4. Although the "Commission shall carry out educational and outreach activities," such activities must coincide with EEOC "exercising its powers under this subchapter." 42 U.S.C. § 2000e-4(h)(2). Therefore, the Commission must carry out education and outreach activities only *after* EEOC properly issues technical assistance someone has requested and paid for. *Id.* § 2000e-4(g)(3), k(2). Second, Defendants attempt a bait-and-switch. Title VII and EEOC distinguish education, outreach, and technical assistance. *See generally* 42 U.S.C. § 2000e-4. EEOC issued the June 15 Guidance as a "technical assistance document." EEOC cannot now change its characterization of the June 15 Guidance to better suit

its litigation position. Accordingly, the Court DENIES Defendants' Motion and GRANTS Plaintiff's Cross-Motion as to Count III.

B. EEOC violated its agency-imposed procedural requirements when issuing the June 15 Guidance.

Defendants assert EEOC could issue the June 15 Guidance without a quorum because the Title VII language cited by Plaintiff "involves vacancies at the Commission." ECF No. 57 at 28. Because "[n]othing in that provision supports Texas' attempt to conflate the concept of a 'quorum' with the need to hold *a vote* in a manner consistent with the regulation found at 29 C.F.R. § 1695.2(d) (2020)," Defendants believe the June 15 Guidance was properly issued by Chairman Burrows under EEOC's own procedural requirements. *Id.*

Only documents that set forth the Commission's legal position for the first time, change the Commission's legal position on an issue, or are significant or otherwise subject to notice and comment require majority Commission approval. *Id.* However,

> [i]f the document is not setting forth a new or changed legal position, is reiterating already established Commission policies, or is otherwise simply providing technical assistance on the laws the Commission enforces without announcing any new policy or legal position, it shall be circulated to the Commission for informational purposes for a period of not less than five days . . . and shall only require approval, but not signature, by the Chair.

*Id.* Defendants contend the June 15 Guidance "merely informs the public about the Supreme Court's decision in *Bostock* and longstanding EEOC positions," so "EEOC was not required to put the [Guidance] to majority vote." *Id.*

This argument is unpersuasive. The Court previously explained why the June 15 Guidance sets forth EEOC's legal position for the first time. *See, e.g.*, ECF No. 53 at 4–8. Therefore, if the June 15 Guidance is a "technical assistance document," as originally described, a Commission vote necessitating a quorum was required for issuance. And if the June 15 Guidance is now "education or outreach," as EEOC describes, the Guidance sets forth a legal position for the first

time and requires a vote. Either way, a Commission vote was paramount for the June 15 Guidance's issuance. The Court thus DENIES Defendants' Motion and GRANTS Plaintiff's Cross-Motion as to Count VI.

### 4. Plaintiff's constitutional claims fail. (Counts II, VIII)

In addition to all other claims discussed, the Court considers Plaintiff's two constitutional claims. The Court first considers Plaintiff's First Amendment claim before turning to Plaintiff's Eleventh Amendment claim. The Court concludes Defendants are entitled to summary judgment on both constitutional claims.

A. Plaintiff's First Amendment claim fails.

Plaintiff avers the "June 15 Guidance unconstitutionally compels and restrains speech" by "purporting to require that employers and their employees use of an individual's preferred pronouns based on subjective gender identity rather than biological sex." ECF No. 31 at 16. "Adopting the policies required by the June 15 Guidance" — Plaintiff insists — "would cause Texas to violate its employees' free speech rights." *Id.*

The First Amendment "protects the citizen against the State itself and all of its creatures." *W. Va. State Bd. of Educ. v. Barnette*, 319 U.S. 624, 637 (1943). A State has no "duty or power to enforce [its citizens'] rights in respect of their relations with the federal government." *Massachusetts v. Mellon*, 262 U.S. 447, 485–86 (1923). Plaintiff insists "Texas is not asserting its right to speak, but challenging EEOC's mandate to expose itself to liability for violating the rights of its employees." ECF No. 62 at 43. But this argument fails.

As Defendants articulate, Plaintiff supposes "theoretical First Amendment lawsuits by unknown state employees whom Texas might someday discipline voluntarily." ECF No. 67 at 38. Plaintiff neither alleges imminent discipline of any employee nor alleges any employee will sue

Texas based on a First Amendment theory. Plaintiff cites three Supreme Court cases for the basic proposition that the federal government may not coerce employers to take unconstitutional action. *See* ECF No. 62 at 43–44. Yet these cases "involve lawsuits by parties actually injured, or under threat of injury, by the laws or acts at issue," unlike this case which "involve[s] prospective lawsuits by employers who caused, or would cause, those injuries." ECF No. 67 at 39.

Accordingly, the Court will "resist the pulls to decide the constitutional issues involved in this case on a broader basis than the record before [it] imperatively requires." *City of El Cenizo v. Texas*, 890 F.3d 164, 185 (5th Cir. 2018) (quoting *Serafine v. Branaman*, 810 F.3d 354, 363 (5th Cir. 2016)). The Court GRANTS Defendants' Motion and DENIES Plaintiff's Cross-Motion as to Count II.

B.  Plaintiff's Eleventh Amendment claim fails.

Plaintiff avers the "June 15 Guidance is 'not in accordance with law' and 'contrary to constitutional right, power, privilege, or immunity,' 5 U.S.C. § 706(2)(A)–(B), because its interpretation of Title VII violates the Eleventh Amendment to the U.S. Constitution." ECF No. 31 at 21. Because "Congress never identified any pattern of discrimination by the States against employees based on homosexual status or transgender status, let alone one that amounted to a constitutional violation," Plaintiff argues "the June 15 Guidance is an unlawful attempt to abrogate [its] sovereign immunity." *Id.*

Plaintiff neither mentions this claim nor rebuts Defendants' arguments as to this claim in its Cross-Motion. "When a plaintiff fails to defend a claim in response to a motion to dismiss or summary judgment motion, the claim is deemed abandoned." *Arias v. Wells Fargo Bank, N.A.*, No. 3:18-CV-00418-L, 2019 WL 2770160, at *2 (N.D. Tex. July 2, 2019); *see also Black v. Panola Sch. Dist.*, 461 F.3d 584, 588 n.1 (5th Cir. 2006).

As Texas has abandoned its Eleventh Amendment claim, the Court GRANTS Defendants' Motion and DENIES Plaintiff's Cross-Motion as to Count VIII.

**APPLICATION: Declaratory Judgment and Injunctive Relief**

Under the Declaratory Judgment Act ("DJA"), a federal court "may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a). "Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such." *Id.* The DJA is "an enabling Act, which confers a discretion on courts rather than an absolute right upon the litigant." *Wilton v. Seven Falls Co.*, 515 U.S. 277, 287 (1995).

When presented with a request to decide or dismiss a declaratory-judgment suit, a court must decide whether: (1) "the declaratory action is justiciable"; (2) "the court has the authority to grant declaratory relief"; and (3) "to exercise its discretion to decide or dismiss the action." *Sherwin-Williams Co. v. Holmes County*, 343 F.3d 383, 387 (5th Cir. 2022). A district court lacks authority to grant declaratory relief and "may not consider the merits of [a] declaratory judgment action when": (1) "a declaratory defendant has previously filed a cause of action in state court against the declaratory plaintiff"; (2) "the state case involves the same issues as those involved in the federal case"; and (3) "the district court is prohibited from enjoining the state proceedings under the Anti-Injunction Act." *Travelers Ins. Co. v. La. Farm Bureau Fed'n*, 996 F.2d 774, 776 (5th Cir. 1993) (emphasis removed). In exercising its discretion to decide or dismiss the action, the Court should consider seven nonexclusive factors:

(1) whether there is a pending state action in which all of the matters in controversy may be fully litigated;

(2) whether the plaintiff filed suit in anticipation of a lawsuit filed by the defendant;

(3) whether the plaintiff engaged in forum shopping in bringing the suit;

(4) whether possible inequities in allowing the declaratory plaintiff to gain precedence in time or to change forums exist;

(5) whether the federal court is a convenient forum for the parties and witnesses;

(6) whether retaining the lawsuit would serve the purposes of judicial economy; and

(7) whether the federal court is being called on to construe a state judicial decree involving the same parties and entered by the court before whom the parallel state suit between the same parties is pending.

*Sherwin-Williams Co.*, 343 F.3d at 388 (quoting *St. Paul Ins. Co. v. Trejo*, 39 F.3d 585, 590–91 (5th Cir. 1994)).

The Court finds declaratory relief proper. First, declaratory action is justiciable. The Court previously determined that an actual controversy exists between the parties. *See generally* ECF No. 53. Second, nothing before the Court indicates there is a pending state-court proceeding between the parties whose existence divests the Court of its authority to grant declaratory relief. And third, the Court finds application of the *Trejo* factors favors exercise of its discretion to grant declaratory relief.

Regarding factor one — as previously mentioned — the Court is unaware of any pending state action involving the parties in which all the matters in controversy may be fully litigated. As to factors two, three, and four: Plaintiff admits it sued out of concern for future HHS and EEOC investigations, Justice Department enforcement actions, and suits by "private attorneys general." ECF No. 31 at 14–15. But "[m]erely filing a declaratory judgment action in a federal court with jurisdiction to hear it . . . is not in itself improper anticipatory litigation or otherwise abusive 'forum shopping.'" *Sherwin-Williams Co.*, 343 F.3d at 391. Because Plaintiff is not "using the declaratory judgment process to gain access to a federal forum on improper or unfair grounds" — clear here because a federal forum was proper to resolve this suit in the first instance — these factors favor Plaintiff. *Id.* Factor five also favors Plaintiff: witnesses are not a concern in this case

31

and from the inception of this lawsuit, all parties have sought to resolve the litigation on the merits of their filings alone. As for factor six, to the Court's knowledge there are no pending state procedures involving these parties and this controversy persuading the Court declaratory relief is inappropriate. And finally, factor seven, the Court is not being called on to construe a state judicial decree involving the same parties and entered by a court adjudicating a parallel proceeding between the parties.

For these reasons, the Court GRANTS Plaintiff's request for declaratory judgment and finds Plaintiff is entitled to a declaration that the June 15 Guidance and March 2 Guidance are unlawful. The Court DENIES Plaintiff's request for injunctive relief.[10]

CONCLUSION

For the reasons stated above, the Court GRANTS Defendants' Motion for Summary Judgment as to Counts II and VIII and DENIES Defendants' Motion as to Counts I, III, IV, V, VI, VII, and X. The Court GRANTS Plaintiff's Cross-Motion for Summary Judgment as to Counts I, III, IV, V, VI, VII, and X and DENIES the Cross-Motion as to Counts II and VIII. The Court GRANTS IN PART and DENIES IN PART Defendants' Motion as to Count IX and GRANTS IN PART and DENIES IN PART Plaintiff's Cross-Motion as to Count IX.

The Court DECLARES the Guidances unlawful and VACATES and SETS ASIDE the Guidances. *See* 28 U.S.C. § 2201; 5 U.S.C. § 706(2). The Court grants the following relief:

(1) The June 15 Guidance and March 2 Guidance are declared unlawful;

(2) The June 15 Guidance and March 2 Guidance are vacated and set aside; and

---

[10] Plaintiff did not brief factors relevant to the appropriateness of injunctive relief. "It is not the court's job to divine the applicable law for the parties," nor is it the Court's job "to manufacture every possible argument [Parties] could conceivably make." *Spencer v. Texaco, Inc.*, No. 96-0228, 1996 WL 363540, at *2 (E.D. La. June 28, 1996); *Holz v. U.S.*, No. 3:08-CV-1568-P, 2009 WL 10704725, at *2 n.4 (N.D. Tex. Sept. 28, 2009); *see also eBay Inc. v. MercExchange, LLC*, 547 U.S. 388, 391 (2006) (detailing injunction requirements).

(3) On a timely motion and to the extent allowed by law, Plaintiff may recover reasonable attorney's fees and court costs.

The Court DENIES Plaintiff's Motion for Leave to File Notice of Supplemental Authority as moot.

The Court DENIES all other relief not expressly granted herein.

**SO ORDERED**.

October ___1___, 2022

_____

MATTHEW J. KACSMARYK
UNITED STATES DISTRICT JUDGE