**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF TEXAS**
**AMARILLO DIVISION**

THE STATE OF TEXAS,                   §
                                      §
        *Plaintiff*,                  §
                                      §        CIVIL ACTION NO. 2:21-CV-194-Z
v.                                    §
                                      §
EQUAL EMPLOYMENT                      §
OPPORTUNITY COMMISSION, *et al.*,     §
                                      §
        *Defendants*.                 §

---

# PLAINTIFF STATE OF TEXAS'S
# MOTION FOR FURTHER NECESSARY OR PROPER RELIEF
# AGAINST DEFENDANTS EEOC, CHARLOTTE A. BURROWS,
# AND MERRICK B. GARLAND

---

### TABLE OF CONTENTS

Table of Contents ......................................................................................................................... ii

Introduction.................................................................................................................................... 1

Argument ....................................................................................................................................... 2

    I.   This Court previously issued a declaratory judgment that Title VII does not require bathroom, dress code, or pronoun accommodations based on gender identity. ................. 2

    II.  The 2024 Guidance requires bathroom, dress code, and pronoun accommodations based on gender identity. ..................................................................................................... 3

    III. Texas is entitled to further necessary or proper declaratory, injunctive, and vacation relief. ..................................................................................................................................... 9

        A.  The Court should issue further declaratory relief. .................................................... 11

        B.  The Court should issue permanent injunctive relief. ................................................. 12

        C.  The Court should vacate the 2024 Guidance. ............................................................ 18

Conclusion .................................................................................................................................... 20

Certificate of Conference .............................................................................................................. 21

Certificate of Service..................................................................................................................... 22

TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abbott v. Perez,*
    138 S. Ct. 2305 (2018) ................................................................... 15

*California ex rel. Becerra v. Sessions,*
    No. 3:17-cv-4701, 2018 WL 6069940 (N.D. Cal. Nov. 20, 2018), *aff'd in part,*
    *vacated in part sub nom. City & Cnty. of San Francisco v. Barr*, 965 F.3d 753 (9th
    Cir. 2020) ....................................................................................... 12

*Bostock v. Clayton County,*
    590 U.S. 644 (2020) ............................................................... *passim*

*Bowen v. Pub. Agencies Opposed to Soc. Sec. Entrapment,*
    477 U.S. 41 (1986) .......................................................................... 15

*BST Holdings, L.L.C. v. OSHA,*
    17 F.4th 604 (5th Cir. 2021) ........................................................... 15

*Career Colleges & Sch. of Texas v. United States Dep't of Educ.,*
    98 F.4th 220 (5th Cir. 2024) ..................................................... 14, 16

*Cargill v. Garland,*
    57 F.4th 447 (5th Cir. 2023) (en banc) ........................................... 18

*Chemical Leaman Tank Lines v. Aetna Cas. & Sur. Co.,*
    177 F.3d 210 (3d Cir. 1999) ............................................................ 10

*Christian Legal Society v. Martinez,*
    561 U.S. 661 (2010) .......................................................................... 3

*Comm. on the Judiciary v. Miers,*
    542 F.3d 909 (D.C. Cir. 2008) (per curiam) .................................... 10

*Cont'l Cas. Co. v. Indian Head Indus., Inc.,*
    941 F.3d 828 (6th Cir. 2019) ........................................................... 12

*In re Core Comm'n, Inc.,*
    531 F.3d 849 (D.C. Cir. 2008) (Griffith, J., concurring) ................... 19

*Dennis Melancon, Inc. v. City of New Orleans,*
    703 F.3d 262 (5th Cir. 2012) ........................................................... 13

*Dresser-Rand Co. v. Virtual Automation, Inc.*,
    361 F.3d 831 (5th Cir. 2004) ............................................................... 13

*eBay Inc. v. MercExchange, L.L.C.*,
    547 U.S. 388 (2006) ............................................................................ 13

*EME Homer City Generation, L.P. v. E.P.A.*,
    795 F.3d 118 (D.C. Cir. 2015) (Kavanaugh, J.) ................................. 19

*Faragher v. City of Boca Raton*,
    524 U.S. 775 (1998) ............................................................................ 14

*Franciscan All., Inc. v. Becerra*,
    47 F.4th 368 (5th Cir. 2022) ......................................................... 17, 18

*Franciscan All., Inc. v. Becerra*,
    553 F. Supp. 3d 361 (N.D. Tex. 2021) ............................................... 18

*GNB Battery Techs., Inc. v. Gould, Inc.*,
    65 F.3d 615 (7th Cir. 1995) ................................................................... 2

*Kansas v. United States*,
    249 F.3d 1213 (10th Cir. 2001) .......................................................... 15

*Kaspar Wire Works, Inc. v. Leco Eng'g & Mach., Inc.*,
    575 F.2d 530 (5th Cir. 1978) .............................................................. 12

*Kentucky v. Biden*,
    57 F.4th 545 (6th Cir. 2023) ......................................................... 12, 16

*Lawrence v. Texas*,
    539 U.S. 558 (2003) .............................................................................. 3

*Mock v. Garland*,
    75 F.4th 563 (5th Cir. 2023) .............................................................. 16

*Nat. Res. Def. Council v. EPA*,
    489 F.3d 1250 (D.C. Cir. 2007) (Randolph, J., concurring) ............... 19

*Nat. Res. Def. Council v. Wheeler*,
    955 F.3d 68 (D.C. Cir. 2020) .............................................................. 20

*Nken v. Holder*,
    556 U.S. 418 (2009) ............................................................................ 15

*North Carolina v. EPA*,
    531 F.3d 896 (D.C. Cir. 2008) ............................................................ 20

*Poe v. Gerstein*,
    417 U.S. 281 (1974) (per curiam) ...................................................................10

*Powell v. McCormack*,
    395 U.S. 486 (1969)........................................................................................12

*Ramsey v. Colonial Life Ins. Co. of Am.*,
    85 F.3d 625 (5th Cir. 1996) ..............................................................................9

*Religious Sisters of Mercy v. Azar*,
    513 F. Supp. 3d 1113 (D.N.D. 2021), *aff'd in relevant part, remanded in part sub nom. Religious Sisters of Mercy v. Becerra*, 55 F.4th 583 (8th Cir. 2022) ...................................18

*Seaboard Coast Line R. Co. v. Gulf Oil Corp.*,
    409 F.2d 879 (5th Cir. 1969) .............................................................................3

*Spectrum WT v. Wendler*,
    ---F.Supp.3d---, No. 2:23-cv-48, 2023 WL 6166779 (N.D. Tex. Sept. 21, 2023) (Kacsmaryk, J.) ...........................................................................................16

*State of New York v. Dep't of Just.*,
    343 F. Supp. 3d 213 (S.D.N.Y. 2018), *rev'd on other grounds sub nom. State v. Dep't of Just.*, 951 F.3d 84 (2d Cir. 2020) ...........................................................12

*Sullo & Bobbitt, PLLC v. Abbott*,
    No. 3:11-Ccv-1926-D, 2012 WL 2796794 (N.D. Tex. July 10, 2012), *aff'd in part sub nom. Sullo & Bobbitt P.L.L.C. v. Abbott*, 536 F. App'x 473 (5th Cir. 2013).........................................................................................................9

*Tex. Ass'n of Mfrs. v. U.S. Consumer Prod. Safety Comm'n*,
    989 F.3d 368 (5th Cir. 2021) ........................................................................... 20

*Texas Med. Ass'n v. United States Dep't of Health & Hum. Servs.*,
    No. 6:23-cv-59-JDK, 2023 WL 4977746 (E.D. Tex. Aug. 3, 2023) (Kernodle, J.)..................................................................................................19, 20

*Texas v. Biden* (*MPP*),
    20 F.4th 928 (5th Cir. 2021) ...................................................... 11, 18, 19

*Texas v. EEOC*,
    827 F.3d 372 (5th Cir. 2016) ...........................................................................14

*Texas v. EEOC*,
    933 F.3d 433 (5th Cir. 2019)...................................................................... 13, 14

*Texas v. EPA*,
    829 F.3d 405 (5th Cir. 2016) ...........................................................................14

*Texas v. United States,*
 201 F. Supp. 3d 810 (N.D. Tex. 2016) ................................................................17

*Texas v. United States* (*DACA*),
 50 F.4th 498 (5th Cir. 2022) ....................................................................... 19, 20

*Tractor & Equip. Co. v. Dual Trucking & Transp., L.L.C.,*
 740 F. App'x 427 (5th Cir. 2018) ...........................................................................9

*Tractor & Equip. Co. v. Dual Trucking & Transp., LLC,*
 No. CV 15-5413, 2017 WL 3601212 (E.D. La. Aug. 22, 2017) ..............................9

*United Steel v. Mine Safety & Health Admin.,*
 925 F.3d 1279 (D.C. Cir. 2019) ...........................................................................18

*Wages & White Lion Invs., L.L.C. v. FDA,*
 16 F.4th 1130 (5th Cir. 2021) ..............................................................................15

*Ysursa v. Pocatello Educ. Ass'n,*
 555 U.S. 353 (2009) .............................................................................................12

**Statutes**

5 U.S.C. § 703 .................................................................................................................11

5 U.S.C. § 704 .................................................................................................................10

5 U.S.C. § 706(2) ...........................................................................................................18

22 U.S.C. § 2201 ...............................................................................................................9

28 U.S.C. § 2202 ...........................................................................................9, 10, 18

42 U.S.C. § 2000-e2(a)(1) .................................................................................8, 12, 16

42 U.S.C. § 2000e-16(a) ....................................................................................8, 12, 16

42 U.S.C. § 2000e(j) .........................................................................................................4

Tex. Gov't Code §§ 2151.002, 2254.021(4–6) ...............................................................12

**Other Authorities**

40 Tex. Admin. Code § 821.4 .........................................................................................12

Fed. R. Civ. P. 57 ...........................................................................................................11

*Restatement (Second) of Judgments* § 33 (1982) .......................................................2, 11

**INTRODUCTION**

In this case, Plaintiff State of Texas challenged two guidance documents from two federal agencies relating to gender identity and anti-discrimination laws: the one relevant to this motion was issued by the Equal Employment Opportunity Commission ("EEOC") requiring bathroom, dress code, and pronoun accommodations for employees based on gender identity (the "2021 Guidance").

On October 1, 2022, this Court issued an Opinion and Order on the parties' cross-motions for summary judgment on all claims, ECF No. 74, and a Judgment, ECF No. 75. The Court vacated the 2021 Guidance and issued a declaratory judgment that it was unlawful on several grounds— including on the basis that it was contrary to law because Title VII of the Civil Rights Act of 1964 (even after the Supreme Court's decision in *Bostock v. Clayton County*, 590 U.S. 644 (2020)) does not require employers to provide accommodations based on gender identity regarding bathrooms, dress codes, or pronoun usage. The EEOC Defendants (EEOC, Chairman Burrows, and Attorney General Garland) did not file an appeal from this Court's judgment.

This failure to appeal was apparently not because the EEOC Defendants acquiesced in this Court's legal determinations. On April 29, 2024, EEOC issued a guidance document titled *Enforcement Guidance on Harassment in the Workplace (*the "2024 Guidance"), *see* https://www.eeoc.gov/laws/guidance/enforcement-guidance-harassment-workplace. The 2024 Guidance declares that Title VII, 42 U.S.C. § 2000e-2, requires all covered employers—including States—to require employees to use others' preferred pronouns; allow transgender individuals to use the shower, locker room, or restroom that corresponds to their gender identity; and allow employees to adhere to the dress code that applies to the opposite biological sex.

As it did in the 2021 Guidance, EEOC relies heavily on the Supreme Court's decision in *Bostock* to prescribe broad swaths of employer conduct. But *Bostock* was a narrow decision, holding only that terminating an employee "simply for being homosexual or transgender" constitutes discrimination "because of … sex" under Title VII. 590 U.S. at 650–51. The Supreme Court

1

expressly declined to "prejudge" issues like "bathrooms, locker rooms, and dress codes" under Title VII's anti-discrimination provision. *Id.* at 681.

Approved by a divided 3-2 vote of the Commissioners, the 2024 Guidance violates the declaratory judgment this Court issued through the Declaratory Judgment Act ("DJA"). This Court has the authority to order further necessary or proper relief to enforce that judgment. *See Restatement (Second) of Judgments* § 33 cmt. c (1982) ("Further relief may be sought either by means of an application supplemental to the declaratory action or in a new and independent action."). It should issue: (1) further declaratory relief clarifying the scope of its judgment; (2) permanent injunctive relief against interpreting Title VII as including dress code, bathroom, or pronoun accommodations in the workplace based on gender identity; and (3) vacate and set aside the 2024 Guidance that violates the Court's previous judgment.

ARGUMENT

I.   **This Court previously issued a declaratory judgment that Title VII does not require bathroom, dress code, or pronoun accommodations based on gender identity.**

The scope of the rights of the parties declared by this Court is clear when this Court's Judgment is construed—as it must—in light of the entire Opinion and Order. *See GNB Battery Techs., Inc. v. Gould, Inc.*, 65 F.3d 615, 621 (7th Cir. 1995).

The bases of this Court's declaratory judgment that the 2021 Guidance was unlawful was explained throughout its Opinion and Order. Because *Bostock*'s "non-discrimination holding" was "cabined to 'homosexuality and transgender *status*,'" this Court rejected the EEOC's argument that Title VII "extend[s] to correlated *conduct*—specifically, the sex-specific: (1) dress; (2) bathroom; [and] (3) pronoun ... practices underlying the [2021] Guidance[]." ECF No. 74, Opinion and Order at 4 (emphases in original). "The [2021] Guidance imposes dress-code, bathroom, and pronoun accommodations as 'existing requirements under the law' and 'established legal positions' in light of *Bostock* and prior EEOC decisions interpreting Title VII[,] ... [b]ut Title VII—as interpreted in *Bostock*—does not require such accommodations." ECF No. 74, Opinion and Order at 20.

2

This Court denied any "'false distinction' between status and conduct," citing *Bostock*'s repeated presumption that "there will be Title VII cases where the protected class 'sex' may not reach particular conduct"; distinguished the Supreme Court's decisions in *Christian Legal Society v. Martinez*, 561 U.S. 661 (2010), and *Lawrence v. Texas*, 539 U.S. 558 (2003); and explained that Title VII decisions from the Supreme Court and the federal appellate courts "reveal[] that 'status' and 'conduct' do not *necessarily* merge every time an employee plausibly pleads a 'closely associated' trait." ECF No. 74, Opinion and Order at 11–13 (emphasis in original).

Because EEOC lacked authority to issue the 2021 Guidance, and because that guidance erroneously extended *Bostock*'s "non-discrimination holding" beyond the limits Congress imposed under Title VII, this Court granted summary judgment for Texas, vacating and setting aside the 2021 Guidance, and declaring it unlawful on these bases. ECF No. 74, Opinion and Order at 32.

The EEOC Defendants declined to appeal this Texas court's vacatur of the 2021 Guidance and its declaratory judgment that Title VII does not require employers to accommodate their employee's gender identities through accommodations for bathrooms, dress codes, or pronouns. Therefore, they cannot challenge these determinations in opposing the relief sought in this motion. *See Seaboard Coast Line R. Co. v. Gulf Oil Corp.*, 409 F.2d 879, 881–82 (5th Cir. 1969).

## II. The 2024 Guidance requires bathroom, dress code, and pronoun accommodations based on gender identity.

In October 2023, EEOC proposed new enforcement guidance reflecting essentially the same interpretation of Title VII's prohibition on sex discrimination set forth in the agency's vacated 2021 Guidance, this time presenting examples of what the agency considers "sex-based harassment" and requesting public comments. EEOC, Proposed Enforcement Guidance on Harassment in the Workplace, 88 Fed. Reg. 67,750 (Oct. 2, 2023) ("Proposed Guidance"). The Proposed Guidance was published on EEOC's website. *See* https://www.eeoc.gov/proposed-enforcement-guidance-harassment-workplace.

3

The Proposed Guidance asserted that under *Bostock*'s reasoning, Title VII prohibits as "sex-based harassment" denying accommodations for bathroom and pronoun use based on gender identity. Thus, the Proposed Guidance again attempted to extend *Bostock* to situations that the Court explicitly declined to "prejudge"—*e.g.*, bathrooms and pronouns—while also proposing to impose liability on employers for the conduct of their customers or other third parties.

Texas and nineteen other co-signing States commented on the Proposed Guidance, highlighting statutory, constitutional, and APA flaws in EEOC's new interpretation of Title VII. Most relevant to this motion, the States explained that the Proposed Guidance contravened EEOC's statutory authority. States' Comment Letter at 3–4, App.007–08. *Bostock*'s narrow holding does not support the agency's expanded application of Title VII to all transgender-related employment issues, such as sex-segregated bathrooms and use of pronouns. EEOC proposed essentially to amend Title VII to create a *de facto* accommodation for gender identity—even though *Bostock* did not address this. As the States explained, Congress knew how to require accommodations for certain classes in Title VII, *see, e.g.*, 42 U.S.C. § 2000e(j) (mandating religious accommodations), yet has thus far declined to do so for transgenderism or gender identity. States' Comment Letter at 4, App.008; *see also* Texas Comment Letter at 3, App.003

On April 29, 2024, EEOC finalized that rule, publishing the 2024 Guidance. App.019. The purpose of the 2024 Guidance is stated as: "This transmittal issues the Commission's guidance on harassment in the workplace under EEOC-enforced laws. It communicates the Commission's position on important legal issues." App.020. Its effective date is "[u]pon issuance"—that is, April 29, 2024. App.020. It "addresses how harassment based on race, color, religion, sex, national origin, age, disability, or genetic information is defined under EEOC-enforced statutes and the analysis for determining whether employer liability is established." App.019. It replaces "Compliance Manual Section 615: Harassment (1987); Policy Guidance on Current Issues of Sexual Harassment (1990); Policy Guidance on Employer Liability under Title VII for Sexual Favoritism (1990); Enforcement Guidance on Harris v. Forklift Sys., Inc. (1994); and Enforcement

Guidance on Vicarious Employer Liability for Unlawful Harassment by Supervisors (1999)." App.019–020. In other words, it is the EEOC's first new enforcement guidance on harassment in the workplace in decades.

The webpage states, "This guidance serves as a resource for employers, employees, and practitioners; for EEOC staff and the staff of other agencies that investigate, adjudicate, or litigate harassment claims or conduct outreach on the topic of workplace harassment; and for courts deciding harassment issues." App.026.

The 2024 Guidance is nearly identical to the Proposed Guidance, and it is substantially the same as the 2021 Guidance that this Court ultimately vacated and set aside as unlawful. The purpose of the 2024 Guidance, according to EEOC, is "to provide clarity to the public regarding existing requirements under the law or agency policies." App.020.

Citing *Bostock*, the 2024 Guidance provides that "[s]ex-based discrimination under Title VII includes employment discrimination based on sexual orientation or gender identity," and thus, "sex-based harassment includes harassment based on sexual orientation or gender identity, including how that identity is expressed." App.035.

The 2024 Guidance provides a list of examples of "[h]arrassing conduct" based on sexual orientation or gender identity. One example is "repeated and intentional use of a name or pronoun inconsistent with [an] individual's known gender identity (misgendering)." App.035. Another is an employer's "denial of access to a bathroom or other sex-segregated facility consistent with [an] individual's gender identity." App.035. The 2024 Guidance also makes clear that it is unlawful to act against an employee for not "present[ing] in a manner that would stereotypically be associated with that person's sex." App.035. Thus, the 2024 Guidance extends *Bostock*'s prohibition on discrimination based on "sexual orientation" and "transgender status" to also encompass associated conduct—contrary to this Court's declaratory judgment.

The 2024 Guidance provides the following examples of unlawful harassment based on gender identity:

5

**Example 15: Harassment Based on Gender Identity.**
Chloe, a purchase order coordinator at a retail store warehouse, is approached by her supervisor, Alton, who asks whether she was "born a man" because he had heard a rumor that "there was a transvestite in the department." Chloe disclosed to Alton that she is transgender and asked him to keep this information confidential. After this conversation, Alton instructed Chloe to wear pants to work because a dress would be "inappropriate," despite other purchase order coordinators being permitted to wear dresses and skirts. Alton also asks inappropriate questions about Chloe's anatomy and sexual relationships. Further, whenever Alton is frustrated with Chloe, he misgenders her by using, with emphasis, "he/him" pronouns, sometimes in front of Chloe's coworkers. Based on these facts, Alton's harassing conduct toward Chloe is based on her gender identity.

App.035–36.

**Example 46: Harassment Based on Gender Identity Creates an Objectively Hostile Work Environment.**
Jennifer, a female cashier who is transgender and works at a fast-food restaurant, is regularly and intentionally misgendered by supervisors, coworkers, and customers over a period of several weeks. One of her supervisors, Allison, intentionally and frequently uses Jennifer's prior male name, male pronouns, and "dude" when referring to Jennifer, despite Jennifer's requests for Allison to use her correct name and pronouns. Other managers also intentionally refer to Jennifer as "he" whenever they work together. In the presence of customers, coworkers ask Jennifer questions about her sexual orientation and anatomy and assert that she is not female. After hearing these remarks by employees, customers also intentionally misgender Jennifer and make offensive comments about her transgender status. Based on these facts, which must be viewed in the context of Jennifer's perspective as a transgender individual, Jennifer has been subjected to an objectively hostile work environment based on her gender identity that includes repeated and intentional misgendering.

App.064–65.

The 2024 Guidance thus directly contradicts this Court's declaratory judgment that Title VII does not require accommodations based on gender identity in bathrooms, dress codes, or pronoun usage. ECF No. 74, Opinion and Order at 4, 20.

The 2024 Guidance also makes clear that employers are liable not only for their own conduct and that of employee supervisors, but they also must police "non-employee" behavior of which the employer has notice, including constructive notice. *See* App.078. Under the 2024 Guidance, an employer must take affirmative steps to prevent harassment, including monitoring

the workplace and developing "anti-harassment polic[ies], complaint procedures, and training[s]." App.085.

The 2024 Guidance requires employers with notice of harassing behavior by a non-employee—so-called "misgendering," for example—to take corrective actions, potentially requiring the non-employee to leave the workplace. App.078, 094–103.

The 2024 Guidance provides this example of non-employee behavior for which an employer may be liable:

> Howard works as a stocker for a company that sells snacks and beverages in vending machines on customers' premises. At a hospital where Howard is assigned to stock the vending machines, he is harassed daily by a hospital employee who knows Howard's schedule and waits at the vending machines for him to arrive. The hospital employee calls him "H*mo Howard," propositions him, and makes lewd and vulgar sexual comments to him every time the hospital employee sees him. Howard reports this harassment to his employer. Although the harasser is not employed by Howard's employer, because Howard's employer is aware of the sex-based harassment, it has a legal obligation to correct the harassment.

App.078.

EEOC acknowledged that "commenters [had] contended that … the proposed guidance exceeded the scope of Title VII as interpreted" in *Bostock*. But EEOC denied that "the guidance exceed[s] the scope of the Supreme Court's decision." App.110–112. While *Bostock* dealt only with "failing or refusing to hire," EEOC asserted that the Court's reasoning and Title VII's text necessarily protect employees from discrimination on the basis of sexual orientation or gender identity with respect to other "terms, conditions, or privileges of employment." App.111.

EEOC also acknowledged *Bostock*'s refusal to address "bathrooms, locker rooms, or anything else of the kind," 590 U.S. at 681; App.110. Nevertheless, EEOC cited past administrative appeals decisions and district court cases to determine that misgendering and denying individuals access to sex-segregated spaces that correspond with their gender identity, "viewed in light of the totality of the circumstances, [are] potentially supportive of a hostile work environment claim." *See* App.110–112. EEOC's reliance on past Commission decisions is

particularly misplaced because those decisions were not interpretations of the portions of Title VII that apply to private and State employers. *Compare* 42 U.S.C. § 2000-e2(a)(1) (applicable to private and State employment) *with id.* § 2000e-16(a) (applicable to federal employment). This Court previously declared the 2021 Guidance unlawful on the basis that Commission decisions regarding the provision applying to federal employment were not properly considered binding in interpreting the provision applicable to private and State employers. ECF No. 74, Opinion and Order at 14.

The 2024 Guidance did not have unanimous support among Commissioners, passing by a split vote of 3-2. Commissioner Lucas, who voted against issuance, issued a statement warning that the 2024 Guidance "effectively eliminates single-sex workplace facilities and impinges on women's (and indeed, all employees') rights to freedom of speech and belief." *See* Lucas Statement at 1, App.208. Commissioner Lucas explained that "[i]t is not harassment to acknowledge" biological sex or the "enduring" differences between men and women. *Id.* (quoting *United States v. Virginia*, 518 U.S. 515, 533 (1996) (Ginsburg, J.)). She also rejected the 2024 Guidance's conclusion that *Bostock* forbids businesses from "draw[ing] distinctions between the sexes in providing single-sex bathrooms or other similar facilities which implicate … significant privacy and safety interests." App.208. She argued that maintaining sex-segregated spaces has historically been viewed as "exercising reasonable care to *prevent* harassment of female workers," but the 2024 Guidance now treats this "reasonable and necessary step to protect women" as "evidence of *harassment* against any biological male who self-identifies as having a female 'gender identity.'" App.208 (emphases in original).

Commissioner Lucas acknowledged that the 2024 Guidance, like the 2021 Guidance, disclaims having any legal effect. But she stated "[t]hat disclaimer is worth little" because "[a] rule called by any other name is still a rule." Lucas Statement at 2, App.209. Indeed, Commissioner Lucas continues, EEOC describes the 2024 Guidance as a resource for "employers, employees, and practitioners; for EEOC staff and the staff of other agencies that investigate, adjudicate, or

litigate harassment claims or conduct outreach on the topic of workplace harassment; and for courts deciding harassment issues." App.209 (quoting 2024 Guidance). And "the guidance makes clear at its very start [that] it communicates … the agency's enforcement positions." App.209 (cleaned up).

### III.   Texas is entitled to further necessary or proper declaratory, injunctive, and vacation relief.

The DJA provides that "any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration," and "[a]ny such declaration shall have the force and effect of a final judgment or decree." 22 U.S.C. § 2201. This Court issued such a declaration in this case. ECF No. 74, Opinion and Order at 30–32; ECF No. 75, Judgment.

The DJA also allows "[f]urther necessary or proper relief based on a declaratory judgment or decree [to be] granted, after reasonable notice and hearing,[1] against any adverse party whose rights have been determined by such judgment." 28 U.S.C. § 2202. This provision "merely carries out the principle that every court, with few exceptions, has inherent power to enforce its decrees." *Ramsey v. Colonial Life Ins. Co. of Am.*, 85 F.3d 625 (5th Cir. 1996). As former Chief Judge Fitzwater explained, "[i]f the court grants a declaratory judgment in plaintiffs' favor, plaintiffs are authorized under § 2202 to seek further relief, such as an injunction, to "protect or effectuate" the declaratory judgment." *Sullo & Bobbitt, PLLC v. Abbott*, No. 3:11-Ccv-1926-D, 2012 WL 2796794, at *19 (N.D. Tex. July 10, 2012), *aff'd in part sub nom. Sullo & Bobbitt P.L.L.C. v. Abbott*, 536 F. App'x 473 (5th Cir. 2013).

---

[1] This provision does not require that a hearing be held before such relief may be granted. *See Tractor & Equip. Co. v. Dual Trucking & Transp., L.L.C.*, 740 F. App'x 427, 428 (5th Cir. 2018) (upholding grant of relief under Section 2202 without an oral hearing where local rules provided otherwise); *see also Tractor & Equip. Co. v. Dual Trucking & Transp., LLC*, No. CV 15-5413, 2017 WL 3601212, at *3 & n.25 (E.D. La. Aug. 22, 2017); N.D. Tex. Loc. R. 7.1 ("Motion Practice. … (g) No Oral Argument. Unless otherwise directed by the presiding judge, oral argument on a motion will not be held.").

"Any time lapse between that declaration and the relief sought today is irrelevant because Section 2202 "permits the original declaratory judgment to be supplemented either by damages or by equitable relief even long after the declaratory judgment has been entered, provided that the party seeking relief is not barred by laches." *Chemical Leaman Tank Lines v. Aetna Cas. & Sur. Co.*, 177 F.3d 210, 221 (3d Cir. 1999) (citing 10B Wright & Miller, *Fed. Prac. & Proc.* § 2271 at 682 (3d ed. 1998)).

The Court should grant such further relief in this case. It should clarify its declaratory judgment with further declaratory relief, vacate the 2024 Guidance, and enjoin the EEOC Defendants from stating that the interpretations that the Court found "contrary to law"—the dress code, bathroom, and pronoun accommodations—are *required* by law.

While vacating the 2021 Guidance and granting declaratory relief, this Court did not issue injunctive relief, ECF No. 74, Opinion and Order at 32. Courts expect that executive branch officials will act in accordance with declaratory judgments. *See Poe v. Gerstein*, 417 U.S. 281, 282 (1974) (per curiam) (affirming a three-judge district court's denial of an injunction—even though it had granted a declaratory judgment—because there was no reason to think the public officials in question would fail to "'acquiesce in the decision'" (quoting *Douglas v. City of Jeannette*, 319 U.S. 157, 165 (1943)); *Comm. on the Judiciary v. Miers*, 542 F.3d 909, 911 (D.C. Cir. 2008) (per curiam) ("[W]e have long presumed that officials of the Executive Branch will adhere to the law as declared by the court. As a result, the declaratory judgment is the functional equivalent of an injunction."). But the EEOC Defendants are defying these expectations. The Court should therefore issue a permanent injunction prohibiting them from interpreting, applying, or enforcing Title VII in a way this Court has declared contrary to law. *See* ECF No. 31 at 25, Amended Complaint (requesting permanent injunction against EEOC enforcing or implementing the interpretation of Title VII set out in the 2021 Guidance).

The 2024 Guidance is a final agency action reviewable under the APA. 5 U.S.C. § 704. It is a "rule" under the APA. *Id.* § 701(b)(2). Although it disclaims having any legal effect, courts

must consider whether the practical effects of an agency's decision make it final agency action, regardless of how it is labeled. *Texas v. Biden (MPP)*, 20 F.4th 928, 949 (5th Cir. 2021). Here, EEOC's "disclaimer is worth little" because "[a] rule called by any other name is still a rule." *See* Lucas Statement at 2, App.209. Like the substantively identical 2021 Guidance, the Enforcement Document determines the 'rights or obligations' of those subject to Title VII." ECF No. 53, Order at 9–11.

Texas lacks another adequate remedy to challenge the 2024 Guidance in court, and no rule requires that the States appeal to a superior agency authority prior to seeking judicial review.

**A. The Court should issue further declaratory relief.**

"[A] declaratory action may be employed to determine the meaning of an ambiguous judgment; here the declaration would not derogate from the binding effect of the prior decision, but would specify what was decided." *Restatement (Second) of Judgments* § 33 (1982). Clarification here is needed to ensure that EEOC Defendants do not continue to flout this Court's previous determinations.

"The existence of another adequate remedy does not preclude a declaratory judgment that is otherwise appropriate." Fed. R. Civ. P. 57. The APA expressly contemplates declaratory relief: "The form of proceeding for judicial review … includ[es] actions for declaratory judgments or writs of prohibitory or mandatory injunction[.]" 5 U.S.C. § 703. Texas has established that the 2024 Guidance violates the Court's declaratory judgment, and it is entitled to a further declaration delineating the rights and legal relations among itself and the EEOC Defendants. The Court should thus declare that Title VII does not require employers to allow employees to: comply with dress or grooming policies based on gender identity rather than biological sex; use bathrooms, locker rooms, or showers based on gender identity rather than biological sex; or demand that they be referred to by pronouns, names, titles, or honorifics based on gender identity rather than biological sex.

The Court should further declare that the decisions of EEOC applying the provision of Title VII applicable to federal employers, 42 U.S.C. § 2000e-16(a), are not applicable to the separate provision governing state or private employers, 42 U.S.C. § § 2000e-2(a)(1).

Finally, the Court should declare that for purposes of the application of any declaratory or injunctive relief issued, Plaintiff the State of Texas includes the State's instrumentalities, agencies, public colleges and universities, and political subdivisions, including those listed in Tex. Gov't Code § § 2151.002, 2254.021(4–6), and 40 Tex. Admin. Code § 821.4. "An injunction barring the federal government from enforcing [the 2024 Guidance or any similar interpretation of Title VII] against the States would also run to the States' subdivisions," *Kentucky v. Biden*, 57 F.4th 545, 557 (6th Cir. 2023) (citing *Ysursa v. Pocatello Educ. Ass'n*, 555 U.S. 353, 362 (2009)), because political subdivisions are "subordinate governmental instrumentalities created by the State to assist in the carrying out of state governmental functions." *Ysursa*, 555 U.S. at 362 (citation omitted); *see also State of New York v. Dep't of Just.*, 343 F. Supp. 3d 213, 245 (S.D.N.Y. 2018), *rev'd on other grounds sub nom. State v. Dep't of Just.*, 951 F.3d 84 (2d Cir. 2020) (granting relief to political subdivisions despite State being plaintiff); *California ex rel. Becerra v. Sessions*, No. 3:17-cv-4701, 2018 WL 6069940, at *1 (N.D. Cal. Nov. 20, 2018), *aff'd in part, vacated in part sub nom. City & Cnty. of San Francisco v. Barr*, 965 F.3d 753 (9th Cir. 2020) (same).

## B. The Court should issue permanent injunctive relief.

Injunctive relief may be granted to enforce a previous declaratory judgment, *Kaspar Wire Works, Inc. v. Leco Eng'g & Mach., Inc.,* 575 F.2d 530, 537 (5th Cir. 1978), whether or not it was previously requested. *Cont'l Cas. Co. v. Indian Head Indus., Inc.*, 941 F.3d 828, 833 (6th Cir. 2019). A court may grant declaratory relief without issuing an injunction, but declaratory relief can also be "used as a predicate to further relief, including an injunction." *Powell v. McCormack*, 395 U.S. 486, 499 (1969).

A permanent injunction is proper when a plaintiff has prevailed on the merits, there is no adequate remedy at law for the plaintiff's injury, the balance of the harms favors the plaintiff, and

an injunction would serve the public interest. *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006). "[T]he standard for a permanent injunction is essentially the same as for a preliminary injunction with the exception that the plaintiff must show actual success on the merits." *Dresser-Rand Co. v. Virtual Automation, Inc.*, 361 F.3d 831, 847–48 (5th Cir. 2004). Texas has satisfied each of these elements.

### 1. Texas succeeds on the merits.

As explained above, the 2024 Guidance is contrary to law as declared by this Court.

### 2. Texas will suffer irreparable harm.

Not only is the 2024 Guidance unlawful, but it also will impose irreparable harm on Texas. Generally, it is "well established that an injury is irreparable only 'if it cannot be undone through monetary remedies.'" *Dennis Melancon, Inc. v. City of New Orleans*, 703 F.3d 262, 279 (5th Cir. 2012) (quoting *Interox Am. v. PPG Indus., Inc.*, 736 F.2d 194, 202 (5th Cir. 1984)).

"Whether someone is an object of a regulation is a flexible inquiry rooted in common sense." *Texas v. EEOC*, 933 F.3d 433, 446 (5th Cir. 2019) (citation omitted). "That common sense inquiry is easy here [because the 2024 Guidance] explicitly states that it applies to state employers[;] … [t]hus, by its own terms, the [2024 Guidance] covers Texas." *Id.*; *see* App.025, 119 n.4. The 2024 Guidance is aimed squarely at Texas and other employers with workplace policies based on biological sex rather than gender identity. Defendants cannot now pretend that they have no consequences, and that Texas is unaffected by them.

Texas has employment policies that are not consistent with the 2024 Guidance's bathroom, dress code, and pronoun requirements. *See* ECF No. 53, Order at 18–19 (referencing Declaration of Texas Agriculture Commissioner Sid Miller). Because it is the object of the mandates in the 2024 Guidance, Texas suffers an increased regulatory burden because "it deems unlawful" its current workplace policies and "warns the [S]tate that … it will be able to show that its current policies … are lawful under Title VII only if it abandons those policies." *EEOC*, 933 F.3d at 447. "Texas [thus] faces the possibility of investigation by EEOC and referral to the

Attorney General for enforcement proceedings if it fails to align its laws with the [2024 Guidance]." *Id.*

Texas has shown imminent injury because it "has opted to express certain values [in its workplace policies] and the [2024 Guidance] imposes a regulatory burden on Texas to comply with [them] to avoid enforcement actions and, consequently, pressures it to abandon its laws and policies." *Id.*; *see also Texas v. EEOC*, 827 F.3d 372, 379 (5th Cir. 2016) (injury-in-fact requirement satisfied where "the Guidance does, at the very least, force Texas to undergo an analysis, agency by agency, regarding whether the certainty of EEOC investigations stemming from the Enforcement Guidance's standards overrides the State's interest in not hiring felons for certain jobs").

*First,* Texas would suffer the irreparable harm of nonrecoverable compliance costs. *Career Colleges & Sch. of Texas v. United States Dep't of Educ.*, 98 F.4th 220, 235 (5th Cir. 2024); "[C]omplying with a regulation later held invalid almost *always* produces the irreparable harm of nonrecoverable compliance costs." *Texas v. EPA*, 829 F.3d 405, 433 (5th Cir. 2016) (quoting *Thunder Basin Coal Co. v. Reich*, 510 U.S. 200, 220–21 (1994) (Scalia, J., concurring in part and in the judgment)).

A critical factor in assessing both hostile-work-environment claims, generally, and employers' vicarious Title VII liability, in particular, is whether the employer has adequate training materials and procedures for reporting unlawful harassment. *See, e.g.*, *Faragher v. City of Boca Raton*, 524 U.S. 775, 806–09 (1998). Texas therefore will need to review discrimination policies statewide, revise and reissue policies that conflict with the 2024 Guidance, draft new policies, and develop and distribute training and educational materials for supervisors and employees.

*Second*, on top of unrecoverable compliance costs, EEOC's gender-identity-accommodation mandate fundamentally infringes on the sovereignty of Texas. *See* ECF No. 53, Order at 18–19 (discussing harms to Texas sovereignty from 2021 Guidance). The 2024 Guidance strips Texas of its sovereign interest and ability to create and enforce its own laws and policies.

14

Texas's "inability to enforce its duly enacted" laws "inflicts irreparable harm on the State." *Abbott v. Perez*, 138 S. Ct. 2305, 2324 n.17 (2018); *see also, e.g.*, *Kansas v. United States*, 249 F.3d 1213, 1227 (10th Cir. 2001) (irreparable harm where agency action put its "sovereign interests and public policies at stake"); s*ee also Bowen v. Pub. Agencies Opposed to Soc. Sec. Entrapment*, 477 U.S. 41, 50 & n.17 (1986) (finding "no question" that a state's sovereignty is "diminished" and standing therefore exists when federal law alters the state's ability to "structure its relationship with its employees") (cleaned up).

Here, Texas suffers both substantial financial injuries and injuries that cannot be undone through monetary means. As discussed above, an injury to Texas's sovereign interests is irreparable. Moreover, because the federal government "generally enjoy[s] sovereign immunity for any monetary damages," *Wages & White Lion Invs., L.L.C. v. FDA*, 16 F.4th 1130, 1142 (5th Cir. 2021), Texas cannot compel the federal government to reimburse it.

Together, therefore, the injuries to Texas's financial and sovereign interests are irreparable and should be protected with a permanent injunction.

### 3. The balance of the equities and public interest favor an injunction.

Finally, the remaining injunction factors—the balance of the equities and the public interest—tilt in Texas's favor. These two considerations "merge when the Government is the opposing party," as is the case here. *Nken v. Holder*, 556 U.S. 418, 435 (2009). While the EEOC Defendants may contend that eliminating discrimination in the public interest, any such claimed interest in carrying out the 2024 Guidance is "illegitimate," as the federal government has no interest "in enforcing an unlawful" agency action. *BST Holdings, L.L.C. v. OSHA*, 17 F.4th 604, 618 (5th Cir. 2021).

For the reasons given above, Texas has succeeded on the merits and confronts substantial, imminent irreparable harm—the two most important factors in the analysis for injunctive relief. *See Career Colleges & Sch. of Texas.*, 98 F.4th at 239 (likelihood of success on the merits in similar preliminary-injunction context); *see also Mock v. Garland*, 75 F.4th 563, 587 n.60 (5th Cir. 2023)

(same); *Spectrum WT v. Wendler*, ---F.Supp.3d---, No. 2:23-cv-48, 2023 WL 6166779, at *14 (N.D. Tex. Sept. 21, 2023) (Kacsmaryk, J.) (irreparable harm). The EEOC Defendants thus "face[] a high hurdle" in establishing that the remaining two factors weigh against granting relief. *Kentucky*, 57 F.4th at 556. Granting a permanent injunction would serve the public interest by ensuring that Texas may continue to enforce its laws and policies without risking enforcement by EEOC. Redressing Texas's injuries serves the public interest and does not harm the EEOC Defendants. Accordingly, the balance of equities and the public interest weighs in favor of Texas.

**4.   The scope of injunctive relief properly extends beyond the 2024 Guidance.**

The Court should issue permanent injunctive relief against the EEOC Defendants enjoining not only enforcement of the 2024 Guidance, but also preventing them from interpreting, applying, or enforcing (including by denying federal financial assistance or by otherwise pursuing, charging, or assessing any penalties, fines, assessments, investigations, or other enforcement actions) the provision of Title VII of the Civil Rights Act of 1964 applicable to private and State employers, 42 U.S.C. § 2000e-2(a)(1), as requiring the State of Texas to allow employees to: comply with dress or grooming policies based on gender identity rather than biological sex; or use bathrooms, locker rooms, or showers based on gender identity rather than biological sex; demand that they be referred to by pronouns, names, titles, or honorifics based on gender identity rather than biological sex.

The Court should also enjoin the EEOC Defendants from relying on decisions of the Commission applying the provision of Title VII applicable to federal employers, 42 U.S.C. § 2000e-16(a), to pursue, charge, or assess any penalties, fines, assessments, investigations, or other enforcement actions (including by denying federal financial assistance) against the State of Texas.

This broader relief against interpreting Title VII in a way that contradicts this Court's declaratory judgment is appropriate. The Fifth Circuit has termed a "false dichotomy" the notion that "a lawsuit challenging a regulation and a lawsuit challenging the underlying statute are different." *Franciscan All., Inc. v. Becerra*, 47 F.4th 368, 378 (5th Cir. 2022). This is because "a

challenge to an agency regulation is necessarily a challenge to the underlying statute as well[] …
because an agency literally has no power to act—including under its regulations—unless and until
Congress authorizes it to do so by statute." *Id.* (internal quotations omitted). As a result, any
argument against this relief "rests on the faulty premise that [Texas was] 'suing' a regulation"
because "the right way to view [this] suit was as challenging '*one* Government action that causes
their harm: the [EEOC's] threatened enforcement of [Title VII], *through* its implementing
regulation.'" *Id.* (emphasis in original) (quoting *Fed. Election Comm'n v. Cruz*, 142 S. Ct. 1638,
1650 (2022)).

 Two cases within the Northern District of Texas illustrate the propriety of such relief
against an agency interpreting a statute in a way contrary to law. In a previous challenge to the
Department of Education's issuance of a guidance document on this subject, Judge O'Connor
granted injunctive relief against the Department interpreting Title IX as including discrimination
based on sexual orientation or gender identity:

> Defendants are enjoined from enforcing the Guidelines against Plaintiffs and their
> respective schools, school boards, and other public, educationally-based
> institutions. Further, while this injunction remains in place, Defendants are
> enjoined from initiating, continuing, or concluding any investigation based on
> Defendants' interpretation that the definition of sex includes gender identity in
> Title IX's prohibition against discrimination on the basis of sex. Additionally,
> Defendants are enjoined from using the Guidelines or asserting the Guidelines carry
> weight in any litigation initiated following the date of this Order.

*Texas v. United States*, 201 F. Supp. 3d 810, 836 (N.D. Tex. 2016).

 Similarly, Judge O'Connor granted injunctive relief against the Department of Health and
Human Services interpreting a provision of the Affordable Care Act in this way:

> For the foregoing reasons, the Court **GRANTS** Plaintiffs' request for a permanent
> injunction and **PERMANENTLY ENJOINS** HHS, Secretary Becerra, their
> divisions, bureaus, agents, officers, commissioners, employees, and anyone acting
> in concert or participation with them, including their successors in office, from
> interpreting or enforcing Section 1557 of the Affordable Care Act, 42 U.S.C. §
> 18116(a), or any implementing regulations thereto against Plaintiffs, their current
> and future members, and those acting in concert or participation with them,

17

including their respective health plans and any insurers or third-party administrators in connection with such health plans, in a manner that would require them to perform or provide insurance coverage for gender-transition procedures or abortions, including by denying Federal financial assistance because of their failure to perform or provide insurance coverage for such procedures or by otherwise pursuing, charging, or assessing any penalties, fines, assessments, investigations, or other enforcement actions.

*Franciscan All., Inc. v. Becerra*, 553 F. Supp. 3d 361, 378 (N.D. Tex. 2021), and *aff'd in relevant part,* 47 F.4th 368 (5th Cir. 2022); *see also Religious Sisters of Mercy v. Azar*, 513 F. Supp. 3d 1113, 1153–54 (D.N.D. 2021), *aff'd in relevant part, remanded in part sub nom. Religious Sisters of Mercy v. Becerra*, 55 F.4th 583 (8th Cir. 2022) (applying similar scope of injunctive relief against interpretation of Title VII).

The harm done to Texas arises from the EEOC Defendants' wrongful interpretation and application of Title VII. The Court should grant the State full relief by enjoining such actions, whether through the specific challenged guidance documents or otherwise.

### C. The Court should vacate the 2024 Guidance.

Under the APA, an agency action that a court holds unlawful is "set aside," *i.e.*, vacated. 5 U.S.C. § 706(2). "The ordinary practice is to vacate unlawful agency action." *United Steel v. Mine Safety & Health Admin.*, 925 F.3d 1279, 1287 (D.C. Cir. 2019). "[V]acatur of an agency action is the default rule in this Circuit." *Cargill v. Garland*, 57 F.4th 447, 472 (5th Cir. 2023) (en banc). Indeed, "[v]acatur is the only statutorily prescribed remedy for a successful APA challenge to a regulation." *Franciscan Alliance, Inc. v. Becerra*, 47 F.4th 368, 374–75 (5th Cir. 2022). Vacating the 2024 Guidance is therefore proper "[f]urther necessary or proper relief," 28 U.S.C. § 2202, to enforce the declaratory judgment already issued by this Court.

The Fifth Circuit explained that "[r]emand without vacatur of the agency action is 'generally appropriate when there is at least a serious possibility that the agency will be able to substantiate its decision given an opportunity to do so.'" *MPP*, 20 F.4th at 1000 (quoting *Tex. Ass'n of Mfrs. v. U.S. Consumer Prod. Safety Comm'n*, 989 F.3d 368, 389–90 (5th Cir. 2021)). "But by default, remand *with* vacatur is the appropriate remedy." *Id.* (emphasis in original). The test

focuses on "'(1) the seriousness of the deficiencies of the action, that is, how likely it is the agency will be able to justify its decision on remand; and (2) the disruptive consequences of vacatur.'" *Id.* (quoting *United Steel*, 925 F.3d at 1287).

In general, the propriety of vacatur is based on two factors: "(1) the seriousness of the deficiencies of the action, that is, how likely the agency will be able to justify its decision on remand; and (2) the disruptive consequences of the vacatur." *Texas v. United States* (*DACA*), 50 F.4th 498, 529 (5th Cir. 2022) (quoting *United Steel v. Mine Safety & Health Admin.*, 925 F.3d 1279, 1287 (D.C. Cir. 2019)).

Vacatur is necessary because "remand without vacatur creates a risk that an agency may drag its feet and keep in place an unlawful agency rule. *EME Homer City Generation, L.P. v. E.P.A.*, 795 F.3d 118, 132 (D.C. Cir. 2015) (Kavanaugh, J.). Remanding without vacatur would "invite[] agency indifference." *In re Core Comm'n, Inc.*, 531 F.3d 849, 862 (D.C. Cir. 2008) (Griffith, J., concurring) (urging courts "to consider the alternatives to the open-ended remand without vacatur"); *see also Nat. Res. Def. Council v. EPA*, 489 F.3d 1250, 1262–64 (D.C. Cir. 2007) (Randolph, J., concurring) ("A remand-only disposition is, in effect, an indefinite stay of the effectiveness of the court's decision and agencies naturally treat it as such."). And "[b]ecause vacatur is the default remedy ... defendants bear the burden to prove that vacatur is unnecessary." *Texas Med. Ass'n v. United States Dep't of Health & Hum. Servs.*, No. 6:23-cv-59-JDK, 2023 WL 4977746, at *13–14 (E.D. Tex. Aug. 3, 2023) (Kernodle, J.) (citation omitted).

Here, the challenged actions suffer from severe deficiencies that cannot be justified on remand, and no disruptive consequences will result from vacatur.

> ### 1. EEOC Defendants cannot justify the severe deficiencies of the 2024 Guidance on remand.

Regarding the first factor of vacatur, the EEOC Defendants will not be able to justify its decision to create law that Congress did not pass and that the Supreme Court did not allow. Broadly speaking, remand to an agency "is generally appropriate when there is at least a serious possibility that the agency will be able to substantiate its decision given an opportunity to do so." *Texas Ass'n*

*of Manufacturers v. United States Consumer Prod. Safety Comm'n*, 989 F.3d 368, 389 (5th Cir. 2021) (citing *Central and South West Servs., Inc. v. EPA*, 220 F.3d 683, 692 (5th Cir. 2000)).

Under the first factor, remand without vacatur is proper only where the agency failed "adequately to explain why it chose one approach rather than another for one aspect of an otherwise permissible rule." *Texas Med. Ass'n*, 2023 WL 4977746, at *13–14 (quoting *Heartland Reg'l Med. Ctr. v. Sebelius*, 566 F.3d 193, 199 (D.C. Cir. 2009)). But because the challenged agency actions here are contrary to law (and this Court's declaratory judgment as to the meaning of Title VII), the agency will not be able to substantiate its decision on remand because there is no possibility that it could correct the fundamental errors. When the Fifth Circuit considered the first factor in the propriety of vacatur framework in the DACA case, it concluded that there was "no possibility that DHS could obviate the[] conflicts on remand" because DACA had "severe" deficiencies and "fundamental substantive defects" that "contradict[ed] significant portions of the INA." *Texas v. United States (DACA)*, 50 F.4th 498, 529 (5th Cir. 2022). The same holds here.

### 2. Vacatur will not cause disruptive consequences.

As to the second factor—disruptiveness—Defendants may not rely on the "uncertainty that typically attends vacatur of any rule." *Nat. Res. Def. Council v. Wheeler*, 955 F.3d 68, 85 (D.C. Cir. 2020) (rejecting agency's disruption argument). And "the threat of disruptive consequences cannot save a rule when its fundamental flaws 'foreclose [the agency] from promulgating the same standards on remand.'" *North Carolina v. EPA*, 531 F.3d 896, 929 (D.C. Cir. 2008) (quoting *Nat. Res. Def. Council v. EPA*, 489 F.3d 1250, 1261–62 (D.C. Cir. 2007)). No amount of asserted disruptiveness can save the 2024 Guidance from being vacated.

### CONCLUSION

The Court should grant Texas's motion and issue further necessary or proper declaratory, injunctive, and vacation relief.

Dated: May 21, 2024.

**KEN PAXTON**
Attorney General of Texas

**BRENT WEBSTER**
First Assistant Attorney General

**RALPH MOLINA**
Deputy Attorney General for Legal Strategy

Respectfully submitted.

**RYAN D. WALTERS**
Chief, Special Litigation Division
Texas Bar No. 24105085

*/s/ Amy S. Hilton*
**AMY SNOW HILTON**
Special Counsel
Texas Bar No. 24097834

**ETHAN SZUMANSKI**
Special Counsel
Texas Bar No. 24123966

Office of the Attorney General
Special Litigation Division
P.O. Box 12548, Capitol Station
Austin, Texas 78711-2548
(512) 936-1706
Ryan.Walters@oag.texas.gov
Amy.Hilton@oag.texas.gov
Ethan.Szumanski@oag.texas.gov

**COUNSEL FOR PLAINTIFF STATE OF TEXAS**

**CERTIFICATE OF CONFERENCE**

I certify that on May 20, 2024, I conferred by email with George Padis, Assistant U.S. Attorney for the Northern District of Texas, about this motion (I had previously conferred by email on the same date with the three attorneys listed as counsel of record for Defendants, but none were available). He stated that the Defendants oppose this motion and that a trial attorney from Federal Programs Branch will be re-assigned to the case.

*/s/ Amy S. Hilton*
**AMY SNOW HILTON**

**CERTIFICATE OF SERVICE**

I certify that a true and accurate copy of the foregoing document was filed electronically (via CM/ECF) on May 21, 2024, which automatically serves all counsel of record who are registered to receive notices in this case. I also served this document via email to George.Padis@usdoj.gov on the same date.

*/s/ Amy S. Hilton*
**AMY SNOW HILTON**