# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF TEXAS
# AMARILLO DIVISION

| | |
|---|---|
| THE STATE OF TEXAS, § § *Plaintiff*, § § v. § § EQUAL EMPLOYMENT § OPPORTUNITY COMMISSION, *et al.*, § § *Defendants.* § | Civil Action No. 2:21-cv-194-Z |

# Plaintiff State of Texas's Reply in Support of Motion for Further Necessary or Proper Relief Against Defendants EEOC, Charlotte A. Burrows, and Merrick B. Garland

**TABLE OF CONTENTS**

Table of Contents ............................................................................................................. ii

Argument ........................................................................................................................ 1

    I.    EEOC is not complying with this Court's declaratory judgment. ..................................... 1

    II.   Further Relief under the Declaratory Judgment Act is necessary or proper to prevent EEOC from continuing to violate the judgment in this case. ............................................... 4

    III.  Texas is entitled to permanent injunctive relief. ............................................................... 5

        A.    Texas has succeeded on the merits: the 2024 Guidance contradicts the declaratory judgment issued by the Court. ........................................................................................ 5

        B.    Texas has standing and thus irreparable injury from the 2024 Guidance's violation of the declaratory judgment in its favor. ................................................................................. 6

        C.    The remaining injunctive-relief factors are in Texas's favor. ....................................... 8

        D.    The scope of injunctive relief properly extends beyond the 2024 Guidance. ............... 8

        E.    Texas rescinds its request for vacatur. ........................................................................... 10

Conclusion ...................................................................................................................... 10

Certificate of Service ....................................................................................................... 11

On May 21, 2024, Plaintiff State of Texas filed a motion for further necessary or proper relief under the Declaratory Judgment Act (the "Motion"). ECF No. 77. This Motion seeks to enforce this Court's declaratory judgment in the face of the Defendants' recent actions that contradict it: namely, the agency action titled *Enforcement Guidance on Harassment in the Workplace* (the "2024 Guidance"). In their Response, Defendants attempt to elide the distinctions between: (1) vacatur and declaratory or injunctive relief, and (2) a new claim (under the Administrative Procedure Act ("APA") or otherwise) and relief to enforce an existing final judgment in this case.

In this case, Texas has a final judgment declaring that EEOC's similar 2021 Guidance— requiring bathroom, dress code, and pronoun accommodations for employees based on gender identity—was unlawful because it was contrary to law. That law is Title VII of the Civil Rights Act of 1964, even after the construction given to it in *Bostock v. Clayton County*, 590 U.S. 644 (2020).

## ARGUMENT

### I. EEOC is not complying with this Court's declaratory judgment.

Defendants claim they have "fully complied with the terms of this Court's judgment," because they have placed disclaimers on the webpage announcing the 2021 Guidance and are not citing that Guidance as authority anywhere else. Response at 10–11 (note: references to page numbers in documents filed on the electronic docket are to the file-stamped page numbers on the header). But a declaratory judgment—like an injunction, but unlike vacatur—is targeted toward rights and obligations of *parties*, not particular agency actions.

The Declaratory Judgment Act provides that, "[i]n a case of actual controversy within its jurisdiction … any court of the United States … may declare the rights and other legal relations *of any interested party* seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a) (emphasis added). And "an injunction is a judicial process or mandate operating *in personam* by which, upon certain established principles of equity, a party is required to do or refrain from doing a particular thing." *Black's Law Dictionary* 937 (11th ed. 2019) (quoting 1 Howard C. Joyce, *A Treatise on the Law Relating to Injunctions* § 1, at 2–3 (1909)). And

both declaratory judgments and injunctions adjudicate those parties' rights and obligations by issuing authoritative pronouncements of what the law means for all times and all places.

Vacatur, by contrast, does not operate *in personam*, and it does not involve coercion because it "does not order the defendant to do anything; it only removes the source of the defendant's authority." *All. for Hippocratic Med. v. FDA.*, 78 F.4th 210, 254 (5th Cir. 2023) (citing *Nken v. Holder*, 556 U.S. 418, 428–29 (2009)), *rev'd on other grounds*, No. 23-235, 2024 WL 2964140 (U.S. Jun. 13, 2024). Instead, vacatur operates *in rem* against a challenged agency action, is self-executing, and is accomplished through the court's order.

Defendants' defense of their compliance is thus limited to the Court's *vacatur* of the 2021 Guidance. They apparently do not believe that the declaratory judgment had any independent effect beyond vacatur,[1] arguing that the specific bases for declaring the 2021 Guidance contrary to Title VII are not binding because they were explained in the Opinion and Order rather than the Judgment. Response at 11–12. But a "District Court's judgment is to be interpreted in light of its opinions, findings, and conclusions of law," *Schokbeton Indus., Inc. v. Schokbeton Prod. Corp.*, 466 F.2d 171, 178 (5th Cir. 1972); *see also Rodriguez v. Venturini*, No. 4:17-CV-1974, 2020 WL 13413712, at *2 (S.D. Tex. May 26, 2020) (same); *Alabama Nursing Home Ass'n v. Harris*, 617 F.2d 385, 388 (5th Cir. 1980) ("Great deference is due the interpretation placed on the terms of an injunctive order by the court who issued and must enforce it."); *Smith v. Zimmerman*, 768 F.2d 69, 73 (3d Cir. 1985) (a "lower court opinion may be referred to in order to clarify the grounds upon which the lower court acted") (citing *Great Lakes Dredge & Dock Co. v. Huffman,* 319 U.S. 293, 295

---

[1] Further evidence of this mindset is in a comparison how—in response to this Court's vacatur and declaratory relief issued on October 1, 2022— EEOC changed nothing of substance in its webpage on Sexual Orientation and Gender Identity (SOGI) Discrimination. It apparently thought it could comply by keeping its requirements of pronoun, bathroom, and dress code accommodations based on gender identity so long as it scrubbed a reference to the 2021 Guidance. Compare webpage as of August 30, 2022, available at https://web.archive.org/web/20220830201151/https://www.eeoc.gov/sexual-orientation-and-gender-identity-sogi-discrimination, at App.226, 233 (listing 2021 Guidance (Technical Assistance Document") as a resource "[f]or more information" on these requirements,  with current webpage at App.216, 223–24 (no change in substantive requirements but deleting reference to 2021 Guidance), available at https://www.eeoc.gov/sexual-orientation-and-gender-identity-sogi-discrimination#:~:text=Although%20accidental%20misuse%20of%20a,an%20unlawful%20hostile%20work%20environment.

(1943)); *id*. ("it is permissible for an appellate court to refer to a written opinion from the lower court to clarify the meaning of a finding, when such meaning is otherwise in doubt") (citing *American Propeller & Manufacturing Co. v. United States,* 300 U.S. 475, 479–80 (1937)); *Sec. Mut. Cas. Co. v. Century Cas. Co.*, 621 F.2d 1062, 1065–66 (10th Cir. 1980) ("the judgment fails to express the rulings in the case with clarity or accuracy, reference may be had to the findings and the entire record for the purpose of determining what was decided").

The bases of this Court's declaratory judgment that the 2021 Guidance was unlawful were explained throughout its Opinion and Order. Because *Bostock*'s "non-discrimination holding" was "cabined to 'homosexuality and transgender *status*,'" this Court rejected EEOC's argument that Title VII "extend[s] to correlated *conduct*—specifically, the sex-specific: (1) dress; (2) bathroom; [and] (3) pronoun … practices underlying the [2021] Guidance[]." ECF No. 74, Opinion and Order at 4 (emphases in original). "The [2021] Guidance imposes dress-code, bathroom, and pronoun accommodations as 'existing requirements under the law' and 'established legal positions' in light of *Bostock* and prior EEOC decisions interpreting Title VII[,] … [b]ut Title VII—as interpreted in *Bostock*—does not require such accommodations." ECF No. 74, Opinion and Order at 20. There can be no question that the 2024 Guidance contradicts the declaratory judgment issued by this Court. *See* Motion at 9–12 (citing the same accommodation requirements in the 2024 Guidance). And any difference in internal process how EEOC promulgated it, Response at 12–13, is not relevant to whether its substantive provisions are contrary to law per this Court's judgment.

Defendants attempt to defend the 2024 Guidance as consistent with this Court's Opinion and Order, because the former supposedly only allows such refusals to accommodate to be used as evidence of status-based discrimination. Response at 21 (citing Opinion and Order, ECF No. 74 at 13). This is belied by the 2024 Guidance, which says that "[h]arassing conduct based on sexual orientation or gender identity includes … [conduct against employees]" not "present[ing] in a manner that would stereotypically be associated with that person's sex," App.035, or "denial of

3

access to a bathroom or other sex-segregated facility consistent with [an] individual's gender identity," App.035, or "repeated and intentional use of a name or pronoun inconsistent with [an] individual's known gender identity (misgendering)." App.035.

II. **Further Relief under the Declaratory Judgment Act is necessary or proper to prevent EEOC from continuing to violate the judgment in this case.**

The Declaratory Judgment Act allows "[f]urther necessary or proper relief based on a declaratory judgment or decree [to be] granted, after reasonable notice and hearing, against any adverse party whose rights have been determined by such judgment." 28 U.S.C. § 2202. This provision "merely carries out the principle that every court, with few exceptions, has inherent power to enforce its decrees and to make such orders as may be necessary to render them effective." *Horn & Hardart Co. v. National Rail Passenger Corp.*, 843 F.2d 546 (D.C. Cir. 1988) (quoting E. Borchard, *Declaratory Judgments* 441 (2d ed. 1941)).

Defendants repeatedly argue that the Court's previous denial of injunctive relief means that the relief sought in the Motion is an improper move to reconsider that denial of relief. *See, e.g.,* Response at 13–17. But courts have rejected this reasoning, finding coercive relief (injunctive or money damages) proper ancillary relief sought after a declaratory judgment, regardless of whether such coercive relief was requested originally or long after the judgment was rendered. See *United Tchr. Assocs. Ins. Co. v. Union Lab. Life Ins. Co.*, 414 F.3d 558, 569–71 (5th Cir. 2005); *id.* at 572 (no "lengthy delay after the trial court's initial ruling terminates the court's authority to grant further relief pursuant to [Section] 2202."); *Edward B. Marks Music Corp. v. Charles K. Harris Music Publ'g Co.*, 255 F.2d 518, 522 (2d Cir. 1958) (holding that further relief "need not have been demanded, or even proved, in the original action for declaratory relief"); *Shoom, Inc. v. Elec. Imaging Sys. of Am., Inc.*, No. C 07-05612 JSW, 2011 WL 4595212, at *1, 4 (N.D. Cal. Oct. 4, 2011) (plaintiff had sought injunctive relief in complaint, but did not brief it in subsequent motion, but still granted ancillary injunctive relief after declaratory judgment); *Powell v. McCormack*, 395 U.S. 486, 494, 498–99 (1969) (noting that plaintiff had earlier requested permanent injunction, but still noting that "[a] court may grant declaratory relief even though it chooses not to issue an injunction

or mandamus," and that "declaratory judgment can then be used as a predicate to further relief, including an injunction.") (citing 28 U.S.C. § 2202); *Nat'l Union Fire Ins. Co. v. Mississippi Ins. Guar. Ass'n*, No. 3:04-CV-340 HTW-JCS, 2011 WL 13195947, at *3–4 (S.D. Miss. Sept. 16, 2011) (rejecting argument that motion for ancillary relief after declaratory judgment should be evaluated as motion for reconsideration under Fed. R. Civ. P. 59); *Kaspar Wire Works, Inc. v. Leco Eng'g & Mach., Inc.*, 575 F.2d 530, 537 (5th Cir. 1978) (res judicata does not apply to declaratory judgment, allowing seeking further relief); *GNB Battery Techs., Inc. v. Gould, Inc.*, 65 F.3d 615, 621 (7th Cir. 1995) ("the very purpose of a motion under [Section 2202 of the DJA] is not to change the declaratory judgment but to enforce it."); *Cont'l Cas. Co. v. Indian Head Indus., Inc.*, 941 F.3d 828, 833–36 (6th Cir. 2019) (rejecting Rule 59 applicability as "further relief can include money damages, whether or not the moving party demanded or proved damages in the original declaratory action;" regardless of whether coercive relief was sought originally, and "unlike a Rule 59(e) motion, Continental's motion does not require the district court to 'reconsider' any merits issues.")[2]; *Duberry v. D.C.*, No. CV 14-1258 (RC), 2020 WL 13337792, at *5–6 (D.D.C. Feb. 28, 2020) (rejecting Rule 59 argument advanced by Defendants here).

### III. Texas is entitled to permanent injunctive relief.[3]

#### A. Texas has succeeded on the merits: the 2024 Guidance contradicts the declaratory judgment issued by the Court.

Defendants' argument against satisfaction of his prong of the test for injunctive relief results from the misunderstanding throughout their Response that Texas is making a claim that the 2024 Guidance is independently unlawful under the APA. *See, e.g.,* Response at 17–21. Instead, Texas argues that the 2024 Guidance violates this Court's declaratory judgment that Title VII

---

[2] Defendants argue that because this Court previously declined to grant an injunction in this case, this Motion seeks to "reargue claims it lost previously." Response at 16. That is false—the only relevant claim is the contrary-to-law claim, and Texas merely seeks to enforce it. Particular remedies are not "claims"— "an injunction is not a cause of action." *Novedea Sys., Inc. v. Colaberry, Inc.*, No. 6:20-cv-180, 2020 WL 9211073, at *2 (E.D. Tex. Dec. 11, 2020).

[3] Defendants make no argument against declaratory relief as a distinct category in their Response.

does not require pronoun, bathroom, or dress code accommodations based on gender identity. Motion at 8.

### B. Texas has standing and thus irreparable injury from the 2024 Guidance's violation of the declaratory judgment in its favor.

Defendants argue that not only does Texas fail to satisfy the irreparable-injury prong but fails to show any injury sufficient to satisfy Article III standing. Response at 23–26. The entire basis for this point is based on confusion that the only relevant injury is that imposed directly by the 2024 Guidance. Instead, the 2024 Guidance demonstrates that the Defendants are not complying with the declaratory judgment—and violation of the judgment is the most salient injury relevant to standing here.

The key case is *Salazar v. Buono*, 559 U.S. 700 (2010). There, the Court evaluated a district court's grant of a motion to enforce an earlier injunction after a federal agency performed a subsequent action that the district court believed was an attempt to violate the judgment. *Id.* at 711. The federal government argued that the plaintiff lacked standing based on the lack of injury from the subsequent agency action (a land-transfer statute)—but the Court held that this was the wrong way to look at it. *Id.* at 712. Instead, "even though the Court may not reconsider whether Buono had standing to seek the 2002 injunction, it [was] still necessary to evaluate his standing in [this case] to seek application of the injunction against the land-transfer statute." *Id.* The Court explained:

> This [enforcement of the injunction against a subsequent agency action] was a measure of relief that Buono had standing to seek. A party that obtains a judgment in its favor acquires a "judicially cognizable" interest in ensuring compliance with that judgment. Having obtained a final judgment granting relief on his claims, Buono had standing to seek its vindication.

*Id.* (cleaned up). The same is true here—Texas obtained a declaratory judgment, granting it a judicially-cognizable interest in Defendants' compliance with it.

Any argument that the relief sought in Texas's Motion is improper, or not really targeted at ensuring compliance with the judgment, goes to the merits rather than standing. In *Buono*, the federal government argued that the motion there sought an extension of the injunction rather than

6

compliance with it, and therefore Buono did not have standing to seek it. *Id*. The Court rejected that:

> The standing inquiry, by contrast, turns on the alleged injury that prompted the plaintiff to invoke the court's jurisdiction in the first place. Buono's entitlement to an injunction having been established in *Buono I* and *II*, he sought in [this case] to prevent the Government from frustrating or evading that injunction. Based on the rights he obtained under the earlier decree—against the same party, regarding the same cross and the same land—his interests in doing so were sufficiently personal and concrete to support his standing. Although Buono also argued that the land transfer should be prohibited as an "independent" Establishment Clause violation, the District Court did not address or order relief on that claim, which is not before us. *Buono III* [lower court decision under review here], 364 F.Supp.2d, at 1182, n. 8. This is not a case in which a party seeks to import a previous standing determination into a wholly different dispute.
>
> In arguing that Buono sought to extend, rather than to enforce, the 2002 injunction, the Government in essence contends that the injunction did not provide a basis for the District Court to invalidate the land transfer. This is not an argument about standing but about the merits of the District Court's order.

*Id.* at 712–13. The injury to Texas by violation of a judgment in its favor is not reparable by money damages due to sovereign immunity. Motion at 21. It therefore also satisfies the irreparable-injury prong for permanent injunctive relief.

In addition, Defendants argue that there is no evidence of injury because Texas relies on "a two-year-old declaration of Texas Agriculture Commissioner Sid Miller" to show employment policies conflicting with the 2024 Guidance. Response at 24 n.6. "The existence of federal jurisdiction ordinarily depends on the facts *as they exist when the complaint is filed.*" *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 571 n.4 (1992) (emphasis in original; citation omitted); *Carr v. Alta Verde Indus., Inc.,* 931 F.2d 1055, 1061 (5th Cir. 1991) ("As with all questions of subject matter jurisdiction except mootness, standing is determined as of the date of the filing of the complaint, and subsequent events do not deprive the court of jurisdiction."). Defendants have not come forth with any evidence to meet their burden of showing mootness. Regardless, Texas submits an updated declaration of Commissioner Miller that demonstrates that the Texas Department of Agriculture has policies in direct conflict with the pronoun, bathroom, and dress code

7

accommodation requirements in the 2024 Guidance and will impose compliance costs on the agency. *See* App.210–215; *see Career Colleges & Sch. of Texas v. United States Dep't of Educ.*, 98 F.4th 220, 236 (5th Cir. 2024) (a plaintiff "need not convert each allegation of harm into a specific dollar amount") (cleaned up); *id.* (crediting evidence that plaintiffs would have to "expend more time and resources to train their staff due to the Rule").

### C. The remaining injunctive-relief factors are in Texas's favor.

The success-on-the-merits and irreparable-injury prongs are the most important to justify injunctive relief. The balance of harms and public interest are largely derivative—if the actor against whom an injunction is acting unlawfully, enjoining that unlawful conduct cannot violate these latter factors. *See* Motion at 21–22.

### D. The scope of injunctive relief properly extends beyond the 2024 Guidance.

Defendants maintain that is would be improper for the Court to "look beyond the challenged Guidance to enjoin federal agencies from adopting an interpretation of the governing statute or relying on EEOC's administrative decisions." Response at 28. But the Fifth Circuit has termed a "false dichotomy" the notion that "a lawsuit challenging a regulation and a lawsuit challenging the underlying statute are different." *Franciscan All., Inc. v. Becerra*, 47 F.4th 368, 378 (5th Cir. 2022). Instead, "a challenge to an agency regulation is necessarily a challenge to the [enforcement of the] underlying statute as well[] … because an agency literally has no power to act—including under its regulations—unless and until Congress authorizes it to do so by statute." *Id.* (internal quotations omitted). As a result, limiting relief to particular agency documents or actions that implement what the Court has declared to be an unlawful interpretation of Title IX "rests on the faulty premise that the plaintiffs were [only] 'suing' a regulation." *Id.* And while "suing" a regulation may be an appropriate way to conceive of Texas's request for vacatur, not so with Texas's request for an injunction or declaratory relief. Instead, "the right way to view [Texas's] suit was as challenging '*one* Government action that causes their harm: the [Government's] threatened enforcement of the [statute], *through* its implementing regulation.'"

*Id.* (emphasis in original) (quoting *Fed. Election Comm'n v. Cruz*, 142 S. Ct. 1638, 1650 (2022)). The Fifth Circuit found that the district court "did not err" in "granting injunctive relief against Section 1557 and all future agency actions." *Id.* at 374. This was even though plaintiffs had "only sought relief [in the complaint] from the 2016 Rule—not from Section 1557 more broadly." *Id.* at 377. Although "Appellants argue[d] that Franciscan Alliance lacks standing to seek a permanent injunction against future regulations that may require it to perform abortions or gender-reassignment surgeries" and "that the district court violated Article III when it granted Franciscan Alliance a permanent injunction against hypothetical future Section 1557 enforcement," the court noted that "[c]ourts have issued permanent injunctions in these contexts countless times." *Id.* at 379. This Court should decline Defendants' invitation to ignore this norm, which is even stronger here where the root injury is agency noncompliance with a final judgment.

Courts do not hesitate to issue declaratory and injunctive relief that prevents an agency from applying an unlawful interpretation of a statute in future agency actions. *See, e.g.*, *Franciscan All., Inc. v. Becerra*, 553 F.Supp.3d 361, 378 (N.D. Tex. 2021) (O'Connor, J.) (court enjoining agency "from interpreting or enforcing Section 1557 of the Affordable Care Act … or any implementing regulations" against plaintiffs "in a manner that would require them to perform or provide insurance coverage for gender-transition procedures or abortions"); *Texas v. United States*, 201 F. Supp. 3d 810, 836 (N.D. Tex. 2016) (O'Connor, J.) (enjoining agency not only from using challenged guidance document but also from "initiating, continuing, or concluding any investigation based on Defendants' interpretation that the definition of sex includes gender identity *in Title IX's* prohibition against discrimination on the basis of sex.") (emphasis added); *Neese v. Becerra*, No. 2:21-cv-163, (N.D. Tex. Nov. 22, 2022), ECF No. 71 (Final Judgment) (Kacsmaryk, J.) ("The Court DECLARES: … Section 1557 of the ACA does not prohibit discrimination on account of sexual orientation and gender identity, and the interpretation of 'sex' discrimination that the Supreme Court of the United States adopted in *Bostock v. Clayton County*, 140 S. Ct. 1731 (2020), is inapplicable to the prohibitions on 'sex' discrimination in Title IX of the

9

Education Amendments of 1972 and in Section 1557 of the ACA."); *Religious Sisters of Mercy v. Azar*, 513 F.Supp.3d 1113, 1153–54 (D.N.D. 2021) ("The Court DECLARES that HHS's interpretation of Section 1557 that requires [plaintiffs] to perform and provide insurance coverage for gender-transition procedures" is unlawful and granting injunction against agency "interpreting or enforcing Section 1557 of the ACA" in the same way), *affirmed*, 55 F.4th 583 (8th Cir. 2022); *Christian Employers Alliance v. EEOC*, No. 1:21-cv-195, 2024 WL 935591, *10 (D.N.D. Mar. 4, 2024) (enjoining federal agency "from interpreting or enforcing Section 1557 of the Affordable Care Act … in a manner that would force [plaintiffs] to perform or provide insurance coverage for gender-transition procedures"). This Court should do the same, which is necessary to effectuate its final judgment declaring unlawful EEOC's interpretation of Title VII as requiring pronoun, bathroom, and dress code accommodations based on gender identity.

### E. Texas rescinds its request for vacatur.

Vacatur is the sole remedy sought in the Motion that requires a final agency action. This is because—unlike declaratory or injunctive relief which is authorized directly by the Declaratory Judgment Act and the Court's inherent equitable powers—vacatur is a remedy created by the APA. *See Deanda v. Becerra*, 96 F.4th 750, 767–68 (5th Cir. 2024) ("We know of no authority … authorizing a court to vacate a regulation under § 706(2) in the absence of an APA claim.").

As the relief sought in the Motion is not an independent claim under the APA, but for ancillary relief to protect the Court's declaratory judgment, Texas will not pursue the remedy of vacatur of the 2024 Guidance. This also makes irrelevant the Defendants' discussion of whether the 2024 Guidance constitutes final agency action, Response at 17–21, a prerequisite to a claim under the APA, and only such a claim. *See Apter v. Dep't of Health & Hum. Servs.*, 80 F.4th 579, 589–91 (5th Cir. 2023).

### CONCLUSION

The Court should grant Texas's Motion and issue further necessary or proper declaratory and injunctive relief.

Dated: June 25, 2024.

**KEN PAXTON**
Attorney General of Texas

**BRENT WEBSTER**
First Assistant Attorney General

**RALPH MOLINA**
Deputy Attorney General for Legal Strategy

Respectfully submitted.

*/s/ Ryan D. Walters*
**RYAN D. WALTERS**
Chief, Special Litigation Division
Texas Bar No. 24105085

Office of the Attorney General
Special Litigation Division
P.O. Box 12548, Capitol Station
Austin, Texas 78711-2548
(512) 936-1706
Ryan.Walters@oag.texas.gov

**COUNSEL FOR PLAINTIFF STATE OF TEXAS**

**CERTIFICATE OF SERVICE**

I certify that a true and accurate copy of the foregoing document was filed electronically (via CM/ECF) on June 25, 2024, which automatically serves all counsel of record who are registered to receive notices in this case.

*/s/Ryan D. Walters*
**RYAN D. WALTERS**